**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**


**DR. ORLY TAITZ, ESQ., BRIAN FEDORKA,**          **PLAINTIFFS**
**LAURIE ROTH, LEAH LAX, and TOM**
**MacLERAN**


**VS.**          **CIVIL ACTION NO. 3:12-cv-280 HTW-LRA**


**DEMOCRAT PARTY OF MISSISSIPPI,**          **DEFENDANTS**
**SECRETARY OF STATE MISSISSIPPI,**
**BARAK HUSSEIN OBAMA, OBAMA**
**FOR AMERICA, NANCI PELOSI,**
**DR. ALVIN ONAKA, LORETTA FUDDY,**
**MICHAEL ASTRUE, JOHN DOES, JOHN**
**DOES 1-100**


<u>**MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE COMMITTEE'S**</u>
<u>**FIRST AMENDED MEMORANDUM BRIEF OF AUTHORITIES IN SUPPORT OF**</u>
<u>**MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

COMES NOW the Defendant, the Mississippi Democratic Party, through its governing entity,

the Mississippi Democratic Party Executive Committee ("MDEC"), and by and through its undersigned

counsel and, pursuant to *Fed. R. Civ. P.* 12(c) and *L. U. Civ. R.* 7(b)(4), hereby provides the Court with

its Memorandum of Authorities in support of its Motion for Judgment on the Pleadings, as follows:

**BACKGROUND**

1.  On February 14, 2012 Orly Taitz, a California resident and licensed attorney in that state, filed a

petition in the Circuit Court of the First Judicial District of Hinds County, Mississippi against the

Mississippi Democratic Party and the Secretary of State of Mississippi seeking a declaration that

Barack Hussein Obama is not constitutionally eligible to hold the office of President of the United

States because he is not a "natural born citizen," as required by Article 2, Section 1 of the United

States Constitution.  [Original Circuit Court Petition, Docket No. 6, p.p. 18-26].  Taitz's original

state court petition further sought injunctive relief to block President Obama from appearing on the ballot for the Mississippi Democratic presidential preference primary election, which was to be held on March 13, 2012.  Taitz's original court petition further accused President Obama of election fraud arising from his use of a fraudulent social security number and a fraudulent birth certificate.  Taitz's original court petition cited *Miss. Code Ann.* § 23-15-961 as the jurisdictional basis for bringing her action in the Hinds County Circuit Court, which is the procedure for an aggrieved party to challenge the qualifications of a candidate in Mississippi seeking to be elected to office by first becoming a candidate in the party primary election.

2. Both the Democratic Party Executive Committee and the Mississippi Secretary of State filed motions in the Circuit Court to dismiss Taitz's petition on numerous grounds, including: (a) that it was untimely under Section 23-15-961, (b) that the Plaintiff was not an "aggrieved party" under Section 23-15-961 and otherwise lacked standing to bring her action in the Circuit Court of Hinds County, Mississippi, and (c) that neither the Mississippi Secretary of State nor the Mississippi Democratic Party Executive Committee had any duty under the governing statute for presidential preference primaries, *Miss. Code Ann.* § 23-15-1089, to determine a presidential candidate's qualifications, other than the Secretary of State's limited role in identifying "generally recognized" candidates for President to be placed on the party primary ballot.

3. On April 19, 2012, Taitz, along with four additional Plaintiffs, filed the First Amended Complaint ("FAC") (Docket No. 1-1) with the Circuit Court, seeking, inter alia, to enjoin Barack Obama from appearing on the Mississippi 2012 general election ballot as a candidate for President of the United States.[1]  In addition to the Mississippi Democratic Party and the Secretary of State of Mississippi,

---

[1] While several "Plaintiffs" purportedly joined Taitz, who was the original sole plaintiff, none of the other purported Plaintiffs has provided contact information or responded to defendant MDEC's counsel's request that they confirm they are proceeding in this action *pro se* and that they will provide signed pleadings and proper contact information. Additionally, each and every email sent to Plaintiff MacLeran has "bounced back" to the undersigned counsel.  (The only contact

Taitz and the new Plaintiffs named as defendants President Obama, Obama for America (the

President's principal political campaign committee), Nancy Pelosi (now the minority leader of the

U.S. House of Representatives and former chair of the 2008 Democratic National Convention), Dr.

Alvin Onaka (Registrar of the Hawaii Department of Health), Loretta Fuddy (Director of the Hawaii

Department of Health) and Michael Astrue (Commissioner of the United States Social Security

Administration).  The FAC cited *Miss. Code Ann.* § 23-15-963, which is the procedure for

challenging a candidate who filed to run in a Mississippi general election, as the basis for the new

challenge to President Obama's candidacy for President in the November 2012 election in

Mississippi.  The FAC also added a federal RICO cause of action against the Mississippi Democratic

Party and the new defendants, but not the Secretary of State.  As of this date, none of the new

defendants has been served with process or otherwise appeared in the case.

4.  The Secretary of State, joined by the MDEC, removed Plaintiffs' civil action to this Honorable Court

based on the existence of a federal question arising from the federal RICO claim included for the

first time in the FAC.

### THE SUIT IS TIME BARRED UNDER MISSISSIPPI ELECTION LAW

5.  Plaintiffs' FAC seeks to challenge the qualifications of President Obama as a candidate running on

the general election ballot for President in 2012.  Plaintiffs rely on *Miss. Code Ann.* § 23-15-963.

However, Section 23-15-963 only applies to *independent* (not political party) candidates who

qualified for office by obtaining the signatures of qualified electors on a petition.  President Obama,

---

information was e-mail addresses.)  Taitz is an attorney with a history of attempting to represent Plaintiffs challenging President Obama's eligibility in states where she is not licensed to practice law.  *See, e.g., Rhodes v. MacDonald*, 670 F. Supp. 2d 1363, 1368 (11th Cir. 2009) ("Because of the alleged urgent nature of the request, the Court waived its local rule that requires counsel admitted *pro hac vice* to associate local counsel.  It became apparent during the hearing on the motion that the Court's waiver of this local rule was a mistake as counsel abused her *pro hac vice* privileges."); *Farrar v. Obama*, No. 2012CV211398 (Ga. Fulton County Super. Ct. Feb. 15, 2012) (denying Taitz's request for admission *pro hac vice* for failure to comply with rules applicable to same).  As such, further references to "Plaintiffs" is without prejudice to MDEC's contention that Taitz is the only actual plaintiff, for the reasons stated.

who is seeking the Democratic nomination, would not even be subject to this statue since he is not running as an independent.

6.   The only possible procedure available to the Plaintiffs to challenge the qualifications of a candidate running in a party primary in Mississippi is under *Miss. Code Ann.* § 23-15-961, which, as noted above, was used by Taitz as the jurisdictional basis for filing the original petition in Hinds County Circuit Court on February 12, 2012.

7.   However, assuming, arguendo, that *Miss. Code Ann.* § 23-15-963 is applicable in challenging a candidate's qualifications for the general election, this code section contains strict time limitations, requiring the petition challenging the general election candidate's qualifications to be filed not later than 31 days after the date of the first primary election and that any subsequent petition for judicial review be filed not later than 15 days after the date that the petition was filed with the "appropriate election officials."  A petition for judicial review filed pursuant to Section 23-15-963 also requires the posting of a $300.00 cost bond and the signature of two or more sufficient sureties conditioned to pay all costs in the event the petition is dismissed.

8.   There is no proof that Taitz, or any of the new Plaintiffs, filed any petition with the MDEC or any other election body as a precondition to filing the FAC.  Rather, the only conceivable "filing" with an election official was an email that Taitz sent to the undersigned counsel for the MDEC, dated April 1, 2012, which the Secretary of State has attached to its Motion for Judgment on the Pleadings (Docket No. 8) and which is referenced by Plaintiffs in paragraph 14 of the FAC.  Notably, the undersigned counsel is neither an officer of the Mississippi Democratic Party nor a member of the MDEC, and is not the MDEC's agent for service of process.  Moreover, Taitz's email did not mention the four additional Plaintiffs.  Taitz's email asked that her original petition challenging President Obama's candidacy in the primary election be converted to a general election challenge,

4

given that the primary election had already transpired.  Assuming that Taitz's email to the undersigned counsel in some way constitutes a petition lodged with the MDEC, Taitz's subsequent petition for judicial review, contained in the FAC, is nonetheless untimely as Taitz would have had to have filed this pleading in the Circuit Court of Hinds County and paid the cost bond within 15 days of the April 1 email "petition."  However, the FAC was not filed until April 19, 2012 and, moreover, did not include the required bond and sureties.  Because Taitz, under this scenario, was required to file a Circuit Court petition no later than April 15, 2012, and likewise to post a bond, her failure to do so in either respect makes any general election challenge to President Obama's qualifications time barred and statutorily deficient under Section 23-15-963.

9.   Alternatively, to the extent Taitz and the four new Plaintiffs seek to challenge the qualifications of President Obama as a candidate in the presidential preference primary,[2] that claim is likewise time-barred under Section 23-15-961.  *Miss. Code Ann.* § 23-15-961 provides the exclusive method by which the qualification of a candidate seeking public office as a party nominee may be challenged.

10.  The Plaintiffs are required to file in the Circuit Court a petition for judicial review challenging the candidate's qualifications no later than 15 days after the date the contest petition was originally filed with the appropriate party executive committee.  According to her original state court petition, Taitz filed her contest petition challenging President Obama's qualifications with the MDEC on January 8, 2012.  Section 23-15-961 states that the challenge must be filed with the executive committee within 10 days after the qualifying deadline.  The qualifying deadline for the presidential preference primaries provided in *Miss. Code Ann.* § 23-15-1093 was January 14, 2012.  Under Section 23-15-961, the MDEC in turn must rule on the challenge petition within 10 days of receiving it.  Assuming that Taitz filed her contest petition on January 8, 2012, the petition would have needed to be ruled on

---

[2] At page 43 of the FAC, the Plaintiffs seek to have the Secretary of State "decertify" or "annul" all votes for President Obama in the presidential preference primary.

by the MDEC by January 18, 2012.  If it was not ruled on by the MDEC, which is the case here, Taitz had 15 days from the date the petition was filed with the MDEC to file a petition for judicial review with the Circuit Court.  However, Taitz did not file her Circuit Court petition until February 14, 2012, far outside of the fifteen-day window for doing so, thus making her original Circuit Court petition time barred and requiring dismissal.  *Gourlay v. Williams*, 874 So.2d 987, 988 (Miss. 2004).

## PLAINTIFFS LACK STANDING

11. The claim attacking President Obama's qualifications to run in the Mississippi presidential preference primary or appear on the general election ballot should be dismissed because, except for Fedorka, none of the Plaintiffs are qualified electors of the State of Mississippi, and therefore lack standing to bring this action in the Circuit Court of Hinds County or this Honorable Court.  Section 23-15-961 provides that "*any party aggrieved* by the action or inaction of the appropriate executive committee" may file a petition for judicial review in the circuit court, as the exclusive procedure for challenging a candidate running as a party candidate.  Likewise, Section 23-15-963 affords "*any party aggrieved*" by the inaction or action of the appropriate election officials the right to file a petition for judicial review in the circuit court.  There is simply no way any of the nonresident Plaintiffs can be an aggrieved party or otherwise have standing.  *See Belhaven Improvement Ass'n, Inc. v. City of Jackson*, 507 So.2d 41, 47 (Miss. 1987) (holding that "[for] standing, the person(s) aggrieved . . . whether one or more, should allege an adverse effect different from that of the general public"); *see also Roe v. Town of New Fairfield*, 2012 WL 447561 (Conn. Super. Ct. Jan. 17, 2012) ("[t]o have standing as an elector, the plaintiff's right to vote must be implicated"); *Alliance Marana v. Groseclose,* 955 P.2d 43, 45 (Ariz. 1998) (non-resident lacks standing to file writ of mandamus regarding local referendum); *United States v. Hays*, 515 U.S. 737, 745 (1995) (as a matter of standing, plaintiffs stating race-based equal protection challenges to redistricting must be voters who actually reside in the districts they are challenging).

6

12. Moreover, *all* Plaintiffs are no different from any other citizen or voter of the United States and thus have suffered no discrete injury required to satisfy standing. *See Hollander v. McCain,* 566 F. Supp. 2d 63, 68 (D.N.H. 2008) (voter lacked standing to challenge constitutional qualifications of presidential nominee in that he suffered no cognizable injury and was not prevented from voting for someone else); *Drake v. Obama*, 664 F.3d 774, 780-781 (9th Cir. Dec. 22, 2011) (former and active military personnel did not have standing to argue that President Obama is constitutionally ineligible to be President of the United States as they did not show concrete injury); *Berg v. Obama,* 574 F. Supp. 2d 509 (E.D. Penn. 2008), *aff'd*, 586 F.3d 234, 239 (voter's stake no greater than any other voter and thus suffered no injury in fact.)

## PLAINTIFFS FEDORKA, ROTH, LAX AND MACLERAN'S FAILURE TO FILE ANY PETITION WITH THE MDEC BARS THEIR ACTION

13. Only Taitz attempted to adhere to the procedure for challenging a candidate seeking public office by claiming to have filed a petition with the MDEC. The other Plaintiffs did not "appear" until their names were included in the FAC. Section 23-15-961 requires an aggrieved party to file a contest petition with the party executive committee before bringing suit, and Section 23-15-963 similarly requires first filing a petition with "appropriate election officials." Failure to adhere to the contest petition preconditions before filing in Circuit Court is jurisdictionally deficient and requires dismissal of the claim. *Gourlay v. Williams*, 874 So.2d 987, ¶10 (Miss. 2009). Accordingly, except for Taitz, no plaintiff filed petitions with the MDEC challenging President Obama's qualifications and thus cannot be parties to any action filed pursuant to Sections 23-15-961 or 23-15-963. *Id.* at 988.

## THE MISSISSIPPI DEMOCRATIC PARTY HAS NO STATUTORY DUTY TO DETERMINE PARTY PRESIDENTIAL PREFERENCE CANDIDATE QUALIFICATIONS

14. Under *Miss. Code Ann.* §23-15-1089, responsibility for placing President Obama's name on the primary ballot is vested in the Mississippi Secretary of State, not the MDEC. In that regard, the

Secretary of State is required by law to place each "generally recognized" candidate on the presidential primary ballot.  Clearly, President Obama is a nationally recognized candidate.  Section 23-15-1089 does not require either the Secretary of State or the MDEC to review whether a generally recognized candidate meets the federal constitutional specifications to be president, such as whether a candidate is a natural born citizen.  Under Section 23-15-1089, the MDEC had absolutely no role in placing President Obama on the March 2012 primary ballot.

15. The reasons the MDEC need not be involved in deciding who is qualified to place on the ballot for the presidential preference primary make sense.  First, the presidential preference primary is not mandatory, but done at the option of the MDEC.  *Miss. Code Ann.* § 23-15-1085.  On the other hand, any person seeking to be nominated as the Democratic nominee for a state or federal office in Mississippi must win the Democratic Party primary election, which may include a runoff.  *Miss. Code Ann.* § 23-15-921.  Further, winning the presidential preference primary election in Mississippi, which does not contain a runoff provision, does not make a person the Party's presidential nominee, or even the winner of all the state's delegates.  Rather, the presidential preference primary is used to mathematically apportion Mississippi's delegates to the Democratic National Convention.  In other words, both the candidate who received 40% of the vote in the presidential preference primary and the candidate who received 30% of the vote would each be given a proportionate share of Mississippi delegates to the national nominating convention, in accordance with the Party's Delegation Selection Plan, found at www.mississippidemcrats.org/2012-delegate-selection-plan-dnc-approved/.

16. Additionally, because the Mississippi Secretary of State determines who is listed on the presidential preference ballot based on the notion of general recognition, Section 23-15-961 would appear to be inapplicable because a presidential candidate is not, as described in Section 23-15-961, "a candidate

for nomination in a political party primary election," which, by contrast, would be the case for a

Democratic candidate for Governor of Mississippi.  Likewise, Section 23-15-963 would appear to be

inapplicable to any presidential candidate because a presidential candidate is not "a candidate for any

office elected at a general election."  Rather, as discussed below, a presidential candidate is selected

through the Electoral College, comprised of electors from the fifty states and the District of

Columbia.  Accordingly, the two respective Mississippi statutes allowing an aggrieved party to

challenge the qualifications of a candidate have no place in the presidential candidate scheme in

Mississippi, either in connection with the preference primary or the general election.

17. In *Keyes v. Bowen*, 189 Cal. App. 4th 647, 117 Cal. Rptr. 3d 207 (Cal. App. 3 Dist. 2010) the

California Court of Appeals considered a statute nearly identical to Section 23-15-1089 and affirmed

the dismissal of a mandamus action against the California Secretary of State regarding President

Obama's candidacy.  The California statute required a candidate's name to be placed on the

presidential primary ballot if it was determined by the Secretary of State that the candidate was

"generally advocated for or recognized throughout the United States or California as actively

seeking the nomination of the Democratic Party for President of the United States . . . ."  *Id.* at 658.

The Court found that the California statute did not impose any duty on the Secretary of State to

determine whether a presidential candidate meets the eligibility criteria of a citizen under the United

States Constitution.  Accordingly, using the reasoning in *Keyes v. Bowen*, the instant lawsuit brought

by the Plaintiffs against the Mississippi Secretary of State and the MDEC must be dismissed because

neither the Secretary of State nor the MDEC had any statutory duty to determine whether a candidate

is qualified to be president before placing him on the party primary ballot.

## MISSISSIPPI ELECTION OFFICIALS HAVE NO JURISDICTION OVER THE QUALIFICATIONS OF CANDIDATES FOR PRESIDENT OF THE UNITED STATES

18. Mississippi election officials have no jurisdiction over the subject of a candidate's eligibility under the U.S. Constitution for the office of President of the United States. As the *Keyes v. Bowen* decision noted, "the presidential nominating process is not subject to each of the fifty States' election officials independently deciding whether a presidential nominee is qualified, as this could lead to chaotic results." 189 Cal. App. 4th at 660. Rather, federal law sets forth the exclusive procedure by which objections to the qualifications of a presidential candidate may be registered and resolved. "Mechanisms exist under the Twelfth Amendment and 3 U.S.C. §15 for any challenge to any candidate to be ventilated when electoral votes are counted, and the Twentieth Amendment provides guidance regarding how to proceed if a president elect shall have failed to qualify. Issues regarding qualifications for president are quintessentially suited to the foregoing process." 189 Cal. App. 4th at 661. Therefore, any challenge to President Obama's eligibility to run as a candidate is committed under the United States Constitution to the presidential electors and the legislative branch, at least in the first instance—not to the Mississippi Secretary of State, the Mississippi Democratic Party, or this Court. *See Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1147 (N.D. Cal. 2008).

19. Because of the Electoral College system of presidential elections set forth in the United States Constitution, Mississippi voters actually vote for the electors for a candidate for president, and not for candidates themselves. At the Democratic State Convention, the Party designates a slate of electors who "announce and clearly express design and purpose to support" the presidential candidate selected at the Democratic National Convention. *Miss. Code Ann.* § 23-15-771. Electors are chosen by voters the first Tuesday after the first Monday in November in presidential election years. *Miss. Code Ann.* § 23-15-781. The Secretary of State certifies to the circuit clerks of all 82 counties in Mississippi the names of the presidential nominee and vice presidential nominee selected

by the delegates to the Democratic National Convention.  *Miss. Code Ann.* § 23-15-785(1).

Beforehand, the National Democratic Party provides the Secretary of State its nominee's names by

submitting a "certificate of nomination" signed by the presiding officer and secretary of the

Democratic National Convention and by the MDEC Chairman at least 60 days prior to the

November general election.  *Miss. Code Ann.* § 23-15-785(2).  The official sample ballot submitted

to the counties must include the word "presidential electors for" candidate for President and

candidate for Vice President, in lieu of the elector's names on the ballot.  However, votes cast for

electors for the named candidates must be counted as votes for the candidate's electors.  Nowhere in

these statutory procedures do either the MDEC or the Secretary of State provide a direct role in

determining the qualifications of the Democratic nominee for President selected at the national

convention.

<strong>MOOTNESS/RIPENESS</strong>

20. To the extent Taitz or the other Plaintiffs continue to challenge President Obama's placement as a

candidate on the March 13, 2012 presidential primary ballot, the action is moot because the election

has already taken place.  *Allred v. Webb,* 641 So.2d 1218, 1220 (Miss. 1994).  Likewise, because

President Obama has not been nominated by the Democratic National Convention as the Party's

nominee for President, the matter is not justiciable under the doctrine of ripeness.  *State ex rel.*

*Holmes v. Griffin*, 667 So.2d 1319, 1325 (Miss. 2005).

<strong>PLAINTIFFS ARE NOT ENTITLED TO DECLARATIONS OR INJUNCTIVE<br>RELIEF AS A MATTER OF LAW</strong>

21. Plaintiffs' request for declaratory or injunctive relief preventing President Obama from placement on

the ballot fail as a matter of law.  Plaintiffs seek (1) a declaratory judgment "deeming Barack Obama

not eligible to be on the ballot as a candidate for the U.S. Presidency due to fraud, lack of eligibility

and use of forged identification papers"; and (2) an injunction "preventing Secretary of State from

11

placing [President] Obama's name on the ballot in the general election and de-certifying/annulling

all votes for [President] Obama in the primary election."  See FAC at 43.  Both forms of requested

relief are unavailable to Plaintiffs as a matter of law, as previously articulated, and for the reasons set

forth below.[3]

**A.  Plaintiffs' legal claims purporting to expand the Constitutional requirement that the President be a "Natural Born Citizen" fail as a matter of law**

22. While Plaintiffs' FAC is in many respects incomprehensible, it appears that the legal basis for

Plaintiffs' claim that President Obama is not eligible for re-election is two-fold:  First, Plaintiffs

contend that President Obama has failed to produce his "identification papers."  *See* FAC at page 16

¶ 2 ("[t]he most glaring evidence of [President] Obama's lack of natural born status and legitimacy

for the US Presidency, is [his] lack of most basic valid identification papers").[4]  Second, Plaintiffs

contend that even if President Obama did produce "his papers," he would not qualify to serve as

President because both of his parents were not U.S. citizens at the time of his birth.  *See* FAC at page

14 ¶ 5.  Both arguments are frivolous and wholly without merit.

*The Constitution does not countenance Plaintiffs' "papers please" demands*

23. Plaintiffs have not – because they cannot – cited any authority whatsoever to justify their demand

that President Obama show them "identification papers" satisfactory to them.  The Constitution,

which provides in relevant part that "[n]o person except a natural born citizen . . . shall be eligible to

the office of President," does not support Plaintiffs' demands.  *See* U.S. CONST. art. II, § 1.[5]  Nor

---

[3] Plaintiffs are not alone.  More than one hundred "birther" challenges have been filed – and rejected – since 2008 (including more than twenty challenges filed by Taitz individually or on behalf of others).  *See* Exhibit A.

[4]  *See also id.* at page 12 ¶ 1 ("Obama never presented to any court of law or any elections commission any valid original identification papers or any valid certified copies, which can be used to verify the originals."); *id.* at 23 [unnumbered paragraph between ¶ 16 and ¶17] ("Based on all of the above, Obama does not have any valid identification papers . . . ."); *id.* at 25 [unnumbered second paragraph] ("Barack Hussein Obama does not have any valid U.S. identification papers and is constitutionally not eligible."); *id.* at 26 [unnumbered first paragraph] ("Obama never had any valid identification papers . . . .").

[5] Plaintiffs cannot credibly argue that the original intent of the provision was to require candidates to provide state-issued birth certificates, social security cards, or selective service registration forms, given that no such papers even existed at the

can Plaintiffs rely on any state or federal statute to claim that a candidate for the Presidency must provide "papers" to prove eligibility, because no such law exists. As such, the existence (or lack) of "identification papers" such as a social security card, selective service registration, or particular type of birth certificate is simply irrelevant to a candidate's eligibility to serve as President pursuant to Constitution Article II Section 1.

### The Constitution does not countenance Plaintiffs' heritage-based claims

24. Plaintiffs also contend that "since [President] Obama's father was a foreign national . . . he would have been a foreign national from birth based on his father's citizenship," he is not eligible for his office because the "meaning of natural born citizen as intended in the US Constitution, is one born in the country to two US citizen parents." *See* FAC at page 14 ¶ 5.

25. The contention that Barack Obama is not a natural born citizen because his father was not a citizen when President Obama was born is "without merit," as recently recognized by the District Court in *Tisdale v. Obama*, where plaintiff Charles Tisdale raised the identical argument.[6] In *Tisdale*, plaintiff sought an injunction to prevent the Virginia State Board of Elections from certifying any candidate who lacks standing as a "natural born citizen" from appearing on the 2012 election ballot. There, as here, plaintiff argued that President Obama is "ineligible to appear on the ballot, on the grounds that [he] had at least one parent who was not a citizen of the United States." The District Court firmly rejected this frivolous argument, stating the obvious:

---

time the Constitution was drafted. The Social Security Administration was created by the Social Security Act of 1935. *See* 42 U.S. § 401 *et seq.* The Selective Service Registration System was created by the Selective Service Act of 1917. *See* 40 Stat. 76. Mandated registration of births with the various states was not implemented until, at the earliest, the mid-1800s. *See* AM HETZEL, HISTORY AND ORGANIZATION OF THE VITAL STATISTICS SYSTEM, Appendix II at 58 (National Center for Health Statistics 1997), available at http://www.cdc.gov/nchs/data/misc/usvss.pdf (last visited May 3, 2012) (Motion Exhibit 8).

[6] *Tisdale v. Obama,* No. 3:12-cv-00036-JAG (E.D. Va. Jan. 23, 2012) (dismissing in *forma pauperis* complaint pursuant to 28 USC 1915(e)(2)(B)(ii), which requires the district court to assess the merits of the pauper's tendered complaint), *appeal pending*, No. 12-1124 (4th Cir. filed Jan. 30, 2012).

> "It is well settled that those born in the United States are considered natural born citizens.
> *See, e.g.*, *United States v. [Wong Kim] Ark*, 169 U.S. 649, 702 (1898) ("Every person
> born in the United States, and subject to the jurisdiction thereof, becomes at once a
> citizen of the United States."); *Perkins v. Elg*, 99 F.2d 408, 409 (1938). Moreover, "those
> born 'in the United States, and subject to the jurisdiction thereof,' . . . have been
> considered American citizens under American law in effect since the time of the
> founding . . . and thus eligible for the presidency." *Hollander v. McCain*, 566 F. Supp.
> 2d 63, 66 (D.N.H 2008)."

*Tisdale v. Obama*, No. 3:12-cv-00036-JAG (E.D. Va. Jan. 23, 2012), Order at 2. Additionally, a

New York state court also recently found the argument advanced by Plaintiffs to be frivolous:

> "Despite plaintiff's assertions, Article II, Section 1. . . does not state this. No legal
> authority has ever stated that the natural born citizen clause means what [plaintiff] claims
> it states. The phrase 'natural born Citizen' is not defined in the Constitution, nor does it
> appear anywhere else in the document . . . . [Plaintiff] cannot wish into existence an
> interpretation that he chooses for the natural born citizen clause." There is no arguable
> legal basis for the proposition that both parents of the President must have been born on
> U.S. soil. This assertion is [] frivolous."

*Strunk v. NY Bd. of Elections et al*, No. 006500/2011 (N.Y. King County Supr. Ct. Apr. 12, 2012)

(internal quotations omitted) (dismissing complaint challenging, among other things, President

Obama's eligibility to his office and issuing a show cause order as to why sanctions should not be

imposed upon plaintiff), Order at 37. These cases are among several court and administrative

hearing cases holding that Barack Obama is a natural born citizen, eligible to serve as President. For

example, in 2009 the Indiana Court of Appeals affirmed a lower court's dismissal of a complaint

filed during the 2008 election based on the same heritage-based argument advanced by Plaintiffs

here for failure to state a claim upon which relief can be granted. *See Ankeny v. Daniels*, 916 N.E.2d

678, 688 (Ind. Ct. App. 2009) *transfer denied* 929 N.E.2d 789 (Ind. 2010). The *Ankeny* plaintiffs –

like Plaintiffs here – argued that, "because his father was a citizen of the United Kingdom, President

Obama is constitutionally ineligible to assume the Office of the President." 916 N.E.2d at 685. The

court firmly rejected this argument, recognizing that

> "based upon the language of Article II, Section 1. . . and the guidance provided by *Wong
> Kim Ark*, we conclude that persons born within the borders of the United States are

14

'natural born citizens' for Article II, Section 1 purposes, regardless of the citizenship of their parents.  Just as a person born within the British dominions was a natural-born British subject' at the time of the framing of the U.S. Constitution, so too were those born in the allegiance of the United States natural-born citizens."

*Ankeny v. Daniels*, 916 N.E.2d at 688.  Similarly, a state court in Arizona earlier this year rejected the identical argument advanced by Plaintiffs here and, like the courts in *Tisdale, Strunk, and Ankeny*, recognized that United States Supreme Court precedent – i.e., *Wong Kim Ark* – "fully supports that President Obama is a natural born citizen under the Constitution and thus qualified to hold the office of President."  *Allen v. Obama et al*, No. C20121317 (Ariz. Pima County Super. Ct. Mar. 7, 2012), appeal filed (Mar. 8, 2012).

26. Notwithstanding this clearly established precedent, Plaintiff Taitz and those who share her views continue to parrot these arguments to various courts and regulatory agencies around the country. Not surprisingly given the clearly established precedent, in each and every instance where their heritage-based argument has been considered, Plaintiffs' argument has been soundly and firmly rejected – including one instance involving a lengthy evidentiary hearing at which Taitz offered most of the same exhibits attached to the FAC as "evidence," put several of the same witnesses on the stand whose affidavits are attached to the FAC, and even personally testified with no opposition present to represent the President's interests.  *See Farrar v. Obama*, No. OSAH-SECSTATE-CE-1215136-60 -MALIHI (Ga. Office of St. Admin. Hrg. Feb. 3, 2012) (rejecting challenge to President Obama's eligibility to appear on 2012 ballot in Georgia after holding an evidentiary hearing; finding that President Obama is a "natural born citizen").  In total, the MDEC has identified eight written decisions issued in seven different states to date, in which Plaintiffs' heritage-based argument has been squarely considered – and flatly rejected.[7]

---

[7] *See* Exhibit B for copies of these decisions.

27. In their FAC, Plaintiffs simply ignore the controlling authority of *Wong Kim Ark*, and instead cite to an earlier U.S. Supreme Court decision, *Minor v. Happersett*. See FAC at page 24. However, as even a cursory reading of *Minor* confirms – and as every court to consider the argument advanced by Plaintiffs has held – *Minor* does not come close to supporting Plaintiffs' argument. *See, e.g., Allen v. Obama et al*, Order at 2 ("[c]ontrary to Plaintiffs' assertion, *Minor v. Happersett*. . . does not hold otherwise"); *Ankeny v. Daniels*, 916 N.E.2d at 686 ("the [*Minor*] Court left open the issue of whether a person who is born within the United States of alien parents is considered a natural born citizen"); *Farrar v. Obama*, Decision at 8 (same); *Purpura v Obama*, No. STE 04588-12 (N.J. Office of Admin Law Apr. 10, 2012), Decision at 6 n.2 (recognizing that *Minor* Court discussion of term was *dicta*).

28. In short, Plaintiffs' argument – which is at the core of Taitz's "Sisyphean quest"[8] to unseat President Obama – is founded upon their inability to accept the obvious:

> "The constitutional history, the nearly unanimous consensus of legal and constitutional scholars, and the consistent, relevant case law thus indicate that every child born in and subject to the jurisdiction of the United States (that is, not children of diplomatic personnel representing a foreign nation or military troops in hostile occupation), is a native born U.S. citizen and thus a "natural born Citizen" eligible to be President under the qualifications clause of the Constitution, regardless of the nationality or citizenship of one's parents. The legal issues regarding "natural born" citizenship and birth within the United States, without regard to lineage or ancestral bloodline, have been well settled in this country for more than a century, and such concepts date back to, and even pre-date, the founding of the nation."

Jack Maskell, Cong. Research Srv., No. R42097, Qualifications for President and the "Natural Born" Citizenship Eligibility Requirement (2011) (Exhibit C) at 50.

29. As another U.S. District Court judge observed in passing on Taitz's frivolous eligibility claims,

"[u]nlike in Alice in Wonderland, simply saying something is so does not make it so."[9]  Plaintiffs'

---

[8] *See Taitz v. Ruemmler,* No. 1:11-CV-01421, 2011 WL 4916936, *1 (D.D.C. Oct. 17, 2011) (characterizing the twelfth case filed and/or participated in by Taitz as "part of her Sisyphean quest to prove that President Barack Obama is using a fake Social Security number and a forged birth certificate").

heritage-based citizenship theory has no support in the U.S. Constitution or the holdings of the U.S.

Supreme Court, and it has been rejected by each and every court to consider it.  As a matter of law,

Plaintiffs' claims that President Obama has to provide them with satisfactory papers of his status

and, alternatively, that he cannot do so because his father was not a U.S. citizen when President

Obama was born, fail to state claims for declaratory relief or injunction, and invalidate any other

claim premised on their desired interpretation of the presidential qualifications clause.

**B.  Plaintiffs' claim that President Obama is ineligible because of purportedly "invalid" "identification papers" is frivolous.**

30. Plaintiffs expressly reference the "short form" Certificate of Live Birth issued by the Obama For

America campaign in 2008 (hereafter "COLB") as well as the "long form" Certification of Live

Birth published by the White House in 2011 (hereafter "LFBC"),[10] and spend the bulk of their FAC

(and more than one hundred pages of often unintelligible and illegible exhibits) alleging that

"experts" have determined that these documents and other "identification papers" are invalid.[11]

However, even if Plaintiffs were able to prove such spuriously baseless claims, their requested relief

would still be unavailable as a matter of law for the reasons set forth below.

31. *First*, as noted above, Plaintiffs' demand for President Obama's papers is wholly without merit

because "identification papers" are not a requirement for eligibility in the Constitution and Plaintiffs'

---

[9] *Rhodes v. MacDonald*, No. 409-CV-106CDL, 2009 WL 2997605, *4 (M.D. Ga. Sept. 16, 2009) (rejecting claim brought by Taitz on behalf of military servicewoman as frivolous), *subsequent order*, 670 F. Supp. 2d 1363 (M.D. Ga. 2009) (imposing $20,000 sanction for violating Rule 11 by filing frivolous motions), *aff'd*, 368 Fed. App'x 949, (11th Cir. 2010), *reh'g denied*, No. 09-15418-BB (11th Cir. May 14, 2010), *app. for stay denied*, 131 S. Ct. 44 (2010), *cert. denied*, 131 S. Ct. 918 (2011).

[10] *See* FAC at page 12 ¶ 1 and page 36 ¶ b.  Although Plaintiffs do attach a couple copies of the LFBC to their FAC, it – like many of Plaintiffs exhibits – is barely legible.  While Plaintiffs reference the COLB in their FAC (at page 36 ¶ b), the MDEC was unable to find a copy of that document contained in Plaintiffs voluminous and disorganized exhibits.  Therefore, the MDEC has attached to its Motion a legible a copy of the LFBC (Motion Exhibit 1) and COLB (Motion Exhibit 2).

[11] It is worth noting that in a substantively identical case adjudicated by Plaintiff Taitz in Georgia, the same "evidence" upon which she relies in this case by attaching it as exhibits to her FAC was deemed "to be of little, if any, probative value," and the same witnesses whose affidavits she attaches to the FAC were deemed not qualified to testify as "experts." *See Farrar v. Obama*, No. OSAH-SECSTATE-CE-1215136-60-MALIHI (Ga. Office of St. Admin. Hrg. Feb. 3, 2012), Decision at page 4.  Inexplicably, Plaintiffs have attached as an exhibit to their complaint, a copy of the hearing transcript upon which the order rejecting all of Taitz's so-called "evidence" was based.  *See* Doc. #1-1 at 112-157.

heritage-based argument is equally frivolous because, under clearly established precedent, a person born in the United States is a "natural born citizen" without regard to his heritage. Here, Plaintiffs have failed to even claim – much less provide any factual allegations to support such a claim – that President Obama was born anywhere other than the United States. As such, Plaintiffs have not adequately alleged – nor could they within the constraints of Rule 11 – that President Obama is not a natural born citizen as required by the Constitution.

32. **Second**, irrespective of the contents of President Obama's publicly released birth records, the Hawaii Department of Health has independently verified that President Obama was born in Hawaii. In reviewing a motion for judgment on the pleadings, the Court may consider (1) the complaint, (2) documents attached to the complaint, (3) documents incorporated into the complaint by reference, and (4) matters of which a court may take judicial notice. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted) (finding that district court appropriately took judicial notice of publicly-available documents and transcripts produced by the FDA, "which were matters of public record directly relevant to the issue at hand" in ruling on a 12(b)(6) motion).[12] *See also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002) (same standard applies to Rule 12(c) motions as is used for Rule 12(b)(6) motions.) As such, the Court may take judicial notice of the fact that the State of Hawaii has independently verified that President Obama was born in Hawaii:

---

[12] *See also Maloney Gaming Management, L.L.C. v. St. Tammany Parish*, 456 Fed. App'x 336, 340-41 (5th Cir. 2011) (district court properly considered items attached to motion to dismiss § 1983 complaint, including "prohibiting ordinance, documents indicating that parish's department of planning had no objection to property owner receiving occupational licenses with handwritten notation "assembly hall," and occupational business licenses issued to property owner, and all those documents were referenced in property owner's complaint and were thus central to the claims") citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (consideration of insurance contracts referred to, but not attached to, complaint was permissible where they were attached to motions to dismiss and were central to plaintiffs' claims); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

"I, Dr. Chiyome Fukino, Director of the Hawai`i State Department of Health, have seen the original vital records maintained on file by the Hawai`i State Department of Health verifying Barack Hussein Obama was born in Hawai`i and is a natural-born American citizen."

*See* State of Hawaii Department of Health News Release, Statement By Health Director Chiyome Fukino, M.D. (July 27, 2009) (Motion Exhibit 7).[13]

33. **Third**, the Court may take judicial notice of the fact that Hawaii Department of Health has verified the authenticity of the LFBC published by the White House in 2011 (hereafter "LFBC").  In 2011, Loretta Fuddy, Director of the Hawaii State Department of Health stated in publicly released documents as follows:

"We hope that issuing certified copies of the original Certificate of Live Birth to President Obama will end the numerous inquiries related to his birth in Hawai`i," . . . *I have seen the original records filed at the Department of Health and attest to the authenticity of the certified copies the department provided to the President that further prove the fact that he was born in Hawai`i.*"

*See* State of Hawaii Governor Neil Abercrombie, Hawaii Health Department Grants President Obama's Request For Certified Copies Of 'Long Form' Birth Certificate (April 27, 2011) (Motion Exhibit 4) (emphasis supplied).[14]  Additionally, the Hawaii Department of Health has verified that the LFBC posted online by the White House is a copy of the certified LFBC that was provided by the Hawaii Department of Health:

---

[13] This document is available on the official Hawaii state government website at http://hawaii.gov/health/about/pr/2009/09-063.pdf (last visited May 2, 2012).  *See also* Hawaii State Department of Health Press Release No. 08-93 (October 31, 2008) (Motion Exhibit 6), available at http://hawaii.gov/health/about/pr/2008/08-93.pdf (last visited May 2, 2012) ("I have personally seen and verified that the Hawaii State Department of Health has Sen. Obama's original birth certificate on record in accordance with state policies and procedures.").  In January 2011, Dr. Fuddy was appointed as Director of the Hawaii Department of Health, replacing former Director Fukino.  *See* http://hawaii.gov/gov/newsroom/in-the-news/loretta-fuddy-appointed-health-director-5 (last visited May 3, 2012).

[14] This document is available on the official Hawaii state government website at http://hawaii.gov/health/vital-records/News_Release_Birth_Certificate_042711.pdf (last visited May 2, 2012). *See also* April 25, 2011 Letter from Director Loretta Fuddy to President Obama (Motion Exhibit 5), available at http://hawaii.gov/health/vital-records/obama.html (last visited May 2, 2012) ("Enclosed please find two certified copies of your original Certificate of Live Birth. *I have witnessed the copying of the certificate and attest to the authenticity of these copies.*") (emphasis added).

"On April 27, 2011 President Barack Obama posted a certified copy of his original Certificate of Live Birth.  For information go to []www.whitehouse.gov/blog/2011/04/27/president-obamas-long-form-birth-certificate."

*See* Motion Exhibit 3.[15]

34. ***Fourth***, the United States Supreme Court has held that a candidate who meets the qualifications set forth in the text of the Constitution for a federal office and is elected to that office, may not be denied the office on the basis of alleged wrongdoing.  *See Powell v. McCormack*, 395 U.S. 486 (1969).  Indeed, such an extra-Constitutional restriction is contrary to the "fundamental principle of our representative democracy," embodied in the Constitution, that "the people should choose whom they please to govern them."  *Powell*, 395 U.S. at 547; *see also U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 827 (1995) ("the available historical and textual evidence, read in light of the basic principles of democracy underlying the Constitution and recognized by this Court in Powell, reveal the Framers' intent that neither Congress nor the States should possess the power to supplement the exclusive qualifications set forth in the text of the Constitution").  As such, even if Plaintiffs' spurious and baseless allegations of wrongdoing were true (which they are not), the Constitution would still preclude Plaintiffs from obtaining the relief they seek.  (Under *Powell*, Plaintiffs' RICO claim, addressed in more detail below, similarly does not provide a basis for holding that President Obama is disqualified from the 2012 ballot.)

35. In short, President Obama was born in the United States of America.  Plaintiffs have neither claimed he was born anywhere else nor provided any factual allegations to support such a claim.  With respect to Plaintiffs claims of forged documents, the Court need not accept such allegations as true where, as here, documents of which the Court may take judicial notice prove the falsity of such claims, and, moreover, the United States Supreme Court has clearly held that such allegations may

---

[15] This information is available on the official Hawaii state government website at http://Hawai'i.gov/health/vital-records/obama.html.  It is worth noting that the Hawaii Department of Health also includes at this link information regarding President Obama's birth contained in the publicly-available birth index, which yet further confirms his Hawaiian birth.

not form the basis of a candidate's disqualification under the Constitution.  Therefore, Plaintiffs'

claim that Obama is ineligible to be placed on the 2012 election ballot based on their various and

sundry (and baseless) allegations of wrongdoing fail as a matter of law.

### PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW

36. Plaintiffs base their purported RICO claim on the supposed "fraud" being perpetrated on the

American people by an allegedly ineligible candidate serving in or running for the office of

President of the United States.  While the RICO claim is infirm precisely because Plaintiffs have not

and cannot plead "fraud" based on ineligibility – because President Obama is eligible – the RICO

claim is also frivolous since it does not allege an economic injury, any "enterprise" comprised of the

Defendants (who now include not only the Mississippi Democratic Party but also Hawaii health

officials, the former Speaker of the House, the President and the Commissioner of Social Security),

or any of the other requirements of the RICO statute.

37. This is not the first time RICO pleadings from Taitz relating to the eligibility of President Obama

have been found deficient.  In *Taitz v. Obama*, 707 F. Supp. 2d. 1 (D.D.C. 2010), a purported "quo

warranto" case that Taitz attempted to amend in order to plead a RICO claim, the court explained

what Taitz needed to allege, and how she fell woefully short, not merely for pleading a RICO claim

but for pleading a fraud claim:

> "Ms. Taitz's claims under the Racketeer Influenced and Corrupt Organization Act
> (RICO) are also defective.  In order to bring a claim under 18 U.S.C. § 1962 a civil
> plaintiff must allege:
>
> > (1) That the defendant (2) through the commission of two or more acts (3)
> > constituting a "pattern" (4) of "racketeering activity" (5) directly or
> > indirectly invests in, or maintains an interest in, or participates in (6) an
> > "enterprise" (7) the activities of which affect interstate or foreign
> > commerce. . . . [P]laintiff must [also] allege that he was "injured in his
> > business or property by reason of [the] violation of § 1962." *Moss v.
> > Morgan Stanley, Inc*., 719 F.2d 5, 17 (2d Cir.1983).

> The Court first addresses the predicate acts Ms. Taitz has alleged.  First of all, neither violations of 42 U.S.C. § 1983 nor 42 U.S.C. § 1985 are "racketeering activities" which could be the basis for Ms. Taitz's RICO claim.  *See* 18 U.S.C. § 1961(a) (defining which offenses are racketeering activities).  They thus are not actionable as violations of section 1962.  With respect to the various allegations of fraud–and fraud indeed is a predicate act for purposes of RICO liability–Ms. Taitz has failed to sufficiently plead her claims.  To the degree a RICO complaint sounds in fraud, the plaintiff must meet Rule 9(b)'s particularity requirements.  *See Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir.1992).  As the Court observed earlier, Ms. Taitz's fraud claims fail to even meet the standards of Rule 8, much less the heightened requirements of Rule 9(b).  *Iqbal*, 129 S.Ct. at 1954.  As such, she has failed to state a claim upon which relief may be granted and her RICO claims will be dismissed.  FED.R.CIV.P. 12(b)(6)."

*Taitz v. Obama*, 707 F. Supp. 2d. at 5.  What Taitz has done here is to add more defendants (none of whom had been served as of the date of removal) to Taitz's expanded election challenge, add a number of additional Plaintiffs, and aver the alleged conduct discussed above which is, nevertheless, not actionable under the RICO statute.

38. Plaintiffs allege a conspiracy among a disparate group of defendants, including Hawaii Health Department officials, the Commissioner of Social Security, the President of the United States and the former Speaker of the House of Representatives for alleged acts that occurred over a five-year period, from 2007 to the present, purportedly as a massive cover up of President Obama's supposed ineligibility.  As to MDEC, Plaintiffs only plead that Taitz – who is neither a registered Mississippi voter nor even a resident of our state and who did not purport to represent any citizen of Mississippi – "advised" MDEC of President Obama's alleged ineligibility and MDEC did nothing about it.  *See* FAC page 14-15, ¶¶ 5-6 and pages 29-30 (unnumbered paragraph) (referring to MDEC as an "aider and abetter").  There are no allegations that MDEC acted in concert with anyone, conspired with anyone, or did anything.  The sole factual allegation upon which Plaintiffs base their RICO claim against MDEC is that it ignored Taitz's preposterous claims.

39. Setting aside the fact that Plaintiffs have not alleged any actionable predicate acts (ignoring Orly

Taitz is not among the crimes listed in 18 U.S.C. § 1962), two additional and fatal infirmities in the

RICO pleading are these:

40. ***First***, in order to have RICO standing, a plaintiff must have been "injured in his business or

property."  18 U.S.C. § 1964(c).  Non-economic harms, such as defamation, personal injury and

similar non-monetary injuries, do not constitute sufficient injury to "business or property."  *See, e.g.,*

*Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 606-607 (5th Cir. 1998 ) (no tangible loss alleged);

*Gaines v. Texas Tech Univ.*, 965 F. Supp. 886, 890-891 (N.D. Tex. 1997) (personal injury and loss

of educational opportunities insufficient).  By parity of reasoning, injury to one's political rights is

also not sufficient.  Nor may the Plaintiffs base their standing on injury to others.  *See Crawford*

*Arms, Inc. v. Waste Management*, 23 F. Supp. 2d 676, 678-79 (S.D. Miss. 1998).  Thus, Plaintiffs do

not have RICO standing.

41. ***Second***, Plaintiffs have failed to plead an "enterprise," and have failed to plead that the Defendants

conducted the "enterprise" as is required for a RICO claim.  *See Parker & Parsley Petroleum Co. v.*

*Dresser Indus*., 972 F.2d 580, 584 (5th Cir. 1992); *Terrell v. Hancock Bank*, 7 F. Supp. 2d 812, 818-

819 (S.D. Miss. 1998).  Instead, Plaintiffs allege only that there were a number of disparate acts

conducted by a number of people over a period of time relating to maintaining President Obama's

birth records, social security records and support for campaigns for President.  This is insufficient.

A RICO "enterprise" requires "an ongoing organization with some sort of framework, formal or

informal, for carrying out its objectives" and that "the various members and associates of the

association function[ed] as a continuing unit to achieve a common purpose."  *Boyle v. United States*,

556 U.S. 939, 951 (2009).  No such allegations appear here.  Nor does the FAC allege that any of the

defendants "conducted the affairs" of the enterprise.  *See Reves v. Ernst & Young*, 507 U.S. 170,

23

183-185 (1993).  Needless to say, the FAC falls woefully short of the allegations required to show that Defendants operated an enterprise that caused economic injury to Plaintiffs.

42. Simply put, Plaintiffs cannot plead a viable RICO claim.  What they have pleaded is frivolous. Defendants are entitled to a judgment on the pleadings with respect to the RICO claim.

WHEREFORE, PREMISES CONSIDERED, the Mississippi Democratic Party Executive Committee hereby moves the Court to grant its Motion for Judgment on the Pleadings and dismiss the matter with prejudice because amendment cannot cure any of these defects.

THIS the 8th day of May, 2012.

Respectfully submitted,

**THE MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE COMMITTEE**

By: /s/ Samuel L. Begley
       Samuel L. Begley (MSB No. 2315)

By: /s/ Scott J. Tepper
       Scott J. Tepper (Admitted *pro hac vice*)

**OF COUNSEL:**
BEGLEY LAW FIRM, PLLC
P. O. Box 287
Jackson, MS 39205
(601) 969-5545 (Telephone)
(601) 969-5547 (Facsimile)
Email: sbegley1@bellsouth.net

SCOTT J. TEPPER
GARFIELD & TEPPER
1801 Century Park East, Suite 2400
Los Angeles, CA 90067-2326
(310) 277-1981(Telephone)
(310) 277-1980 (Facsimile)
Email: scottjtepper@msn.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the date set forth hereinafter, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Harold E. Pizzetta, Esq.
Justin L. Matheny, Esq.
Office of the Attorney General
550 High Street, Suite 1200
P.O. Box 220
Jackson, MS 39205

Scott J. Tepper
Garfield & Tepper
1801 Century Park East, Suite 2400
Los Angeles, CA 90067-2326
scottjtepper@msn.com

Orly Taitz, Esq.
29839 Santa Margarita Parkway, Suite 100
Rancho Santa Margarita, CA 92688

And to the following persons by email:

Brian Fedorka
Bfedorka82@gmail.com

Laurie Roth
drljroth@aol.com

Leah Lax
Leahlax1234@aol.com

Tom MacLeran
tom@macleran.com

THIS the 8th day of May, 2012.


/s/ Samuel L. Begley
SAMUEL L. BEGLEY