# Exhibit B

**DECISIONS RECOGNIZING THAT OBAMA IS A "NATURAL BORN CITIZEN"**

**TABLE OF CONTENTS**

DECISION...........................................................................................................................TAB

***Allen v. Obama et al***, No. C20121317 (Ariz. Pima County Super. Ct., Mar. 7, 2012) (dismissing case challenging Obama's eligibility to be on the 2012 ballot; finding that Obama is a "natural born citizen" under *Wong Kim Ark*; and expressly rejecting argument that *Minor v. Happersett* holds otherwise), *appeal filed* (Ariz. App. Ct. 2d Div., Mar. 8, 2012) ...............................................................A

***Ankeny v. Daniels***, 916 N.E.2d 678 (Ind. Ct. App. 2009) ("based upon the language of Article II, Section 1, Clause 4 and the guidance provided by *Wong Kim Ark*, we conclude that persons born within the borders of the United States are "natural born citizen's" for Article II, Section 1 purposes, regardless of the citizenship of their parents") *transfer denied* 929 N.E.2d 789 (Ind. 2010) ..................................B

***Farrar v. Obama***, No. OSAH-SECSTATE-CE-1215136-60-MALlHI (Ga. Office of St. Admin. Hrg. Feb. 3, 2012) (rejecting challenge to Obama's eligibility to appear on 2012 ballot; finding that Obama was born in U.S. and is a "natural born citizen"), *decision adopted as final* (Ga. Sec'y of State Feb. 7, 2012). *appeal dismissed*, No. 2012CV211398 (Ga. Fulton County Super. Ct. Mar. 2, 2012), *recons. denied* (Mar. 14, 2012), *appeal denied,* No. S12D1180 (Ga. Apr. 11, 2012). .....................................................................................................................C

***Galasso v. Obama***, No. STE 04534-12 (N.J. Office of Admin Law Apr. 10, 2012) (initial decision rejecting challenge to Obama's 2012 nominating position and finding that, assuming Obama was born in Hawaii, he is a "natural born citizen" eligible for the presidency per *Ankeny* and *Wong Kim Ark*) ), *decision adopted as final* (N.J. Sec'y of State Apr. 12, 2012) .....................................................................D

***Freeman v. Obama***, 12 SOEB GP 103 (Ill. Bd. of Elections Hearing Officer Recommendation Jan. 27, 2012) (Obama's birth certificate "clearly establishes" his eligibility for office as a "natural born citizen"), *objection overruled* (Ill. Board of Elections, Feb. 3, 2012) ...........................................................................E

***Jackson v. Obama***, 12 SOEB GP 104 (Ill. Bd. of Elections Hearing Officer Recommendation Jan. 27, 2012) (Obama's birth certificate "clearly establishes" his eligibility for office as a "natural born citizen"), *objection overruled* (Ill. Bd. of Elections, Feb. 3, 2012) ..............................................................................F

**Powell v. Obama**, No. OSAH-SECSTATE-CE-1216823-60-MALIHI (Ga. Office of St. Admin. Hrg. Feb. 3, 2012) (rejecting challenge to Obama's eligibility to appear on 2012 ballot; finding that Obama was born in U.S. and is a "natural born citizen"), *decision adopted as final* (Ga. Sec'y of State Feb. 7, 2012), *appeal dismissed*, No. 2012CV211528 (Ga. Fulton County Super. Ct., Mar. 2, 2012), *motion for injunction denied,* No. S12D1077 (Ga. Mar. 13, 2012), *appeal denied* (Ga. Apr. 4, 2012) ................................................................................................ *C[1]*

**Purpura v Obama**, No. STE 04588-12 (N.J. Office of Admin Law Apr. 10, 2012) (initial decision rejecting challenge to Obama's 2012 nominating position and finding that, assuming Obama was born in Hawaii, he is a "natural born citizen" eligible for the presidency per *Ankeny* and *Wong Kim Ark*) ), *decision adopted as final* (N.J. Sec'y of State Apr. 12, 2012) .................................................. *D[2]*

**Strunk v. NY Bd. of Elections et al**, No. 006500/2011 (N.Y. King County Supr. Ct. Apr. 12, 2012) (dismissing complaint challenging, among other things, President Obama's eligibility to his office; expressly rejecting the birther claim that Obama is ineligible on the basis of his father's citizenship as frivolous, and issuing a show cause order as to why sanctions should not be imposed upon plaintiff) ........................................................................................................................G

**Swensson v. Obama,** No. OSAH-SECSTATE-CE-1216218-60-MALIHI (Ga. Office of St. Admin. Hrg. Feb. 3, 2012) (rejecting challenge to Obama's eligibility to appear on 2012 ballot; finding that Obama was born in U.S. and is a "natural born citizen"), *decision adopted as final* (Ga. Sec'y of State Feb. 7, 2012), No. 2012CV211527 (Ga. Fulton County Super. Ct., Mar. 2, 2012), *motion for injunction denied,* No. S12D1076 (Ga. Mar. 13, 2012), *appeal denied* (Ga. Apr. 4, 2012) ................................................................................................ *C[3]*

**Tisdale v. Obama**, No. 3: 12-cv-00036-JAG (E.D. Va. Jan. 23, 2012) (order dismissing complaint) (dismissing in *forma pauperis* complaint pursuant to 28 USC 1915(e)(2)(B)(ii) and holding that "[i]t is well settled that those born in the United States are considered natural born citizens" and  that plaintiff's contentions otherwise are "without merit"), *appeal pending*, No. 12-1124 (4th Cir., filed Jan. 30, 2012) .............................................................................................H

---

[1] The *Powell v. Obama* case, while a separate objection/action, was consolidated with *Farrar v. Obama* before the OSAH, the Georgia Secretary of State, and the trial court appeal.

[2] The *Purpura et al v. Obama* case, while a separate objection/action, was consolidated with *Galasso v. Obama* before the New Jersey Office of Administrative law and New Jersey Secretary of State.

[3] The *Swensson v. Obama* case, while a separate objection/action, was consolidated with *Farrar v. Obama* before the OSAH, the Georgia Secretary of State, and the trial court appeal.

DECISIONS RECOGNIZING THAT OBAMA IS A "NATURAL BORN CITIZEN"

**Welden v. Obama**, No. OSAH-SECSTATE-CE-1215137-60-MALIHI (Ga. Office of St. Admin. Hrg. Feb. 3, 2012) (rejecting challenge to Obama's eligibility to appear on 2012 ballot; finding that Obama was born in U.S. and is a "natural born citizen"), *decision adopted as final* (Ga. Sec'y of State Feb. 7, 2012), *appeal dismissed*, No. 2012CV211527 (Ga. Fulton County Super. Ct., Mar. 2, 2012), *motion for injunction denied,* No. S12D1059 (Ga. Mar. 13, 2012), *appeal denied* (Ga. Apr. 4, 2012) .............................................................................. C[4]

---

[4] The *Welden v. Obama* case, while a separate objection/action, was consolidated with *Farrar v. Obama* before the OSAH, the Georgia Secretary of State, and the trial court appeal.

# TAB A

FILED
PATRICIA NOLAND
CLERK, SUPERIOR COURT
3/7/2012 3:47:54 PM

ARIZONA SUPERIOR COURT, PIMA COUNTY

HON. RICHARD E. GORDON          CASE NO.      C-20121317
JUDGE

                                DATE:         March 07, 2012

KENNETH ALLEN,
        Plaintiff,

VS.

ARIZONA DEMOCRATIC PARTY, et al.,
        Defendants.

---

## R U L I N G

**IN CHAMBERS UNDER ADVISEMENT RULING**

Pending before the Court is Plaintiff's "Ballot Challenge Pursuant to A.R.S. § 16-351(B) and Article II Section 1 Clause 5 of the United States Constitution and Rule 8." Plaintiff claims that President Obama cannot stand for reelection because he is not a "natural born citizen" as required by the United States Constitution. U.S. Const. art. II, § 1, cl. 5. According to Plaintiff this is so because President Obama's father was a resident of Kenya and thus a British citizen. (Complaint ¶¶ 4-6, 9-34.)

The Arizona Democratic Party has filed a Motion to Dismiss pursuant to Ariz. R. Civ. P. 12(b)(6), (7). The Democratic Party argues that dismissal is appropriate based on the absence of legal merit and because Plaintiff failed to make the Secretary of State and all of Arizona's county boards of supervisors parties to this lawsuit. The Court has reviewed all of the memoranda submitted and, yesterday, on March 6, 2012, held a hearing. For the following reasons, the Court will deny the relief requested by Plaintiff and dismiss this case.

**A. Standard**

When determining whether to dismiss a claim, the trial court should consider the well-pled factual allegations contained in the pleading. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419 ¶ 7, 189 P.3d 344, 346 (2008). The trial court must assume the truth of the pleading's well-pled factual allegations and indulge all reasonable inferences resulting therefrom. *Id.* Dismissal is proper only if the plaintiff "would not be entitled to relief under any facts susceptible of proof in the statement of the claim." *Mohave Disposal, Inc. v. City of Kingman*, 186 Ariz. 343, 346, 922 P.2d 308, 311 (1996).

                                        Mary Dimond
                                        Judicial Administrative Assistant

**R U L I N G**

**B.   Discussion**

Preliminarily, the Court notes that Plaintiff's ballot challenge does not fit neatly, if at all, within A.R.S. § 16-351.  Although Arizona courts have addressed challenges dealing with federal offices, *see, e.g., Harless v. Lockwood,* 85 Ariz. 97, 100, 332 P.2d 887, 888 (1958), the current controversy over the President's qualification under the United States Constitution to hold the office of the President of the United States is uniquely federal in character and better suited for the federal courts to handle following the upcoming Presidential election.  *See Markham Robinson v. Bowen*, 567 F.Supp.2d 1144, 1147 (N.D.Cal. 2008); *see also Keyes v. Bowen*, 117 Cal.Rptr.3d 207, 216-17 (Cal. Ct. App.), *cert. denied*, __ U.S. __, 132 S.Ct. 199 (2011). But even assuming that the current challenge falls within this Court's purview to decide, there are indispensable parties, most notably Arizona's Secretary of State, who has not been named in the lawsuit.  *See* A.R.S. § 16-344(A), (B).  Most importantly, Arizona courts are bound by United States Supreme Court precedent in construing the United States Constitution, *Arizona v. Jay J. Garfield Bldg. Co.*, 39 Ariz. 45, 54, 3 P.2d 983, 986 (1931), and this precedent fully supports that President Obama is a natural born citizen under the Constitution and thus qualified to hold the office of President.  *See United States v. Wong Kim Ark*, 169 U.S. 649, 702-03 (1898) (addressing U. S. Const. amend. XIV); *Ankeny v. Governor of the State of Indiana*, 916 N.E.2d 678, 684-88 (Ind. App. 2010) (addressing the precise issue).  Contrary to Plaintiff's assertion, *Minor v. Happersett*, 88 U.S. 162 (1874), does not hold otherwise.

Finally, Plaintiff has filed a Motion to Stay Proceedings to Gather Important Information for Court's Deliberations.  Plaintiff argues that he would like more time to present evidence and case law and, given his *pro se* status, leniency is proper.  The absence of an attorney, however, does not entitle Plaintiff to favorable consideration, *Copper State Bank v. Saggio*, 139 Ariz. 438, 442, 679 P.2d 84, 88 (App. 1984), and – in any event – the matters which Plaintiff seeks to present would not, in the Court's opinion, change the outcome of the decision in this case.  *Cf.* Ariz. R. Civ. P. 56(f).  The Court will not grant a stay under these circumstances.

**C.   Conclusion**

Accordingly, and upon careful consideration,

**IT IS ORDERED GRANTING** the Arizona Democratic Party's Motion to Dismiss for the reasons stated herein and **DENYING** all relief requested.

**IT IS FURTHER ORDERED DISMISSING** with prejudice Plaintiff's "Ballot Challenge Pursuant to A.R.S. § 16-351(B) and Article II Section 1 Clause 5 of the United States Constitution and Rule 8."

_____
Mary Dimond
Judicial Administrative Assistant

**R U L I N G**

**IT IS FURTHER ORDERED DENYING** all other pending motions, including the Arizona Democratic Party's Motion to Strike and Plaintiff's Motion to Stay Proceedings to Gather Important Information for Court's Deliberations.

/s/

HON. RICHARD E. GORDON
(ID: eb559920-8b82-4e77-a9ba-e92c395b0297)

cc:     Daniel S. Jurkowitz, Esq.
        Paul F. Eckstein, Esq.
        Kenneth Allen
√med  Case Management Services - Civil
        Clerk of Court - Under Advisement Clerk

Mary Dimond
Judicial Administrative Assistant

# TAB B

916 N.E.2d 678
Court of Appeals of Indiana.

Steve ANKENY and Bill
Kruse, Appellants–Plaintiffs,
v.
GOVERNOR OF the STATE OF
INDIANA, Appellee–Respondent.

No. 49A02–0904–CV–353. | Nov.
12, 2009. | Rehearing Denied Jan. 15,
2010. | Transfer Denied April 1, 2010.

**Synopsis**

**Background:** Citizens filed petition for extraordinary writ of prohibition against Governor, seeking to prevent Governor from issuing "Certificate of Ascertainment" officially appointing the electors who cast the State's votes in the Electoral College, the body deciding the election for the President of the United States. The Superior Court, Marion County, David J. Dreyer, J., granted Governor's motion to dismiss for failure to state a claim upon which relief could be granted. Citizens appealed.

**Holdings:** The Court of Appeals, Brown, J., held that:

[1] sitting Senators' placement on ballot as candidates for President of the United States did not violate constitutional requirement that no Senator be appointed an Elector, and

[2] persons born within the borders of the United States are "natural born Citizens," as required for qualification to be President of the United States, regardless of the citizenship of their parents.

Affirmed.

West Headnotes (10)

[1] **Attorney and Client**
        👉 Rights of litigants to act in person or by attorney

Pro se litigants are held to the same standard as licensed lawyers; Court of Appeals will not indulge in any benevolent presumptions on their behalf, or waive any rule for the orderly and proper conduct of their appeal.

1 Cases that cite this headnote

[2] **Appeal and Error**
        👉 Insufficient discussion of objections

Issues for which pro se appellants failed to develop cogent argument or cite to authority were waived on appeal.

[3] **Appeal and Error**
        👉 Striking out or dismissal

When reviewing a motion to dismiss, appellate court views the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. Trial Procedure Rule 12(B)(6).

[4] **Pretrial Procedure**
        👉 Insufficiency in general

**Pretrial Procedure**
        👉 Construction of pleadings

A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief; however, a court need not accept as true any conclusory, non-factual assertions or legal conclusions. Trial Procedure Rule 12(B)(6).

[5] **Appeal and Error**
        👉 Extent of Review Dependent on Nature of Decision Appealed from

While appellate court reviewing grant of a motion to dismiss for failure to state a claim does not test the sufficiency of the facts alleged with regard to their adequacy to provide recovery, the court does test their sufficiency with regard to whether they have stated some factual scenario in which a legally actionable injury has occurred.

[6] **Judgment**
        👉 Motion or Other Application

Generally, when a motion to dismiss for failure to state a claim is supplemented with materials outside the pleadings, it should be treated as a motion for summary judgment. Trial Procedure Rule 12(B)(6).

**[7]** **Judgment**
    👉 Motion or Other Application

**Pretrial Procedure**
    👉 Matters considered in general

When examination of the face of a complaint alone reveals that the plaintiff will not be entitled to relief under any set of circumstances, consideration of external materials aimed at substantiating or contradicting the complaint's factual allegations is irrelevant, because a fortiori the complaint fails to state a claim upon which relief can be granted under any factual scenario; in that instance, the trial court should exclude material outside the pleadings which are submitted with a motion to dismiss for failure to state a claim, rather than convert the motion into one for summary judgment, because the external material are irrelevant to the motion. Trial Procedure Rule 12(B)(6).

**[8]** **United States**
    👉 Presidential electors

Sitting United States Senators' placement on ballot as candidates for President of the United States did not violate constitutional requirement that no Senator be appointed an Elector in Electoral College. U.S.C.A. Const. Art. 2, § 1, cl. 2.

**[9]** **United States**
    👉 Presidential electors

Federal constitution vests in the various state legislatures the authority to determine how their state chooses their Electors for Electoral College, the body deciding the election for the President of the United States. U.S.C.A. Const. Art. 2, § 1, cl. 2; U.S.C.A. Const.Amend. 12.

**[10]** **United States**
    👉 President

Persons born within the borders of the United States are "natural born Citizens," as required for qualification to be President of the United States, regardless of the citizenship of their parents. U.S.C.A. Const. Art. 2, § 1, cl. 4.

**Attorneys and Law Firms**

**\*679**  Steve Ankeny, New Castle, IN, Bill Kruse, Roselawn, IN, Appellants pro se.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**Opinion**

## OPINION

BROWN, Judge.

**[1]**  **[2]**  Steve Ankeny and Bill Kruse (collectively, "Plaintiffs"), *pro se,* appeal the trial court's grant of a motion to dismiss filed by Mitch Daniels, in his official capacity as the Governor of the State of Indiana ("Governor"). Plaintiffs raise nine issues, which we revise and restate as whether the trial court erred by granting the motion to dismiss under Ind. Trial Rule 12(B)(6). [1] We affirm. [2]

**\*680**  The relevant facts follow. On December 9, 2008, Plaintiffs filed a "PETITION FOR EXTRAORDINARY WRIT OF PROHIBITION" against the Governor [3] to prevent the Governor "from issuing a 'Certificate of Ascertainment,' or any other document, to Congress of the United States containing any popular votes for Barack Obama and Joe Biden for the appointment as Chief Electors ... [or] John McCain and Sarah Palin for the appointment of Electors." Appellants' Appendix at 6. On January 30, 2009, the Governor filed a motion to dismiss alleging in part that "the Plaintiffs have failed to state a claim upon which relief can be granted." Appellee's Appendix at 1. The Governor also filed a memorandum in support of the motion to dismiss. On February 17, 2009, the Plaintiffs filed their opposition to the Governor's motion to dismiss. On March 16, 2009, the

trial court granted the Governor's motion to dismiss after a hearing. On April 13, 2009, the Plaintiffs filed their notice of appeal.

**[3]** **[4]** **[5]** **[6]** **[7]** The sole issue is whether the trial court erred when it dismissed Plaintiffs' complaint. A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. *General Cas. Ins. Co. v. Bright,* 885 N.E.2d 56, 57 (Ind.Ct.App.2008) (citing *Charter One Mortg. Corp. v. Condra,* 865 N.E.2d 602, 604 (Ind.2007)). Thus, our review of a trial court's grant or denial of a motion based on Trial Rule 12(B)(6) is de novo. *Id.* at 58. When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id.* A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. [4] **\*681** *Id.* However, a court need not accept as true any "conclusory, non-factual assertions or legal conclusions." *Irish v. Woods,* 864 N.E.2d 1117, 1120 (Ind.Ct.App.2007). "Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." *Trail v. Boys and Girls Clubs of Northwest Indiana,* 845 N.E.2d 130, 134 (Ind.2006).

In their complaint, the Plaintiffs appear to suggest that the Governor has a duty to determine a person's eligibility to become President in issuing the "Certificate of Ascertainment" "officially appoint[ing] the electors" who cast the State of Indiana's votes in the Electoral College, the body which decides the election for the President of the United States ("President"). Transcript at 13. Specifically, Plaintiffs appear to argue that the Governor did not comply with this duty because: (A) neither President Barack Obama nor Senator John McCain were eligible "to be appointed 'Elector in Chief' in violation of Article II, Section 1, Clause 2's prohibition that no United States Senator currently holding that office shall be appointed Elector for any State," and (B) neither President Barack Obama nor Senator John McCain were eligible to hold the office of President because neither were "born naturally within any Article IV State of the 50 United States of America...." Appellants' Appendix at 11–12, 16–18.

Initially, we note that the Plaintiffs do not cite to any authority recognizing that the Governor has a duty to determine the eligibility of a party's nominee for the presidency. The

Plaintiffs do not cite to authority, nor do they develop a cogent legal argument stating that a certificate of ascertainment has any relation to the eligibility of the candidates. However, we note that even if the Governor does have such a duty, for the reasons below we cannot say that President Barack Obama or Senator John McCain was not eligible to become President. We will handle each of Plaintiffs' arguments in turn.

**A.** *Sitting Senator*

**[8]** First, Plaintiffs argue that "[t]he Constitution of the United States enumerates qualification for the Office of Presidential and Vice–Presidential Electors, and no 'sitting Senator,' such as Senator Barack Obama and Senator Joseph Biden, or Senator John McCain, was qualified." Appellants' Brief at 8. We hold for the reasons stated below that Plaintiffs failed to state a cognizable legal claim upon which relief can be granted.

In evaluating Plaintiffs' claim, one need not go further and compare their framing of the electoral process in the State of Indiana with Indiana's electoral process as constructed by state and federal statute, and indeed by the U.S. Constitution itself. Article II, Section 1 of the U.S. Constitution sets forth how the President is chosen; the mechanism used is called the **\*682** Electoral College. *See* 3 U.S.C. § 4. Article II, Section 1 describes how the Electoral College is filled as follows:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

U.S. CONST. art. II, § 1, cl. 2. Much of the rest of Article II, Section 1 was changed by the Twelfth Amendment which was ratified in June 1804. The Twelfth Amendment directs:

> The Electors shall meet in their respective states, and vote by ballot for President ... and transmit sealed to the seat of the government of the United States, directed to the President of the Senate;—The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted;—The person having the greatest

Case 3:12-cv-00280-HTW-LRA   Document 18-2   Filed 05/08/12   Page 13 of 116

number of votes for President, shall be the President ...

U.S. CONST. amend. XII.

[9]    Thus, the U.S. Constitution vests in the various state legislatures the authority to determine how their state chooses their Electors. The Indiana Legislature acted on this authority when it enacted Ind.Code § 3–10–4–4, which allows voter ballots to carry the name of the "nominees for President and Vice President of the United States of a political party," and that such votes for each nominee "is a vote cast or registered for all of the candidates for presidential electors of the party...." By virtue of its nine members of the House of Representatives and its two Senators, Indiana was entitled to eleven electors in the November 4, 2008 election.[5] Both the Democratic and Republican party nominated eleven individuals who were residents of the State of Indiana to serve as their party's electors in the 2008 presidential election.[6] See Ind.Code § 3–8–4–2 ("[a] political party shall conduct a state convention to ... nominate candidates for presidential electors and alternate electors ...."); see also Appellants' Appendix at 21–22. Neither President Barack Obama nor Senator John McCain were nominated as electors for their respective parties in the 2008 election. Appellants' Appendix at 21–22.

"Not later than noon on the second Monday following an election, each circuit court clerk shall prepare a certified statement *683 ... of votes received by each candidate for: (1) federal office...." Ind.Code § 3–12–5–6(a). These certified statements are sent to the election division of the Secretary of State. Ind.Code § 3–12–5–6(b). Once the election results have been tabulated, "not later than noon of the last Tuesday in November," the Secretary of State "shall certify to the governor the candidate receiving the highest number of votes for each office." Ind.Code § 3–12–5–7. The Governor must then execute a certificate of ascertainment which officially appoints the winning presidential electors; a copy of the certificate of ascertainment is then sent to the Archivist of the United States.[7] 3 U.S.C. § 6.

The presidential electors assemble "in the chamber of the Indiana house of representatives on the first Monday after the second Wednesday in December as provided by 3 U.S.C. 7, or on another day fixed by the Congress of the United States, at 10 a.m. to elect the President and Vice–President of the United States." Ind.Code § 3–10–4–7. The electors then furnish copies of the "certificates so made by them

and the lists attached thereto"[8] to the Vice President, the Indiana Secretary of State, the Archivist of the United States, and "judge of the district in which the electors shall have assembled." 3 U.S.C. § 11. The votes of the electors of each state are then tallied by the Congress of the United States and the new President is announced. 3 U.S.C. § 15.

The Plaintiffs have a different view of the electoral process in the State of Indiana. In their complaint, the Plaintiffs allege that:

> By allowing the name of Barack Obama upon the ballot for appointment of Electors, the Governor of the State of Indiana has allowed Barack Obama to be appointed "Elector in Chief" in violation of Article II, Section 1, Clause 2's prohibition that no United States Senator currently holding that office shall be appointed Elector for any State.

Appellants' Appendix at 16. The Plaintiffs make a similar charge against Senator John McCain's name appearing on the ballot. In essence, Plaintiffs argue that because President Barack Obama and Senator John McCain were United States Senators on November 4, 2008, they were constitutionally ineligible to be appointed as presidential elector (or, as Plaintiffs put it, "Elector in Chief").

Plaintiffs do not state a meritorious claim. Notwithstanding the fact that it is unclear what Plaintiffs are referring to by the phrase "Elector in Chief," Plaintiffs' characterization of the electoral process in the State of Indiana simply is not consistent with the applicable laws. The fact that the names "Barack Obama" and "John McCain" are the ones that appeared on the ballot does not change the fact that they were in fact *candidates* for the presidency, not any of Indiana's electors.

This distinction between a candidate and an elector is readily ascertainable throughout Title 3 of the Indiana Code. As an example, we examine Ind.Code § 3–8–1–6, titled "President or Vice President; electors." That code section states:

(a) A candidate for the office of President or Vice President of the United States must have the qualifications provided in Article 2, Section 1, clause 4 of the Constitution of the United States.

*684 (b) A candidate for the office of *elector* for President and Vice President of the United States must have the

qualifications provided in Article 2, Section 1, clause 2 of the Constitution of the United States and Section 3 of the Fourteenth Amendment to the Constitution of the United States.

Ind.Code § 3–8–1–6 (emphasis added). Thus, Ind.Code § 3–8–1–6 expresses a dichotomy between the presidential and vice-presidential nominees and the slate of electors appointed by each political party to serve in the Electoral College. *See also* Ind.Code § 3–10–4–1 (stating that the names of the "electors of President and Vice President of the United States may not be placed on the ballot," but that "[t]he names of the nominees for President and Vice President of the United States ... shall be placed ... on the ballot ...").

Thus, we conclude that Plaintiffs' argument that the Governor has allowed President Barack Obama and Senator John McCain to be appointed "Elector in Chief" in violation of Article II, Section 1, Clause 2's prohibition against sitting Senators being appointed Elector for any State fails to state a claim upon which relief can be granted.

### B. *Natural Born Citizen*

 [10]    Second, the Plaintiffs argue that both President Barack Obama and Senator John McCain are not "natural born Citizens" as required for qualification to be President under Article II, Section 1, Clause 4 [9] of the U.S. Constitution, and that therefore because neither person was constitutionally eligible to become President, "[t]he Governor ... should [have been] prohibited by order of [the trial court] ... from issuing any certificate of ascertainment, or any other certified statement, under the State Seal of the State of Indiana...." Appellants' Appendix at 13.

Before addressing the Plaintiffs' specific arguments, we think it helpful to point out the context in which this claim arises. Leading up to the 2008 Presidential Election and in the ensuing months after, a number of lawsuits were filed nationwide challenging both President Barack Obama and Senator John McCain's [10] status as "natural born Citizens" under Article II of the U.S. Constitution. *See, e.g., Berg v. Obama,* 574 F.Supp.2d 509 (E.D.Pa.2008); **\*685** *Hollander v. McCain,* 566 F.Supp.2d 63 (D.N.H.2008); *Cohen v. Obama,* No. 08–2150, 2008 WL 5191864 (D.D.C. Dec.11, 2008), *aff'd by* 332 Fed.Appx. 640, 2009 WL 2870668 (D.C.Cir. Sept.8, 2009); *Wrotnowski v. Bysiewicz,* 289 Conn. 522, 958 A.2d 709 (2008). As to President Obama's status, the most common argument has been waged by members of the so-called "birther" movement who suggest that the

President was not born in the United States; they support their argument by pointing to "the President's alleged refusal to disclose publicly an 'official birth certificate' that is satisfactory to [the birthers]." *Rhodes v. MacDonald,* No. 409–CV–106CDL, 2009 WL 2997605, at \*1 (M.D.Ga. Sept. 16, 2009), *reconsideration denied by* 2009 WL 3111834 (M.D.Ga. Sept. 18, 2009).

The Plaintiffs in the instant case make a different legal argument based strictly on constitutional interpretation. Specifically, the crux of the Plaintiffs' argument is that "[c]ontrary to the thinking of most People on the subject, there's a very clear distinction between a 'citizen of the United States' and a 'natural born Citizen,' and the difference involves having [two] parents of U.S. citizenship, owing no foreign allegiance." Appellants' Brief at 23. With regard to President Barack Obama, the Plaintiffs posit that because his father was a citizen of the United Kingdom, President Obama is constitutionally ineligible to assume the Office of the President.

The bases of the Plaintiffs' arguments come from such sources as FactCheck.org, The Rocky Mountain News, an eighteenth century treatise by Emmerich de Vattel titled "The Law of Nations," and various citations to nineteenth century congressional debate. [11] For the reasons stated below, we hold that the Plaintiffs' arguments fail to state a claim upon which relief can be granted, and that therefore the trial court did not err in dismissing the Plaintiffs' complaint.

Section 1 of the Fourteenth Amendment to the U.S. Constitution governs who is a citizen of the United States. It provides that "[a]ll persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States...." U.S. CONST. amend XIV, § 1. Article II has a special requirement to assume the Presidency: that the person be a "natural born Citizen." U.S. CONST. art. II, § 1, cl. 4. The United States Supreme Court has read these two provisions in tandem and held that "[t]hus new citizens may be born or they may be created by naturalization." *Minor v. Happersett,* 88 U.S. (21 Wall.) 162, 167, 22 L.Ed. 627 (1874). In *Minor,* written only six years after the Fourteenth Amendment was ratified, the Court observed that:

> The Constitution does not, in words, say who shall be natural-born citizens. Resort must be had elsewhere to ascertain that. At common-law, with the nomenclature of which the framers of the Constitution were familiar, it was never doubted

that all children born in a country of parents who were its citizens became themselves, upon their birth, citizens also. These were natives, or natural-born citizens, as distinguished from aliens or foreigners. Some authorities go further and include as citizens children born within the jurisdiction without reference to the citizenship of their parents. As to this class there have been doubts, but never as to the first. For the purposes of this case it is not necessary to solve these doubts.

**\*686** *Id.* at 167–168, 22 L.Ed. 627. Thus, the Court left open the issue of whether a person who is born within the United States of alien parents is considered a natural born citizen. [12]

Then, in *U.S. v. Wong Kim Ark,* 169 U.S. 649, 18 S.Ct. 456, 42 L.Ed. 890 (1898), the United States Supreme Court confronted the question of "whether a child born in the United States, of parents of Chinese descent, who at the time of his birth are subject to the emperor of China ... becomes at the time of his birth a citizen of the United States, by virtue of the first clause of the fourteenth amendment...." 169 U.S. at 653, 18 S.Ct. at 458. We find this case instructive. The Court in *Wong Kim Ark* reaffirmed *Minor* in that the meaning of the words "citizen of the United States" and "natural-born citizen of the United States" "must be interpreted in the light of the common law, the principles and history of which were familiarly known to the framers of the constitution." *Id.* at 654, 18 S.Ct. at 459. They noted that "[t]he interpretation of the constitution of the United States is necessarily influenced by the fact that its provisions are framed in the language of the English common law, and are to be read in the light of its history." *Id.* at 655, 18 S.Ct. at 459 (quoting *Smith v. Alabama,* 124 U.S. 465, 478, 8 S.Ct. 564, 569, 31 L.Ed. 508 (1888)). The *Wong Kim Ark* Court explained:

The fundamental principle of the common law with regard to English nationality was birth within the allegiance- also called 'ligealty,' 'obedience,' 'faith,' or 'power'-of the king. The principle embraced all persons born within the king's allegiance, and subject to his protection. Such allegiance and protection were mutual,-as expressed in the maxim, 'Protectio trahit subjectionem, et subjectio protectionem,'-and were not restricted to natural-born subjects and naturalized subjects, or to those who had taken an oath of allegiance; but were predicable of aliens in amity, so long as they were within the kingdom. Children, born in England, of such aliens, were therefore natural-

born subjects. But the children, born within the realm, of foreign ambassadors, or the children of alien enemies, born during and within their hostile occupation of part of the king's dominions, were not natural-born subjects, because not born within the allegiance, the obedience, or the power, or, as would be said at this day, within the jurisdiction, of the king.

This fundamental principle, with these qualifications or explanations of it, was clearly, though quaintly, stated in the leading case known as 'Calvin's Case,' or the 'Case of the Postnati,' decided in 1608, after a hearing in the exchequer chamber before the lord chancellor and all the judges of England, and reported by Lord Coke and by Lord Ellesmere. Calvin's Case, 7 Coke, 1, 4b–6a, 18a, 18b; Ellesmere, Postnati, 62–64; s. c. 2 How. St. Tr. 559, 607, 613–617, 639, 640, 659, 679.

The English authorities ever since are to the like effect. Co. Litt. 8a, 128b; Lord Hale, in Harg. Law Tracts, 210, and in 1 Hale, P.C. 61, 62; 1 B1. Comm. 366, 369, 370, 374; 4 B1. Comm. 74, 92; Lord Kenyon, in *Doe v. Jones,* 4 Term R. 300, 308; Cockb. Nat. 7; Dicey, Confl. Laws, pp. 173–177, 741.

**\*687** **\* \* \* \* \* \***

Lord Chief Justice Cockburn ... said: 'By the common law of England, every person born within the dominions of the crown, no matter whether of English or of foreign parents, and, in the latter case, whether the parents were settled, or merely temporarily sojourning, in the country, was an English subject, save only the children of foreign ambassadors (who were excepted because their fathers carried their own nationality with them), or a child born to a foreigner during the hostile occupation of any part of the territories of England. No effect appears to have been given to descent as a source of nationality.' Cockb. Nat. 7.

Mr. Dicey, in his careful and thoughtful Digest of the Law of England with Reference to the Conflict of Laws, published in 1896, states the following propositions, his principal rules being printed below in italics: "*British subject' means any person who owes permanent allegiance to the crown.* 'Permanent' allegiance is used to distinguish the allegiance of a British subject from the allegiance of an alien, who, because he is within the British dominions, owes 'temporary' allegiance to the crown. *'Natural-born British subject' means a British subject who has become a British subject at the moment*

of his birth.' 'Subject to the exceptions hereinafter mentioned, any person who (whatever the nationality of his parents) is born within the British dominions is a natural-born British subject. This rule contains the leading principle of English law on the subject of British nationality.' The exceptions afterwards mentioned by Mr. Dicey are only these two: '(1) Any person who (his father being an alien enemy) is born in a part of the British dominions, which at the time of such person's birth is in hostile occupation, is an alien.' '(2) Any person whose father (being an alien) is at the time of such person's birth an ambassador or other diplomatic agent accredited to the crown by the sovereign of a foreign state is (though born within the British dominions) an alien.' And he adds: 'The exceptional and unimportant instances in which birth within the British dominions does not of itself confer British nationality are due to the fact that, though at common law nationality or allegiance in substance depended on the place of a person's birth, it in theory at least depended, not upon the locality of a man's birth, but upon his being born within the jurisdiction and allegiance of the king of England; and it might occasionally happen that a person was born within the dominions without being born in the allegiance, or, in other words, under the protection and control of the crown.' Dicey, Confl. Laws, pp. 173–177, 741.

It thus clearly appears that by the law of England for the last three centuries, beginning before the settlement of this country, and continuing to the present day, aliens, while residing in the dominions possessed by the crown of England, were within the allegiance, the obedience, the faith or loyalty, the protection, the power, and the jurisdiction of the English sovereign; and therefore every child born in England of alien parents was a natural-born subject, unless the child of an ambassador or other diplomatic agent of a foreign state, or of an alien enemy in hostile occupation of the place where the child was born.

III. The same rule was in force in all the English colonies upon this continent down to the time of the Declaration of Independence, and in the United States afterwards, and continued to prevail under the constitution as originally established. **688** [13]

*Id.* at 655–658, 18 S.Ct. at 459–460.

Also, as quoted in *Wong Kim Ark,* Justice Joseph Story once declared in *Inglis v. Trustees of Sailors' Snug Harbor,* 28 U.S.

(3 Pet.) 99, 7 L.Ed. 617 (1830), that "Nothing is better settled at the common law than the doctrine that the children, even of aliens, born in a country, while the parents are resident there under the protection of the government, and owing a temporary allegiance thereto, are subjects by birth." *Wong Kim Ark,* 169 U.S. at 660, 18 S.Ct. at 461 (quoting *Inglis,* 28 U.S. (3 Pet.) at 164 (Story, J., concurring)). The Court also cited Justice Curtis's dissent in *Dred Scott v. Sandford,* 60 U.S. (19 How.) 393, 15 L.Ed. 691 (1856):

> The first section of the second article of the constitution uses the language, 'a natural-born citizen.' It thus assumes that citizenship may be acquired by birth. Undoubtedly, this language of the constitution was used in reference to that principle of public law, well understood in this country at the time of the adoption of the constitution, which referred citizenship to the place of birth.

*Wong Kim Ark,* 169 U.S. at 662, 18 S.Ct. at 462 (quoting *Dred Scott,* 60 U.S. (19 How.) at 576 (Curtis, J., dissenting)).

The Court in *Wong Kim Ark* also cited authority which notes that:

> All persons born in the allegiance of the king are natural-born subjects, and all persons born in the allegiance of the United States are natural-born citizens. Birth and allegiance go together. Such is the rule of the common law, and it is the common law of this country, as well as of England. We find no warrant for the opinion that this great principle of the common law has ever been changed in the United States. It has always obtained here with the same vigor, and subject only to the same exceptions, since as before the Revolution.

*Id.* at 662–663, 18 S.Ct. at 462 (quotations and citations omitted). The Court held that Mr. Wong Kim Ark was a citizen of the United States "at the time of his birth." [14] *Id.* at 705, 18 S.Ct. at 478.

Based upon the language of Article II, Section 1, Clause 4 and the guidance provided by *Wong Kim Ark,* we conclude that persons born within the borders of the United States are "natural born Citizens" for Article II, Section 1 purposes, regardless of the citizenship of their parents. Just as a person

"born within the British dominions [was] a natural-born British subject" at the time of the framing of the U.S. Constitution, so too were those "born in the allegiance of the United States [ ] natural-born citizens." [15]

**\*689** The Plaintiffs do not mention the above United States Supreme Court authority in their complaint or brief; they primarily rely instead on an eighteenth century treatise and quotations of Members of Congress made during the nineteenth century. To the extent that these authorities conflict with the United States Supreme Court's interpretation of what it means to be a natural born citizen, we believe that the Plaintiffs' arguments fall under the category of "conclusory, non-factual assertions or legal conclusions" that we need not accept as true when reviewing the grant of a motion to dismiss for failure to state a claim. *Irish,* 864 N.E.2d at 1120. Thus, we cannot say that the trial court erred when it dismissed the Plaintiffs' case. [16] *See generally McCalment v.*

*Eli Lilly & Co.,* 860 N.E.2d 884 (Ind.Ct.App.2007) (holding that the plaintiffs' arguments had been sufficiently addressed by Indiana Supreme Court precedent and therefore the trial court did not err when it granted the defendant's motion to dismiss for failure to state a claim upon which relief can be granted); *see also, e.g., Diaz–Salazar v. I.N.S.,* 700 F.2d 1156, 1160 (7th Cir.1983) (noting in its recitation of the facts that despite the fact father was not a citizen of the United States, he had children who were "natural-born citizens of the United States"), *cert. denied* 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983).

For the foregoing reasons, we affirm the trial court's grant of the Governor's motion to dismiss.

Affirmed.

CRONE, J., and MAY, J., concur.

---

Footnotes

1     We note that *pro se* litigants, such as Plaintiffs, "are held to the same standard as licensed lawyers." *Novatny v. Novatny,* 872 N.E.2d 673, 677 n. 3 (Ind.Ct.App.2007). This court will not "indulge in any benevolent presumptions on [their] behalf, or waive any rule for the orderly and proper conduct of [their] appeal." *Foley v. Mannor,* 844 N.E.2d 494, 496 n. 1 (Ind.Ct.App.2006).

      Thus, we will attempt to address the issues raised by Plaintiffs. To the extent that Plaintiffs raise additional issues, the Plaintiffs fail to develop a cogent argument and cite to authority. Consequently, the arguments are waived. *See, e.g., Loomis v. Ameritech,* 764 N.E.2d 658, 668 (Ind.Ct.App.2002) (holding argument waived for failure to cite authority or provide cogent argument), *reh'g denied, trans. denied.*

2     The trial court also granted the Governor's motion to dismiss on the bases of mootness under Ind. Trial Rule 12(B)(1) and the equitable doctrine of laches. Because we find that Plaintiffs failed to state a claim upon which relief can be granted under T.R. 12(B)(6), we need not address the trial court's alternative grounds for dismissal.

3     The Complaint also named the Democratic National Committee, Barack Obama, the Republican National Committee, and John McCain as defendants. The Plaintiffs state, without citation to the record, that "only the Governor of the State of Indiana accepted Service of Summons." Appellants' Brief at 3. We note that the Plaintiffs' case summary lists only the Governor as appellee, the Plaintiffs' notice of appeal lists only the Governor as defendant, and the Plaintiffs' briefs contain certificates of service indicating that the briefs were served upon only the Governor.

4     In his brief, the Governor argues that the motion to dismiss included an affidavit, and therefore because "matters outside the pleadings [were] presented to the court on a 12(B)(6) motion, the motion shall be treated as one for summary judgment under T.R. 56. T.R. 12(B)." Appellee's Brief at 6. While true that the general rule is that when a motion to dismiss for failure to state a claim under T.R. 12(B)(6) is supplemented with materials outside the pleadings is treated as a motion for summary judgment, we note that:

      [W]hen examination of the face of a complaint alone reveals that the plaintiff will not be entitled to relief under any set of circumstances, consideration of external materials aimed at substantiating or contradicting the complaint's factual allegations is irrelevant, because *a fortiori* the complaint fails to state a claim upon which relief can be granted under any factual scenario. In that instance, the trial court should exclude material outside the pleadings which are submitted with a 12(B)(6) motion, rather than convert the motion into one for summary judgment, because the external material are irrelevant to the motion.

      *Dixon v. Siwy,* 661 N.E.2d 600, 603 (Ind.Ct.App.1996). In this case, there is no evidence that the trial court considered the material contained in the affidavit prepared by J. Bradley King, Co–Director for the Indiana Election Division, which contains nine paragraphs explaining the vote-tallying process actually carried out following the November 4, 2008 election. The affidavit was not relevant to the trial court's order granting the Governor's motion to dismiss. Thus, it was proper for the trial court to exclude this affidavit and handle the Governor's motion as a motion to dismiss for failure to state a claim rather than one for summary

judgment. *See Trail v. Boys and Girls Clubs of Northwest Indiana,* 845 N.E.2d 130, 134, 140 (Ind.2006) (affirming the trial court's grant of a motion to dismiss under Rule 12(B)(6) even after the parties "filed several affidavits, exhibits, and briefs").

5  The date of the election was chosen pursuant to Ind.Code § 3–10–2–1, which states that "[a] general election shall be held on the first Tuesday after the first Monday in November in each even-numbered year...."

6  The Democratic Party's candidates for Indiana electors were: (1) Jeffrey L. Chidester, of Valparaiso; (2) Owen "Butch" Morgan, of South Bend; (3) Michelle Boxell, of Warsaw; (4) Charlotte Martin, of Indianapolis; (5) Jerry J. Lux, of Shelbyville; (6) Connie Southworth, of Salamonia; (7) Alan P. Hogan, of Indianapolis; (8) Myrna E. Brown, of Vincennes; (9) Clarence Benjamin Leatherbury, of Salem; (10) Daniel J. Parker, of Indianapolis; and (11) Cordelia Lewis Burks, of Indianapolis. The Republican Party's candidates for Indiana electors were: (1) Chuck Williams, of Valparaiso; (2) Edward Smith, of Galveston; (3) Barbara Krisher, of Fort Wayne; (4) Daniel Bortner, of Bedford; (5) Virginia Marner, of Kokomo; (6) Susan Lightle, of Greenfield; (7) Pearl Swanigan, of Indianapolis; (8) William Springer, of Sullivan; (9) David Buskill, of Jeffersonville; (10) Samual Wayne Goodman, of Greenwood; and (11) Juana Watson, of Columbus. Appellants' Appendix at 21–22; *see also* 2008 Presidential Elector Candidates, *available at* http://www.in. gov/sos/elections/files/2008_Presidential_Elector_Candidate_List.pdf (last visited Oct. 8, 2009).

7  The Archivist of the United States transmits copies "to the two Houses of Congress ... of each and every such certificate so received...." 3 U.S.C. § 6.

8  The electors prepare the certificates in accordance with 3 U.S.C. §§ 6, 9–11.

9  The Plaintiffs cite the "natural born Citizen" clause as Article II, Section 1, Clause 5 of the U.S. Constitution, but it is properly cited as Article II, Section 1, Clause 4. *See also* Ind.Code § 3–8–1–6.

10  The United States Senate passed a resolution on April 30, 2008 which explicitly recognized Senator John McCain as a natural born citizen. S.J. Res. 511, 110th Cong. (2008). Also, the supposed authority cited by the Plaintiffs to support their claim as to the meaning of Article II, Section 1, Clause 4 of the U.S. Constitution does not support the argument that John McCain is not a natural born citizen. Plaintiffs state in their brief that the difference between being a "citizen of the United States" and a "natural born Citizen" "involves having [two] parents of U.S. Citizenship, owing no foreign allegiance." Appellant's Brief at 23. The Plaintiffs then concede that "John McCain ... qualifie[s] as a 'citizen of the United States,' by being born of [two] parents who were in turn 'citizens of the United States,' and owed no foreign allegiance...." *Id.* Their brief continues that "John McCain was born 'subject to the jurisdiction' of the United States, but he was not born in one of the 50 States of the Union under Article IV of the Constitution, and thus ... was not a 'natural born Citizen....' " *Id.* at 23–24. Plaintiffs do not cite to any authority or develop any cogent legal argument for the proposition that a person must actually be born within one of the fifty States in order to qualify as a natural born citizen, and we therefore do not address Plaintiffs argument as it relates to Senator McCain. *See Loomis,* 764 N.E.2d at 668.

11  Plaintiffs do not provide pinpoint citations to the congressional debate quotations to which they cite.

12  Note that the Court in *Minor* contemplates only scenarios where both parents are either citizens or aliens, rather in the case of President Obama, whose mother was a U.S. citizen and father was a citizen of the United Kingdom.

13  According to Westlaw, *Wong Kim Ark* has been cited to in over 1,000 cases.

14  We note the fact that the Court in *Wong Kim Ark* did not actually pronounce the plaintiff a "natural born Citizen" using the Constitution's Article II language is immaterial. For all but forty-four people in our nation's history (the forty-four Presidents), the dichotomy between who is a natural born citizen and who is a naturalized citizen under the Fourteenth Amendment is irrelevant. The issue addressed in *Wong Kim Ark* was whether Mr. Wong Kim Ark was a citizen of the United States on the basis that he was born in the United States. *Wong Kim Ark,* 169 U.S. at 705, 18 S.Ct. at 478.

15  We reiterate that we do not address the question of natural born citizen status for persons who became United States citizens at birth by virtue of being born of United States citizen parents, despite the fact that they were born abroad. That question was not properly presented to this court. Without addressing the question, however, we note that nothing in our opinion today should be understood to hold that being born within the fifty United States is the *only* way one can receive natural born citizen status.

16  We note that President Obama is not the first U.S. President born of parents of differing citizenship. Chester A. Arthur, the twenty-first U.S. President, was born of a mother who was a United States citizen and a father who was an Irish citizen. *See* THOMAS C. REEVES, GENTLEMAN BOSS, THE LIFE OF CHESTER ALAN ARTHUR 3–4 (1975). During the election of 1880, there arose a rumor "that [Arthur] had been born in Canada, rather than in Vermont as he claimed, and was thus constitutionally ineligible to become the Chief Executive." *Id.* at 3. Although President Arthur's status as a natural born citizen was challenged in the 1880 Presidential Election on the grounds that he was born in Canada rather than Vermont, the argument was not made that because Arthur's father was an Irish citizen he was constitutionally ineligible to be President. *See generally id.*

**End of Document**                                    © 2012 Thomson Reuters. No claim to original U.S. Government Works.

# TAB C



FILED
OSAH

## OFFICE OF STATE ADMINISTRATIVE HEARINGS
## STATE OF GEORGIA

FEB **0 3** 2012

Valerie Ruff, Legal Assistant

DAVID FARRAR, LEAH LAX, CODY JUDY,     :
THOMAS MALAREN, LAURIE ROTH,           :
                                       :     Docket Number: OSAH-SECSTATE-CE-
     Plaintiffs,              :     1215136-60-MALIHI
                                       :
v.                                     :     Counsel for Plaintiffs:  Orly Taitz
                                       :
BARACK OBAMA,                          :     Counsel for Defendant:  Michael Jablonski
                                       :
     Defendant.               :

---

DAVID P. WELDEN,                       :
                                       :
     Plaintiff,               :     Docket Number: OSAH-SECSTATE-CE-
                                       :     1215137-60-MALIHI
v.                                     :
                                       :     Counsel for Plaintiff:  Van R. Irion
BARACK OBAMA,                          :
                                       :     Counsel for Defendant:  Michael Jablonski
     Defendant.               :

---

CARL SWENSSON,                         :
                                       :
     Plaintiff,               :     Docket Number: OSAH-SECSTATE-CE-
                                       :     1216218-60-MALIHI
v.                                     :
                                       :     Counsel for Plaintiff:  J. Mark Hatfield
BARACK OBAMA,                          :
                                       :     Counsel for Defendant:  Michael Jablonski
     Defendant.               :

---

KEVIN RICHARD POWELL,                  :
                                       :
     Plaintiff,               :     Docket Number: OSAH-SECSTATE-CE-
                                       :     1216823-60-MALIHI
v.                                     :
                                       :     Counsel for Plaintiff:  J. Mark Hatfield
BARACK OBAMA,                          :
                                       :     Counsel for Defendant:  Michael Jablonski
     Defendant.               :

# DECISION[1]

Plaintiffs allege that Defendant President Barack Obama does not meet Georgia's eligibility requirements for candidacy in Georgia's 2012 presidential primary election. Georgia law mandates that candidates meet constitutional and statutory requirements for the office that they seek. O.C.G.A. § 21-2-5(a). Mr. Obama is a candidate for federal office who has been certified by the state executive committee of a political party, and therefore must, under Georgia Code Section 21-2-5, meet the constitutional and statutory qualifications for holding the Office of the President of the United States. *Id.* The United States Constitution requires that a President be a "natural born [c]itizen." U.S. Const. art. II, § 1, cl. 5.

As required by Georgia Law, Secretary of State Brian Kemp referred Plaintiffs' challenges to this Court for a hearing. O.C.G.A. § 21-2-5(b). A hearing was held on January 26, 2012. The record closed on February 1, 2012. Plaintiffs Farrar, Lax, Judy, Malaren, and Roth and their counsel Orly Taitz, Plaintiffs Carl Swensson and Kevin Richard Powell and their counsel J. Mark Hatfield, and Plaintiff David P. Welden and his counsel Van R. Irion, all appeared and answered the call of the case. However, neither Defendant nor his counsel, Michael Jablonski, appeared or answered. Ordinarily, the Court would enter a default order against a party that fails to participate in any stage of a proceeding. Ga. Comp. R. & Regs. 616-1-2-.30(1) and (5). Nonetheless, despite the

---

[1] This Decision has been consolidated to include the four challenges to President Obama's candidacy filed by Plaintiffs David Farrar, *et al.*, David P. Welden, Carl Swensson, and Kevin Richard Powell. Section I of this Decision applies only to the case presented by Ms. Taitz on behalf of Mr. Farrar and his co-plaintiffs, Leah Lax, Cody Judy, Thomas Malaren, and Laurie Roth, and does not pertain, in any way, to the cases of Mr. Welden, Mr. Swensson, and Mr. Powell. Section II applies to all Plaintiffs.

Defendant's failure to appear, Plaintiffs asked this Court to decide the case on the merits of their arguments and evidence.  The Court granted Plaintiffs' request.

By deciding this matter on the merits, the Court in no way condones the conduct or legal scholarship of Defendant's attorney, Mr. Jablonski.  This Decision is entirely based on the law, as well as the evidence and legal arguments presented at the hearing.

I.     **Evidentiary Arguments of Plaintiffs Farrar,** *et al.*

Plaintiffs Farrar, Lax, Judy, Malaren, and Roth contend that President Barack Obama is not a natural born citizen.  To support this contention, Plaintiffs assert that Mr. Obama maintains a fraudulently obtained social security number, a Hawaiian birth certificate that is a computer-generated forgery, and that he does not otherwise possess valid U.S. identification papers.  Further, Plaintiffs submit that Mr. Obama has previously held Indonesian citizenship, and he did not use his legal name on his notice of candidacy, which is either Barry Soetoro or Barack Obama Soebarkah.  (Pl.s' Am. Compl. 3.)

At the hearing, Plaintiffs presented the testimony of eight witnesses[2] and seven exhibits in support of their position.  (Exs. P-1 through P-7.)  When considering the testimony and exhibits, this Court applies the same rules of evidence that apply to civil nonjury cases in superior court.  Ga. Comp. R. & Regs. 616-1-2-.18(1)–(9).  The weight to be given to any evidence shall be determined by the Court based upon its reliability and probative value.  Ga. Comp. R. & Regs. 616-1-2-.18(10).

The Court finds the testimony of the witnesses, as well as the exhibits tendered, to be of little, if any, probative value, and thus wholly insufficient to support Plaintiffs' allegations.[3]  Ms. Taitz attempted to solicit expert testimony from several of the witnesses without qualifying or tendering the witnesses as experts.  *See Stephens v. State*, 219 Ga. App. 881 (1996) (the unqualified testimony of the witness was not competent evidence).  For example, two of Plaintiffs' witnesses testified that Mr. Obama's birth

---

[2] Originally, Ms. Taitz indicated to the Court that she would offer the testimony of seven witnesses. However, during her closing argument, Ms. Taitz requested to testify.  Ms. Taitz was sworn and began her testimony, but shortly thereafter, the Court requested that Ms. Tatiz step-down and submit any further testimony in writing.

[3] The credibility of witnesses is within the sole discretion of the trier of fact.  In non-jury cases that discretion lies with the judge.  *See Mustang Transp., Inc. v. W.W. Lowe & Sons, Inc.*, 123 Ga. App. 350, 352 (1971).

certificate was forged, but neither witness was properly qualified or tendered as an expert in birth records, forged documents or document manipulation. Another witness testified that she has concluded that the social security number Mr. Obama uses is fraudulent; however, her investigatory methods and her sources of information were not properly presented, and she was never qualified or tendered as an expert in social security fraud, or fraud investigations in general. Accordingly, the Court cannot make an objective threshold determination of these witnesses' testimony without adequate knowledge of their qualifications. *See Knudsen v. Duffee-Freeman, Inc.*, 95 Ga. App. 872 (1957) (for the testimony of an expert witness to be received, his or her qualifications as such must be first proved).

None of the testifying witnesses provided persuasive testimony. Moreover, the Court finds that none of the written submissions tendered by Plaintiffs have probative value. Given the unsatisfactory evidence presented by the Plaintiffs, the Court concludes that Plaintiffs' claims are not persuasive.

## II.    Application of the "Natural Born Citizen" Requirement

Plaintiffs allege that President Barack Obama is not a natural born citizen of the United States and, therefore, is not eligible to run in Georgia's presidential primary election.  As indicated *supra*, the United States Constitution states that "[n]o person except a natural born Citizen . . . shall be eligible for the Office of the President . . . ."[4] U.S. Const. art. II, § 1, cl. 5.

For the purpose of this section's analysis, the following facts are considered: 1) Mr. Obama was born in the United States; 2) Mr. Obama's mother was a citizen of the United States at the time of his birth; and 3) Mr. Obama's father was never a United States citizen.  Plaintiffs contend that, because his father was not a U.S. citizen at the time of his birth, Mr. Obama is constitutionally ineligible for the Office of the President of the United States.  The Court does not agree.

In 2009, the Indiana Court of Appeals ("Indiana Court") addressed facts and issues similar to those before this Court.  *Arkeny v. Governor*, 916 N.E.2d 678 (Ind. Ct. App. 2009).  In *Arkeny*, the plaintiffs sought to prevent certification of Mr. Obama as an eligible candidate for president because he is not a natural born citizen.  *Id.* at 681. The plaintiffs argued, as the Plaintiffs argue before this Court, that "there's a very clear distinction between a 'citizen of the United States' and a 'natural born Citizen,' and the difference involves having [two] parents of U.S. citizenship, owing no foreign allegiance."  *Id.* at 685.  The Indiana Court rejected the argument that Mr. Obama was

---

[4] The definition of this clause has been the source of much debate.   *See, e.g.*, Gordon, *Who Can Be President of the United States: The Unresolved Enigma*, 28 Md. L. Rev. 1 (1968); Jill A. Pryor, Note, *The Natural-Born Citizen Clause and Presidential Eligibility: An Approach for Resolving Two Hundred Years of Uncertainty*, 97 Yale L.J. 881 (1988); Christina S. Lohman, *Presidential Eligibility: The Meaning of the Natural-Born Citizen Clause*, 36 Gonz. L. Rev. 349 (2000); William T. Han, *Beyond Presidential Eligibility: The Natural Born Citizen Clause as a Source of Birthright Citizenship*, 58 Drake L. Rev. 457 (2010).

ineligible, stating that children born within the United States are natural born citizens, regardless of the citizenship of their parents. *Id.* at 688. This Court finds the decision and analysis of *Arkeny* persuasive.

The Indiana Court began its analysis by attempting to ascertain the definition of "natural born citizen" because the Constitution does not define the term. *Id.* at 685-86; *See Minor v. Happersett*, 88 U.S. 162, 167 (1875) ("The Constitution does not, in words, say who shall be natural born citizens. Resort must be had elsewhere to ascertain that."); *see also United States v. Wong Kim Ark*, 169 U.S. 649 (1898) (noting that the only mention of the term "natural born citizen" in the Constitution is in Article II, and the term is not defined in the Constitution).

The Indiana Court first explained that the U.S. Supreme Court has read the Fourteenth Amendment and Article II (natural born citizen provision) in tandem and held that "new citizens may be born or they may be created by naturalization." *Id.* at 685 (citing *Minor*, 88 U.S. at 167); *See* U.S. Const. amend. XIV, § 1. ("All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States . . . ."). In *Minor*, the Court observed that:

> At common-law, with the nomenclature of which the framers of the Constitution were familiar, it was never doubted that all children born in a country of parents who were its citizens became themselves, upon their birth, citizens also. These were natives, or natural-born citizens, as distinguished from aliens or foreigners. Some authorities go further and include as citizens children born within the jurisdiction without reference to the citizenship of their parents. As to this class there have been doubts, but never as to the first. For the purposes of this case it is not necessary to solve these doubts.

*Id.* at 167-68. Plaintiffs ask this Court to read the Supreme Court's decision in *Minor* as defining natural born citizens as only "children born in a country of parents who were its

7

citizens." 88 U.S. at 167. However, the Indiana Court explains that *Minor* did not define the term natural born citizen. In deciding whether a woman was eligible to vote, the *Minor* Court merely concluded that children born in a country of parents who were its citizens would qualify as natural born, and this Court agrees. The *Minor* Court left open the issue of whether a child born within the United States of alien parent(s) is a natural born citizen.

Next, the Indiana Court looked to *United States v. Wong Kim Ark*, in which the Supreme Court analyzed the meaning of the words "citizen of the United States" in the Fourteenth Amendment and "natural born citizen of the United States" in Article II to determine whether a child born in the United States to parents who, at the time of the child's birth, were subjects of China "becomes at the time of his birth a citizen of the United States, by virtue of the first clause of the fourteenth amendment . . . ." *Id.* at 686 (citing *Wong Kim Ark*, 169 U.S. at 653). The Indiana Court determined that the two provisions "must be interpreted in the light of the common law, the principles and history of which were familiarly known to the framers of the constitution." *Id.* (citing *Wong Kim Ark*, 169 U.S. at 654). The Indiana Court agreed that "[t]he interpretation of the constitution of the United States is necessarily influenced by the fact that its provisions are framed in the language of the English common law, and are to be read in the light of its history." *Id.* (citing *Wong Kim Ark*, 169 U.S. at 655) (internal citation omitted). The *Wong Kim Ark* Court extensively examined the common law of England in its decision and concluded that Wong Kim Ark, who was born in the United States to alien parents,

became a citizen of the United States at the time of his birth.[5] *Wong Kim Ark*, 169 U.S. at

705.

---

[5] The *Wong Kim Ark* Court explained:

> The fundamental principle of the common law with regard to English nationality was birth within the allegiance, also called "ligealty," "obedience," "faith" or "power," of the King. The principle embraced all persons born within the King's allegiance and subject to his protection. Such allegiance and protection were mutual . . . and were not restricted to natural-born subjects and naturalized subjects, or to those who had taken an oath of allegiance; but were predicable of aliens in amity, so long as they were within the kingdom. Children, born in England, of such aliens, were therefore natural-born subjects. But the children, born within the realm, of foreign ambassadors, or the children of alien enemies, born during and within their hostile occupation of part of the King's dominions, were not natural-born subjects, because not born within the allegiance, the obedience, or the power, or, as would be said at this day, within the jurisdiction of the King.

169 U.S. at 655.

> It thus clearly appears that by the law of England for the last three centuries, beginning before the settlement of this country, and continuing to the present day, aliens, while residing in the dominions possessed by the Crown of England, were within the allegiance, the obedience, the faith or loyalty, the protection, the power, the jurisdiction, of the English Sovereign; and therefore every child born in England of alien parents was a natural-born subject, unless the child of an ambassador or other diplomatic agent of a foreign State, or of an alien enemy in hostile occupation of the place where the child was born.

*Id.* at 658. Further:

> Nothing is better settled at the common law than the doctrine that the children, even of aliens, born in a country, while the parents are resident there under the protection of the government, and owing a temporary allegiance thereto, are subjects by birth.

*Id.* at 660 (quoting *Inglis v. Trustees of Sailors' Snug Harbor*, 28 U.S. (3 Pet.) 99, 164 (1830) (Story, J., concurring)). And:

> The first section of the second article of the constitution uses the language, 'a natural-born citizen.' It thus assumes that citizenship may be acquired by birth. Undoubtedly, this language of the constitution was used in reference to that principle of public law, well understood in this country at the time of the adoption of the constitution, which referred citizenship to the place of birth.

*Id.* at 662 (quoting *Dred Scott v. Sanford*, 60 U.S. (19 How.) 393, 576 (1856) (Curtis, J., dissenting)). Finally:

> All persons born in the allegiance of the king are natural-born subjects, and all persons born in the allegiance of the United States are natural-born citizens. Birth and allegiance go together. Such is the rule of the common law, and it is the common law of this country, as well as of England.

*Id.* at 662-63 (quoting *United States v. Rhodes*, (1866) (Mr. Justice Swayne)).

Relying on the language of the Constitution and the historical reviews and analyses of *Minor* and *Wong Kim Ark*, the Indiana Court concluded that

> persons born within the borders of the United States are "natural born citizens" for Article II, Section 1 purposes, regardless of the citizenship of their parents. Just as a person "born within the British dominions [was] a natural-born British subject" at the time of the framing of the U.S. Constitution, so too were those "born in the allegiance of the United States [] natural-born citizens."

916 N.E.2d at 688. The Indiana Court determined that a person qualifies as a natural born citizen if he was born in the United States because he became a United States citizen at birth.[6]

For the purposes of this analysis, this Court considered that President Barack Obama was born in the United States. Therefore, as discussed in *Arkeny*, he became a citizen at birth and is a natural born citizen. Accordingly,

## CONCLUSION

President Barack Obama is eligible as a candidate for the presidential primary election under O.C.G.A. § 21-2-5(b).

**SO ORDERED,** February 3rd, 2012.

**MICHAEL M. MALIHI**, Judge

---

[6] This Court recognizes that the *Wong Kim Ark* case was not deciding the meaning of "natural born citizen" for the purposes of determining presidential qualifications; however, this Court finds the Indiana Court's analysis and reliance on these cases to be persuasive.

10

## IN THE OFFICE OF THE SECRETARY OF STATE
## STATE OF GEORGIA

DAVID FARRAR, LEAH LAX, CODY JUDY, :
THOMAS MALAREN, LAURIE ROTH, :
                           :   **Docket Number: OSAH-SECSTATE-**
                           :   **CE-1215136-60- MALIHI**
      **Petitioners,** :
                           :   **Counsel for Petitioners:  Orly Taitz**
**v.** :
                           :   **Counsel for Respondent:  Michael Jablonski**
**BARACK OBAMA,** :
                           :
      **Respondent.** :
_____:

DAVID P. WELDON, :
                           :   **Docket Number: OSAH-SECSTATE-**
      **Petitioner,** :   **CE-1215137-60- MALIHI**
                           :
**v.** :   **Counsel for Petitioners:  Van R. Irion**
                           :
**BARACK OBAMA,** :   **Counsel for Respondent:  Michael Jablonski**
                           :
      **Respondent.** :
_____:

CARL SWENSSON, :
                           :   **Docket Number: OSAH-SECSTATE-**
      **Petitioner,** :   **CE-1216218-60- MALIHI**
                           :
**v.** :   **Counsel for Petitioners:  J. Mark Hatfield**
                           :
**BARACK OBAMA,** :   **Counsel for Respondent:  Michael Jablonski**
                           :
      **Respondent.** :
_____:

KEVIN RICHARD POWELL, :
                           :   **Docket Number: OSAH-SECSTATE-**
      **Petitioner,** :   **CE-1216823-60- MALIHI**
                           :
**v.** :   **Counsel for Petitioners:  J. Mark Hatfield**
                           :
**BARACK OBAMA,** :   **Counsel for Respondent:  Michael Jablonski**
                           :
      **Respondent.** :
_____:

## FINAL DECISION[1]

Petitioners filed candidate challenges pursuant to O.C.G.A. § 21-2-5(b) contending that Respondent does not meet the State of Georgia's eligibility requirements for his name to be listed on the 2012 Presidential Preference Primary ballot.  Judge Michael Malihi, Administrative Law Judge ("ALJ") for the Office of State Administrative Hearings, held a hearing on each candidate challenge on January 26, 2012 and entered an initial decision for the above-captioned cases on February 3, 2012.  The Secretary of State formally adopts the initial decision of the ALJ into this final decision.

Therefore, IT IS HEREBY DECIDED THAT the above-captioned challenges are DENIED.

SO DECIDED this __7th__ day of February, 2012.

_____
BRIAN P. KEMP
Georgia Secretary of State

---

[1] Judge Michael Malihi previously consolidated the above-captioned candidate challenges for the purpose of issuing his initial decision.  Those candidate challenges remain consolidated for the purpose of issuing this Final Decision.

**A**

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

DAVID FARRAR, LEAH LAX, CODY
ROBERT JUDY, LAURIE ROTH,

    Petitioners,

v.

BARACK OBAMA and
SECRETARY OF STATE,

    Respondents.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CIVIL ACTION
FILE NO. 2012CV211398

COPY

FILED IN OFFICE

MAR 2 2012

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

---

CARL SWENSSON,

    Petitioner,

v.

BARACK OBAMA,

    Respondent.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CIVIL ACTION
FILE NO. 2012CV211527

---

KEVIN RICHARD POWELL,

    Petitioner,

v.

BARACK OBAMA,

    Respondent.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CIVIL ACTION
FILE NO. 2012CV211528

---

*Farrar, et al. v. Obama, et al*: Civil Action No. 2012CV211398
*Swensson v. Obama*: Civil Action No. 2012CV211527
*Powell v. Obama*: Civil Action No. 2012CV211528
*Welden v. Obama*: Civil Action No. 2012CV211537
ORDER GRANTING MOTION(S) TO DISMISS

DAVID P. WELDEN,  \*
                               \*
     Petitioner,            \*
v.                             \*       CIVIL ACTION
                                \*       FILE NO. 2012CV211537
BARACK OBAMA,           \*
                                \*
     Respondent.           \*
                                \*

## ORDER GRANTING RESPONDENT BARACK OBAMA'S MOTION(S) TO DISMISS

     The above-captioned actions are before the Court on the Petition(s) for Judicial Review of Petitioners David Farrar, *et al.*, Carl Swensson, Kevin Richard Powell, and David P. Welden, which were filed in this Court on February 13, 2012 and February 15, 2012, respectively. Although initially assigned to four (4) different Superior Court Judges, the matters were transferred to the Honorable Chief Judge Cynthia D. Wright, to whom the first-filed case was assigned (*Farrar, et al. v. Obama, et al.*, Civil Action File No. 2012CV211398), because each is an appeal of the same decision issued on February 3, 2012 by Administrative Law Judge Michael M. Malihi in the Office of State Administrative Hearings and thereafter adopted by the Secretary of State.

     Presently before the Court is the Motion to Dismiss of Respondent Barack Obama, filed in each of the above-referenced actions on February 27, 2012. The Motion(s) to Dismiss are identical in form and substance and will, therefore, be addressed by the Court in one consolidated Order to be applied in each case. Now, having considered the Motion(s) to Dismiss, the other pleadings of record, and applicable Georgia law, the Court finds as follows:

     Petitioners filed their Appeal/Petition for Judicial Review of the Secretary of State's decision in this Court pursuant to O.C.G.A. § 21-2-5(e), which provides as follows:

---

*Farrar, et al. v. Obama, et al*: Civil Action No. 2012CV211398
*Swensson v. Obama*: Civil Action No. 2012CV211527
*Powell v. Obama*: Civil Action No. 2012CV211528
*Welden v. Obama*: Civil Action No. 2012CV211537
ORDER GRANTING MOTION(S) TO DISMISS                                       Page 2

The elector filing the challenge or the candidate challenged shall have the right to appeal the decision of the Secretary of State by filing a petition in the Superior Court of Fulton County within ten days after the entry of the final decision by the Secretary of State. The filing of the petition shall not itself stay the decision of the Secretary of State; however, the reviewing court may order a stay upon appropriate terms for good cause shown. As soon as possible after service of the petition, the Secretary of State shall transmit the original or a certified copy of the entire record of the proceedings under review to the reviewing court. The review shall be conducted by the court without a jury and shall be confined to the record.

Petitioners allege that Respondent Barack Obama is not a "natural born citizen"[1] and, thus, is not qualified for candidacy in Georgia's 2012 Presidential Primary. Despite its application in the court below, this Court does not believe that O.C.G.A. § 21-2-5 applies in this case because the challenge at issue involves the Presidential Preference Primary, which by its terms, is an opportunity for electors "to express their preference for one person to be a candidate for nomination." O.C.G.A. § 21-2-191. The Presidential Preference Primary apportions delegates, but neither elects nor nominates candidates for the Presidency. Therefore, because Respondent Barack Obama is not yet a "candidate" for the Presidential election in question and because the Presidential Preference Primary is not an "election" within the meaning of O.C.G.A. § 21-2-1, *et seq.*, O.C.G.A. § 21-2-5 does not apply. *See* O.C.G.A. § 21-2-2(5) and 21-2-5.

Moreover, it is well established in Georgia as elsewhere in the United States that voters vote on "presidential electors," rather than voting directly for a candidate, when voting for the Office of President of the United States. O.C.G.A. § 21-2-172. The political parties' candidates for President are determined by convention of the political party. *See* O.C.G.A. §§ 21-2-191 to

---

[1] Petitioners claim is based, in part, on a contention that at the time of his birth, Respondent's father was not a citizen of the United States.

In the case of a Democratic candidate for President, the Democratic Party of Georgia has the sole discretion to determine the qualifications of potential candidates and the name(s) to be included on its Presidential Preference Primary ballot. O.C.G.A. § 21-2-193; see Duke v. Cleland, 954 F.2d 1523 (11th Cir. 1992); Duke v. Cleland, 884 F. Supp. 511, 515-16 (N.D. Ga. 1995).

The Secretary of State is prohibited by the Fourteenth Amendment of the United States Constitution and Georgia statutory law from infringing on the associational rights of the Democratic Party of Georgia and is limited in its authority to examining presidential electors. O.C.G.A. §§ 21-2-172 to 21-2-200; Duke v. Cleland, 884 F. Supp. at 515-16 (N.D. Ga. 1995). Even if the Secretary of State believes that a challenger's claims are valid, the Secretary of State may not interfere with a political party's internal decision-making. Id.

Based upon Georgia law and governing precedent, the Court finds it has no authority to exercise jurisdiction over the Democratic Party of Georgia's selection of the names(s) to be included in the Presidential Preference Primary or to examine the qualifications of those individuals. Therefore, these actions should be DISMISSED in accordance with O.C.G.A. § 9-11-12(b).

Additionally, even if the Court had determined that O.C.G.A. § 21-2-5 applied to these matters and provided the Court with appellate jurisdiction over same, the Court finds that Petitioners have failed entirely to perfect personal service upon Respondent(s) as required by O.C.G.A. § 21-2-5(e) and O.C.G.A § 9-11-4. See Bible v. Bible, 259 Ga. 418, 418 (1989).

Therefore, IT IS HEREBY ORDERED AND ADJUDGED that Respondent Barack Obama's Motion(s) to Dismiss in the above matters are GRANTED, and the above actions are hereby DISMISSED.

---

Farrar, et al. v. Obama, et al: Civil Action No. 2012CV211398
Swensson v. Obama: Civil Action No. 2012CV211527
Powell v. Obama: Civil Action No. 2012CV211528
Welden v. Obama: Civil Action No. 2012CV211537
ORDER GRANTING MOTION(S) TO DISMISS                                    Page 4

**SO ORDERED** this the 2nd day of March, 2012.

CYNTHIA D. WRIGHT, Chief Judge
Fulton County Superior Court
Atlanta Judicial Circuit

<u>Copies to:</u>

<u>Via Email and U.S. Mail</u>:
David Farrar, *Pro Se*
2059 Cavesprong Road
Cedartown, Georgia 30125
david.is.farrar@gmail.com

Cody Robert Judy, *Pro Se*
3031 Ogden Avenue, Suite #2
Ogden, Utah 84403
codyjudy@hotmail.com

J. Mark Hatfield, Esq.
Hatfield & Hatfield, P.C.
201 Albany Avenue
P.O. Box 1361
Waycross, Georgia 31502
mhatfield@wayxcable.com

Van R. Irion, Esq.
Liberty Legal Foundation
9040 Executive Park Drive, Suite 200
Knoxville, TN 37923
van@libertylegalfoundation.org

Michael K. Jablonski, Esq.
2221-D Peachtree Road, NE
Atlanta, Georgia 30309
michael.jablonski@comcast.net

---

Cam-Anh Le, Esq.
Vincent Robert Russo, Jr., Esq.
Office of the Georgia Secretary of State
Executive Office
214 State Capitol
Atlanta, Georgia 30334
cale@sos.ga.gov
vrusso@sos.ga.gov


David P. Welden, *Pro Se*
5530 Wright Road
Powder Springs, Georgia 30127
dpwelden@gmail.com

# TAB D

**Freeman v. Obama**
**12 SOEB GP 103**

**Candidate:** Barack Obama

**Office:** President

**Party:** Democrat

**Objector:** Benjamin Freeman

**Attorney For Objector:** Michael Kreloff/Mike Kasper

**Attorney For Candidate:** Pro se

**Number of Signatures Required:**

**Number of Signatures Submitted:**

**Number of Signatures Objected to:**

**Basis of Objection:** The Candidate does not meet the Constitutional requirements for seeking and holding the office of President of the United States because he is not a "Natural Born Citizen," as required by Article II, Section 1 of the United States Constitution.

**Dispositive Motions:** Candidate's Motion to Strike and Dismiss the Objector's Petition

**Binder Check Necessary:** No

**Hearing Officer:** Jim Tenuto

**Hearing Officer Findings and Recommendation:** The Candidate filed a Motion to Strike and Dismiss the Objector's Petition on the basis that the Objector failed to comply with Section 10-8 because he did not state his "Objector's Interest" in filing the objection and that the petition is based upon an incorrect legal interpretation of what constitutes a "Natural Born Citizen."

Rule 9 of the Board's Adopted Rules of Procedure provides that the Board is to decide all dispositive motions upon receipt of the recommendation of a Hearing Officer and/or General Counsel.

The Hearing Officer assumed, for the sake of argument, that the Objector has adequately stated his interest. A copy of the Candidate's birth certificate is attached to the Candidate's Motion to Strike and Dismiss the Objector's Petition. The Hearing Officer finds that the birth certificate clearly establishes the Candidate's eligibility for office as a "Natural Born Citizen."

For the reasons set forth above, the Hearing Officer recommends that the Candidate's Motion to Strike and Dismiss the Objector's Petition be granted and the name Barack Obama be certified to appear on the ballot as Democratic candidate for President of the United States for the March 20, 2012 General Primary Election.

**Recommendation of the General Counsel:** I concur with the recommendation of the Hearing Officer.

BEFORE THE DULY CONSTITUTED ELECTORAL BOARD FOR THE HEARING AND PASSING
UPON OBJECTIONS TO THE NOMINATION PAPERS FOR CANDIDATES FOR THE OFFICE OF
THE PRESIDENT OF THE UNITED STATES

| | | |
|---|---|---|
| Benjamin C. Freeman  (objector) | { | |
| VS | { | 12 SOEB GP 103 |
| Barack Obama  (candidate) | { | |

### RECOMMENDATION OF THE HEARING EXAMINER

1. The Candidate timely filed nominating petitions for the March 20, 2012 General Primary Election as Candidate for President of the United States in the Democratic primary.

2. The Objector timely filed an objection to the Candidate's nominating petitions.

3. The above-referenced objection was called by the State Officers Electoral Board on January 24, 2012.

4. Benjamin C. Freeman filed a Pro se Appearance.

5. Michael Kreloff and Michael Kasper filed Appearances on behalf of the Candidate.

6. A case management conference was held on January 24, 2012, immediately following the calling of cases and filing of Appearances.

7. The Candidate's attorneys timely filed Candidate's Motion to Strike and Dismiss Objector's Petition. The basis of the motion is as follows:
    A. Objector failed to comply with Section 10-8, Never stating "Objector's Interest" in filing the objection.

    B. Objector's Petition is Based upon an Incorrect Legal Interpretation of What Constitutes a "Natural Born Citizen"

8. The Objector did not file any motions against the Candidate by the January 25, 2012, 5:00pm deadline.

9. The Objector did not file a Response to the Candidate's Motion to Strike and Dismiss Objector's Petition.

## MOTION TO DISMISS

1. The Rules of Procedure, # 7, provides the Board is to decide all dispositive motions upon receipt of the recommendation of a Hearing Examiner and/or General Counsel.

2. A copy of the Candidate's birth certificate is attached to the Candidate's Motion as Exhibit A. Said Exhibit A is attached to this Recommendation.

3. It is argued that the Objector does not adequately state his interest in filing the objection. It will be assumed, for the sake of argument, that the Objector has adequately stated his interest.

4. The birth certificate attached as Exhibit A clearly establishes the Candidate's eligibility for office as a " Natural Born Citizen"

## RECOMMENDATION

For the reasons set forth above, it is the Recommendation of the Hearing Examiner the Candidate's Motion to Strike and Dismiss Objector's Petition be granted.

Respectfully Submitted,

James Tenuto

James Tenuto

Hearing Examiner

Date: January 27, 2012

## CERTIFICATE OF SERVICE

I, James Tenuto, Hearing Examiner, do hereby certify that I served a copy of the <u>Recommendation of the Hearing Examiner</u> to the following on January 27, 2012 by the method set forth following the names:

Michael Kreloff and                              Email to: Capitolaction@ Yahoo.com

Michael Kasper

Benjamin C. Freeman                           Email to: Freeman.All@Juno.com

Respectfully Submitted,

*James Tenuto*

James Tenuto

Hearing Examiner

**STATE OF HAWAII**      **CERTIFICATE OF LIVE BIRTH**      **DEPARTMENT OF HEALTH**

FILE NUMBER **151**      **61 10641**

| 1a. Child's First Name (Type or print) | 1b. Middle Name | 1c. Last Name |
|---|---|---|
| BARACK | HUSSEIN | OBAMA, II |

| 2. Sex | 3. This Birth | 4. If Twin or Triplet, Was Child Born | 5a. Birth Date | Month | Day | Year | 5b. Hour |
|---|---|---|---|---|---|---|---|
| Male | Single ☒ Twin ☐ Triplet ☐ | 1st ☐ 2nd ☐ 3rd ☐ | | August | 4, | 1961 | 7:24 P.M. |

| 6a. Place of Birth: City, Town or Rural Location | | 6b. Island |
|---|---|---|
| Honolulu | | Oahu |

| 6c. Name of Hospital or Institution (If not in hospital or institution, give street address) | 6d. Is Place of Birth Inside City or Town Limits? |
|---|---|
| Kapiolani Maternity & Gynecological Hospital | Yes ☒ No ☐ |

| 7a. Usual Residence of Mother: City, Town or Rural Location | 7b. Island | 7c. County and State or Foreign Country |
|---|---|---|
| Honolulu | Oahu | Honolulu, Hawaii |

| 7d. Street Address | 7e. Is Residence Inside City or Town Limits? |
|---|---|
| 6085 Kalanianaole Highway | Yes ☐ No ☐ |

| 7f. Mother's Mailing Address | 7g. Is Residence on a Farm or Plantation? |
|---|---|
| | Yes ☐ No ☒ |

| 8. Full Name of Father | | | 9. Race of Father |
|---|---|---|---|
| BARACK | HUSSEIN | OBAMA | African |

| 10. Age of Father | 11. Birthplace (Island, State or Foreign Country) | 12a. Usual Occupation | 12b. Kind of Business or Industry |
|---|---|---|---|
| 25 | Kenya, East Africa | Student | University |

| 13. Full Maiden Name of Mother | | | 14. Race of Mother |
|---|---|---|---|
| STANLEY | ANN | DUNHAM | Caucasian |

| 15. Age of Mother | 16. Birthplace (Island, State or Foreign Country) | 17a. Type of Occupation Outside Home During Pregnancy | 17b. Date Last Worked |
|---|---|---|---|
| 18 | Wichita, Kansas | None | |

| 18a. Signature of Parent or Other Informant | 18b. Date of Signature |
|---|---|
| I certify that the above stated information is true and correct to the best of my knowledge. ▶ (Ann Dunham Obama) | 8-7-61 |

| 19a. Signature of Attendant | 19b. Date of Signature |
|---|---|
| I hereby certify that this child was born alive on the date and hour stated above. ▶ (David A. Sinclair) | M.D. ☐ D.O. ☐ Midwife ☐ Other ☐   8.8.61 |

| 20. Date Accepted by Local Reg. | 21. Signature of Local Registrar | 22. Date Accepted by Reg. General |
|---|---|---|
| AUG -8 1961 | (U K C Lee) | AUG -8 1961 |

| 23. Evidence for Delayed Filing or Alteration |
|---|
| |

I CERTIFY THIS IS A TRUE COPY OR
ABSTRACT OF THE RECORD ON FILE IN
THE HAWAII STATE DEPARTMENT OF HEALTH

APR 25 2011

*Alvin T. Onaka*, Ph.D.
STATE REGISTRAR

Cand. Ex. A



Next Election: Tuesday, November 6, 2012

**ILLINOIS State Board of Elections**

Information for: Voters   Candidates   Committees   Businesses   Reporters   Educators   L.E.O.'s

Search

Home • Return to Previous Page                           Publications • Contact Us

GENERAL PRIMARY - 3/20/2012

FREEMAN V OBAMA
1/10/2012 4:11 PM
OVERRULED

| Objectors | Address |
|---|---|
| FREEMAN, BENJAMIN C. | 445 SOUTH EDWARDS STREET DECATUR, IL 62522 |

| Name | Office/Party | Status |
|---|---|---|
| OBAMA, BARACK 5046 S. GREENWOOD AVE. CHICAGO, IL 60615 | PRESIDENT DEMOCRATIC | Active 2/2/2012 11:00 AM |

Illinois Amber Alert • National Center for Missing and Exploited Children • Privacy Statement

# TAB E



### *State of New Jersey*
OFFICE OF ADMINISTRATIVE LAW

<u>**INITIAL DECISION**</u>

OAL DKT. NO. STE 04534-12

AGENCY DKT. N/A

**NICHOLAS E. PURPURA**

**AND THEODORE T. MORAN,**

    Petitioners,

    v.

**BARACK OBAMA,**

    Respondent.

_____

    **Mario Apuzzo**, Esq., for petitioners

    **Alexandra Hill**, Esq., for respondent (Genova, Burns, Giantomasi & Webster, attorneys)

                                     **AND**

**PATRICK GALASSO,**                          OAL DKT. NO. STE 04588-12

    Petitioner,                           AGENCY DKT. N/A

    v.

**BARACK OBAMA,**

    Respondent.

_____

    **Patrick Galasso**, petitioner, filed <u>pro se</u>

    **Alexandra Hill**, Esq., for respondent (Genova, Burns, Giantomasi & Webster, attorneys)

Record Closed:  April 10, 2012                    Decided:  April 10, 2012

BEFORE **JEFF S. MASIN**, ALJ:

Petitioners in these matters challenge the validity of the nominating petition filed on behalf of President Barack Obama, a candidate for election to the position of President of the United States.   The challenges were filed on April 5 (Purpura and Moran) and April 9 (Galasso).  A hearing was held before this judge on April 10, 2012. Messrs. Purpura and Moran appeared with counsel.  Mr. Galasso did not appear and was not represented at the hearing.  As such, his objection is subject to dismissal for failure to prosecute, but since the issues he raised in his one-page petition are essentially those raised by the other objectors, the matter will be decided on the merits.

The petitioners present several grounds for their contention that Mr. Obama cannot legally stand as a candidate for the Democratic nomination in the pending primary.  As identified in the petition and as more directly defined at the hearing, the objections are that

1.     Mr. Obama has not proven that he meets the Constitutional requirements for the Office of President.  More specifically, as he must be a "natural-born Citizen" and as the Secretary of State has an obligation to assure that he meets that qualification, he has not provided her with proof as to the details of his birth.  He has not filed a birth certificate to establish his purported birth in Hawaii.  Indeed, there are uncertainties as to his actual identity.  He has not proven that he was actually born in the United States and as such, that he is a "natural born" citizen, as he is required to be in order to serve as President pursuant to Article II, Section 1, Clause 4 of the United States Constitution.

2.     Even if he was actually born in the United States, he is not a "natural born Citizen" because his father was not a citizen.

The petitioners each testified as to the reason for their having filed an objection to Mr. Obama's nominating petition.  In essence, they are concerned that a person whom they believe to be ineligible to be President would be elected to the position and wield the enormous power, influence and authority of the Presidency, with some threat to their security and to the democratic institutions of this country.  Their standing to file the objection was not challenged.

In regard to the first issue, it is undisputed that Mr. Obama has not presented the Secretary of State with any form of birth certificate in connection with the nominating petitions, and his counsel in this hearing agreed that she was offering no such document.  As such, while the petitioners have noted in their brief their beliefs as to the possibly illicit nature of the long-form birth certificate released to the public via the internet, counsel for the petitioners agreed that here the relevant objection is not to the validity of the document, for it is not before the Secretary.  The objection is instead that in regard to the need to prove qualification for the Presidency, and that Obama is "natural-born", the failure to produce any proof is itself fatal to his nomination.  And in that regard, the failure to even proffer to the Secretary a birth certificate is legally conclusive of the lack of qualification to stand for the Office.  As such, while the petitioners were prepared to produce a witness, purportedly an expert, to contend that the long-form certificate, as displayed on the internet, was a forgery, after extensive colloquy, it was determined that that issue is not relevant to the petitioners' objection herein.  It would only be so if the certificate were produced in order to meet a specific requirement of the law, and in that instance, its validity could be challenged.  It has not been offered.[1]

The Constitution of the United States, Article II, Section 1, Clause 4, provides the following qualifications for one to serve as President of the United States: (1) shall have attained the age of 35 years; (2) a natural born citizen of the United States; (3) a United States resident for at least fourteen years.  The nomination of any person to any public office may be challenged on the ground that the incumbent is not eligible for the office at the time of the election. N.J.S.A. 19:29-1.  N.J.S.A. 19:25-3 provides

---

[1]  I make no determination as to whether the gentlemen who was identified as the expert witness would have qualified as such, or on the validity of any alleged expert assessment of the original birth certificate based upon a view of the document on the internet.

> Not less than 1,000 voters of any political party may file a petition with the Secretary of State on or before the 64th day before a primary election in any year in which a President of the United States is to be chosen, requesting that the name of the person indorsed therein as a candidate of such party for the office of President of the United States shall be printed upon the official primary ballot of that party for the then ensuing election for delegates and alternates to the national convention of such party.
>
> The petition shall be prepared and filed in the form and manner herein required for the indorsement of candidates to be voted for at the primary election for the general election, except that the candidate shall not be permitted to have a designation or slogan following his name, and that it shall not be necessary to have the consent of such candidate for President indorsed on the petition.

It is thus the case that a nominating petition endorsing a particular person for the Presidency can be filed without the consent of the person indorsed.  That being the case, it appears that at least at the time that the petition is filed with the Secretary of State, there is no obligation upon the person indorsed to prove his or her qualification for the office.  This lack of a need for consent contrasts with the situation involving other nominating petitions, for N.J.S.A. 19:23-7 provides that, in regard to non-presidential nominating petitions

> Accompanying the petition, each person indorsed therein shall file a certificate, stating that he is qualified for the office mentioned in the petition, that he is a member of the political party named therein, that he consents to stand as a candidate for nomination at the ensuing primary election of such political party, and that, if nominated, he consents to accept the nomination, to which shall be annexed the oath of allegiance . . . .

In the case of the presidential primary, where the person or persons indorsed need not consent to being indorsed by the petition, N.J.S.A. 19:25-4 authorizes such a person indorsed without consent to "decline in writing, filed in the office of the Secretary of State, to have his name printed upon the primary election ballot as a candidate for President, the Secretary of State shall not so certify such name."  It could be assumed therefore that if a person so indorsed knew that he did not meet the Constitutional

requirements for the office, he would decline, thus leading the Secretary to not certify his name.

There appears to be no affirmative requirement that a person indorsed in a nominating petition for the Presidency present to the Secretary of State any certification or other proof that he is qualified for the Office, at least not at the time when nominating petitions are to be accepted or rejected by the Secretary.  This is not meant to suggest that there is any other such occasion when such proof is required, but to the extent that this matter relates to the nominating petitions for the Presidential primary, there is no such requirement.  In that case, once a petition is filed endorsing a person and that person has not filed his declination of such indorsement, a party believing that the indorsed individual is not qualified can file a challenge on the grounds of ineligibility.

In this matter, as the petitioners' objection is that Mr. Obama has not provided the Secretary with proof of the place of his birth by means of a birth certificate or otherwise, the lack of any obligation on his part to do so means he has not failed to act in accordance with the applicable law.

The second objection involves the meaning of the Constitutional phrase, "natural born Citizen."  Discussion and consideration of this issue is of course relevant only on the understanding that Mr. Obama was born in Hawaii.  This issue has been the subject of litigation concerning Mr. Obama's candidacy in several jurisdictions.  No court, federal, state or administrative, has accepted the challengers' position that Mr. Obama is not a "natural born Citizen" due to the acknowledged fact that his father was born in Kenya and was a British citizen by virtue of the then applicable British Nationality Act.  Nor has the fact that Obama had, or may have had, dual citizenship at the time of his birth and thereafter been held to deny him the status of natural born.  It is unnecessary to reinvent the wheel here; the subject has been thoroughly reviewed and no new legal argument on this issue has been offered here.  While there are several decisions that could be cited, the decision issued by the Court of Appeals of Indiana in 2009 in Ankeny v. Governor, 916 N.E.2d 678 (Ind. Ct. App. 2009), is representative of the position taken by courts and other agencies who have considered the merits of the issue.  As the court therein noted, and as the petitioners here have contended, the

thrust of the argument against Obama's status as natural born is that there is a "clear distinction between being a 'citizen of the United states' and a 'natural born Citizen.'" Id. at 685.  The decision notes that the petitioner therein, as here, cites to an eighteenth century treatise by Emmerich de Vattel, "The Law of Nations" and to various early sources for support for their argument that one who is the child of a non-citizen cannot be natural born even if born in the United States.  But the Ankeny court, relying upon the decision of the United States Supreme Court in U.S. v. Wong Kim Ark, 169 U.S. 649, 18 S. Ct. 456, 42 L. Ed. 890 (1898), rejected that position.[2]  In Wong Kim Ark, Justice Gray wrote at great length about the understanding of the term "natural born" and its common law meaning, probing English authorities and concluding that the "law of England for the last three centuries, beginning before the settlement of this country, and continuing to the present day, . . . every child born in England of alien parents was a natural-born subject, unless the child of an ambassador or other diplomatic agent of a foreign state, or of an alien enemy in hostile occupation of the place where the child was born.  The same rule was in force in all the English colonies upon this continent down to the time of the Declaration of Independence, and in the United States afterwards, and continued to prevail under the constitution as originally established."  This position as to the common law meaning is in accord with Justice Joseph Story's statement, concurring in Inglis v. Trustees of Sailors' Snug Harbor, 28 U.S. (3 Pet.) 99, 7 L. Ed. 617 (1830), "Nothing is better settled at the common law than the doctrine that the children, even of aliens, born in a country, while the parents reside there under the protection of the government, and owing a temporary allegiance thereto, are subjects by birth."  See Wong Kim Ark, 160 U.S. at 660, 18 S. Ct. at 461.  In Wong Kim Ark, the Court also cited Justice Swayne's comment in United States v. Rhodes, 1 Abbott 26, 40, 41 (1860).

> All persons born in the allegiance of the king are natural-
> born subjects, and all person born in the allegiance of the

---

[2]  The Wong Kim Ark decision was preceded by Minor v. Happersett, 88 (21 Wall.) U.S. 162, 167, 22 L.Ed. 627 (1874), where the Supreme Court stated that while the Constitution did not say "in words" "who shall be natural-born citizens" there were "some authorities" who held that "children born within the jurisdiction without reference to the citizenship of their parents" were citizens.  The Court concludes that it was not necessary to decide that issue in Minor.  Wong Kim Ark more directly addresses the issue of who is "natural-born" although it is acknowledged that neither of these cases involved the use of the term in connection with a presidential candidate and the unique Constitutional requirements for holding that office. Nevertheless, the Wong Kim Ark ruling certainly goes very far in defining the term and its meaning in this country.  And the decision does not suggest that the common law rule identified therein only applied at the state level and not on a national basis, as counsel here claims.

> United States are natural-born citizens.  Birth and allegiance
> go together.  Such is the rule of the common law, and it is
> the common law of this country, as well as of England.

The <u>Wong Kim Ark</u> Court then stated

> We find no warrant for the opinion that this great principle of
> the common law has ever been changed in the United
> States.  It has always obtained here with the same vigor,
> and subject only to the same exceptions [children of
> ambassadors, etc.], since as before the Revolution.
>
> [<u>Wong Kim Ark</u>, <u>supra</u>, at 169 <u>U.S.</u> 662-663, 18 <u>S. Ct.</u> at
> 462].

The Georgia Secretary of State recently denied a similar challenge to Mr. Obama's status as a natural born citizen in <u>Farrar, et al. v. Obama</u>, OSAH-SECSTATE-CE-1215136-60-MAHIHI, where Georgia State Administrative Law Judge Mahili relied upon <u>Arkeny</u> and <u>Wong Kim Ark</u> for his ruling that the President was indeed a natural born Citizen.

Time does not allow for the fullest discussion of the case law addressing these issues, but suffice it to say that the status of "natural born Citizen" for Mr. Obama has not been denied by any court or administrative agency that has addressed the merits of the issue.  This is not the place to write a law review article on the full analysis of the subject, but there is no legal authority that has been cited or otherwise provided that supports a contrary position.  The petitioners' legal position on this issue, however well intentioned, has no merit in law.  Thus, accepting for the point of this issue that Mr. Obama was born in Hawaii, he is a "natural born Citizen" regardless of the status of his father.

Based upon the above I **CONCLUDE** that the petitioners have failed to meet their burden to establish that Barak Obama failed in any obligation to prove to the Secretary of State that he is qualified to hold the Presidency and that he is a "natural born Citizen" of the United States of America, as required by the United States Constitution.  The petitions challenging his petitions are **DISMISSED**.

I hereby **FILE** my initial decision with the **SECRETARY OF STATE** for consideration.

This recommended decision may be adopted, modified or rejected by the **SECRETARY OF STATE**, who by law is authorized to make a final decision in this matter.  If the Secretary of State does not adopt, modify or reject this decision within forty-five days and unless such time limit is otherwise extended, this recommended decision shall become a final decision in accordance with N.J.S.A. 52:14B-10.

Any party may file exceptions with the **DIRECTOR OF THE DIVISION OF ELECTIONS**, **DEPARTMENT OF STATE**, by facsimile transmission at (609) 777-1280 within two hours of receipt of the initial decision.  A hard copy shall be mailed within twenty-four hours of the facsimile transmission to the **DIRECTOR OF THE DIVISION OF ELECTIONS, DEPARTMENT OF STATE, 225 West State Street, 5rd Floor, PO Box 304, Trenton, New Jersey 08625-0304**, marked "Attention:  Exceptions."  A copy of any exceptions must be sent to the judge and to the other parties.


April 10, 2012
DATE                                         **JEFF S. MASIN**, ALJ


Date Received at Agency:             April 10, 2012


Date Mailed to Parties:              April 10, 2012


/caa

OAL DKT. NOS. STE 4534-12 AND STE 4588-12

# **EXHIBITS**[3]

<u>For Petitioners</u>

P-1    Letter dated July 29, 2010, from Rolbin to Strunk with attachment

P-2    Computer printout—"Daylife"

P-3    Photocopy of pages of Obama's High School Yearbook—"OAHUAN 1979"

---

[3]  Several exhibits were offered that were not accepted into evidence.  Others, related to the challenge to the birth certificate, were never offered after the issue at bar was clarified.  The rejected exhibits included an affidavit of Timothy Lee Adams, an Order of the Alabama Supreme Court deemed irrelevant to this case, and a photocopy of what on its face is a Selective Service Registration Form, which has no evidence as to the authenticity of the document from which the internet copy was made.

STATE OF NEW JERSEY
DEPARTMENT OF STATE
OFFICE OF THE SECRETARY OF STATE

| | |
|---|---|
| NICHOLAS E. PURPURA<br>AND THEODORE T. MORAN,<br>PETITIONERS,<br><br>v.<br><br>BARACK OBAMA,<br>RESPONDENT. | )<br>)<br>)<br>)     FINAL DECISION<br>)<br>)     OAL DOCKET NO.<br>)     STE 04534-12<br>)<br>) |

| | |
|---|---|
| PATRICK GALASSO,<br>PETITIONER,<br><br>v.<br><br>BARACK OBAMA,<br>RESPONDENT. | )<br>)<br>)<br>)     FINAL DECISION<br>)<br>)     OAL DOCKET NO.<br>)     STE 04588-12<br>)<br>) |

On March 30, 2012, Patrick Galasso filed a written objection with the Division of Elections ("DOE") challenging the validity of a "Choice for President" nomination petition indorsing President Barack Obama. An additional objection was filed with the DOE by Nicholas E. Purpura and Theodore T. Moran on April 5, 2012. The two objections were transferred to the Office of Administrative Law ("OAL") as "contested cases," and all parties were timely notified by telephone on April 9, 2012 that hearings would commence on Tuesday, April 10, 2012 at the OAL Hamilton office.

Because the two challenges raised identical issues, the matters were consolidated for a hearing before Administrative Law Judge Jeff S. Masin ("ALJ"). The one objector, Patrick Galasso, did not appear at the hearing, however a representative for him was present. Objector Purpura and Moran appeared by way of counsel. Counsel also appeared for respondent President Obama.

Petitioners raised two objections to President Obama's nomination petition. One, petitioners alleged that the President was obligated to establish his eligibility to hold office by presenting proof to the New Jersey Secretary of State that he was born in the United States. Second, even if the President was born in the United States, he is not a "natural born citizen" because only one of his parents was a U.S. Citizen. The ALJ heard testimony presented by petitioners. Several exhibits were offered into evidence by respondent, but rejected by the ALJ on grounds of relevancy and lack of authenticity. The record was closed on April 10, 2012. On that same date, the ALJ issued an Initial Decision rejecting the objections and upholding the validity of the "Choice for President" nomination petition indorsing President Obama. Exceptions were filed by petitioners Purpura and Moran with the Division of Election on April 10, 2012.

After full consideration of the record and a review of the exceptions filed, I hereby adopt the ALJ's Initial Decision in its entirety.

IT IS SO ORDERED.

DATED: 4\12\12

KIMBERLY M. GUADAGNO
SECRETARY OF STATE

# TAB F

**Jackson v. Obama**
**12 SOEB GP 104**

**Candidate:** Barack Obama

**Office:** President

**Party:** Democrat

**Objector:** Michael Jackson

**Attorney For Objector:** Michael Kreloff/Mike Kasper

**Attorney For Candidate:** Pro se

**Number of Signatures Required:**

**Number of Signatures Submitted:**

**Number of Signatures Objected to:**

**Basis of Objection:** The Candidate's nomination papers are insufficient because they fail to demonstrate or otherwise offer proof of whether the candidate meets the constitutional requirements for office because the Candidate's nomination papers do not include proof of United States' citizenship.

**Dispositive Motions:** Candidate's Motion to Strike and Dismiss the Objector's Petition, Objector's Opposition to Candidate's Motion to Strike and Dismiss the Objector's Petition

**Binder Check Necessary:** No

**Hearing Officer:** Jim Tenuto

**Hearing Officer Findings and Recommendation:** The Candidate filed a Motion to Strike and Dismiss the Objector's Petition on the basis that the Objector failed to comply with Section 10-8 because he did not state his "Objector's Interest" in filing the objection and that the petition is based upon an incorrect legal interpretation of what constitutes a "Natural Born Citizen."

Rule 9 of the Board's Adopted Rules of Procedure provides that the Board is to decide all dispositive motions upon receipt of the recommendation of a Hearing Officer and/or General Counsel.

The Hearing Officer assumed, for the sake of argument, that the Objector has adequately stated his interest. A copy of the Candidate's birth certificate is attached to the Candidate's Motion to Strike and Dismiss the Objector's Petition. The Hearing Officer finds that the birth certificate clearly establishes the Candidate's eligibility for office as a "Natural Born Citizen."

For the reasons set forth above, the Hearing Officer recommends that the Candidate's Motion to Strike and Dismiss the Objector's Petition be granted and the name Barack Obama be certified to appear on the ballot as Democratic candidate for President of the United States for the March 20, 2012 General Primary Election.

**Recommendation of the General Counsel:** I concur with the recommendation of the Hearing Officer.

BEFORE THE DULY CONSTITUTED

ELECTORAL BOARD FOR THE HEARING

AND PASSING UPON OBJECTIONS FOR THE

OFFICE OF THE PRESIDENT OF THE UNITED STATES

Michael Jackson   (objector)                    {

    VS                                       {     12 SOEB GP 104

Barack Obama   (candidate)                    {

## RECOMMENDATION OF THE HEARING EXAMINER

1. The Candidate timely filed nominating petitions for the March 20, 2012 General Primary Election as Candidate for President of the United States Democratic primary.

2. The Objector timely filed an objection to the Candidate's nominating petitions.

3. The above-referenced objection was called by the State Officers Electoral Board on January 24, 2012.

4. Michael Jackson filed a Pro se Appearance as Objector.

5. Michael Kreloff and Michael Kasper filed Appearances on behalf of the Candidate.

6. A case management conference was held on January 24, 2012, immediately following the calling of cases and filing of Appearances.

7. The Candidate's attorneys timely filed Candidate's Motion to Strike and Dismiss Objector's Petition. The basis of the motion is as follows:
    A. Objector failed to comply with Section 10-8, Never stating "Objector's Interest" in filing the objection, nor any appropriate relief within the power of the Electoral Board.

    B. Objector's Petition is Based upon an Incorrect Legal Interpretation of What Constitutes a
    "Natural Born Citizen"

8. The Objector did not file any motions against the Candidate by the January 25, 2012, 5:00pm deadline.

9.  The Objector did not file a Response to the <u>Candidate's Motion to Strike and Dismiss Objector's Petition.</u>

10. The Objector timely filed <u>Objector's Opposition to Candidate's Motion to Strike and Dismiss Objector's Petition.</u> Said pleading is illogical, nonsensical and not worthy of consideration.

MOTION TO DISMISS

1.  The Rules of Procedure, # 7, provides the Board is to decide all dispositive motions upon receipt of the recommendation of a Hearing Examiner and/or General Counsel.

2.  A copy of the Candidate's birth certificate is attached to the Candidate's Motion as Exhibit A. Said Exhibit A is attached to this Recommendation.

3.  It is argued that the Objector does not adequately state his interest in filing the objection. It will be assumed, for the sake of argument, that the Objector has adequately stated his interest.

4.  The birth certificate attached as Exhibit A clearly establishes the Candidate's eligibility for office as a " Natural Born Citizen"

RECOMMENDATION

For the reasons set forth above, it is the Recommendation of the Hearing Examiner the <u>Candidate's Motion to Strike and Dismiss Objector's Petition</u> be granted.

Respectfully Submitted,

James Tenuto

Hearing Examiner

Date: January 27, 2012

## CERTIFICATE OF SERVICE

I, James Tenuto, Hearing Examiner, do hereby certify that I served a copy of the <u>Recommendation of the Hearing Examiner</u> to the following on January 27, 2012 by the method set forth following the names:

Michael Kreloff and                                 Email to: Capitolaction@ Yahoo.com

Michael Kasper

Michael Jackson                                      Email to: JesusChristsBloodSaves@ Gmail.com

Respectfully Submitted,

*James Tenuto*

James Tenuto

Hearing Examiner

STATE OF HAWAII  **CERTIFICATE OF LIVE BIRTH**  DEPARTMENT OF HEALTH
FILE NUMBER **151**  **61 10641**

| 1a. Child's First Name   (Type or print) | 1b. Middle Name | 1c. Last Name |
|---|---|---|
| BARACK | HUSSEIN | OBAMA, II |

| 2. Sex | 3. This Birth | 4. If Twin or Triplet, Was Child Born | 5a. Birth Date | Month | Day | Year | 5b. Hour |
|---|---|---|---|---|---|---|---|
| Male | Single ☒ Twin ☐ Triplet ☐ | 1st ☐ 2nd ☐ 3rd ☐ | | August | 4, | 1961 | 7:24 P.M. |

| 6a. Place of Birth: City, Town or Rural Location | | 6b. Island |
|---|---|---|
| Honolulu | | Oahu |

| 6c. Name of Hospital or Institution (If not in hospital or institution, give street address) | 6d. Is Place of Birth Inside City or Town Limits? |
|---|---|
| Kapiolani Maternity & Gynecological Hospital | Yes ☒  No ☐ If no, give Judicial district |

| 7a. Usual Residence of Mother: City, Town or Rural Location | 7b. Island | 7c. County and State or Foreign Country |
|---|---|---|
| Honolulu | Oahu | Honolulu, Hawaii |

| 7d. Street Address | 7e. Is Residence Inside City or Town Limits? |
|---|---|
| 6085 Kalanianaole Highway | Yes ☒  No ☐ If no, give Judicial district |

| 7f. Mother's Mailing Address | 7g. Is Residence on a Farm or Plantation? |
|---|---|
| | Yes ☐  No ☒ |

| 8. Full Name of Father | 9. Race of Father |
|---|---|
| BARACK  HUSSEIN  OBAMA | African |

| 10. Age of Father | 11. Birthplace (Island, State or Foreign Country) | 12a. Usual Occupation | 12b. Kind of Business or Industry |
|---|---|---|---|
| 25 | Kenya, East Africa | Student | University |

| 13. Full Maiden Name of Mother | 14. Race of Mother |
|---|---|
| STANLEY  ANN  DUNHAM | Caucasian |

| 15. Age of Mother | 16. Birthplace (Island, State or Foreign Country) | 17a. Type of Occupation Outside Home During Pregnancy | 17b. Date Last Worked |
|---|---|---|---|
| 18 | Wichita, Kansas | None | |

| 18. I certify that the above stated information is true and correct to the best of my knowledge. | 18a. Signature of Parent or Other Informant | 18b. Date of Signature |
|---|---|---|
| | (Signed) Ann Dunham Obama   Parent ☒ Other ☐ | 8-7-61 |

| 19. I hereby certify that this child was born alive on the date and hour stated above. | 19a. Signature of Attendant | 19b. Date of Signature |
|---|---|---|
| | (Signed) David A. Sinclair   M.D. ☒ D.O. ☐ Midwife ☐ Other ☐ | 8.8.61 |

| 20. Date Accepted by Local Reg. | 21. Signature of Local Registrar | 22. Date Accepted by Reg. General |
|---|---|---|
| AUG -8 1961 | U K Lee | AUG -8 1961 |

| 23. Evidence for Delayed Filing or Alteration |
|---|
| |

APR 25 2011

I CERTIFY THIS IS A TRUE COPY OR
ABSTRACT OF THE RECORD ON FILE IN
THE HAWAII STATE DEPARTMENT OF HEALTH

*Alvin T. Onaka*, Ph.D.
STATE REGISTRAR

Cand. Ex. A



**GENERAL PRIMARY - 3/20/2012**

**JACKSON V OBAMA**

1/13/2012 10:46 AM

OVERRULED

| Objectors | Address |
|---|---|
| JACKSON, MICHAEL | 100 CAROLINE STREET MORTON, IL 61550 |

| Name | Office/Party | Status |
|---|---|---|
| OBAMA, BARACK 5046 S. GREENWOOD AVE. CHICAGO, IL 60615 | PRESIDENT DEMOCRATIC | Active 2/2/2012 11:00 AM |

Illinois Amber Alert • National Center for Missing and Exploited Children • Privacy Statement

# TAB G

At an IAS Term, Part 27 of
the Supreme Court of the
State of New York, held in
and for the County of
Kings, at the Courthouse,
at Civic Center, Brooklyn,
New York, on the 11th day
of April 2012

P R E S E N T :

HON. ARTHUR SCHACK,

Justice.

CHRISTOPHER-EARL STRUNK, *in esse*

Plaintiff,

-against-

NEW YORK STATE BOARD OF ELECTIONS;
JAMES A. WALSH/Co-Chair, DOUGLAS A.
KELLNER/Co-Chair, EVELYN J. AQUILA/
Commissioner, GREGORY P. PETERSON/
Commissioner, Deputy Director TODD D.
VALENTINE, Deputy Director STANLY ZALEN;
ANDREW CUOMO, ERIC SCHNEIDERMAN,
THOMAS P. DINAPOLI, RUTH NOEMI COLON,
in their Official and individual capacity, Fr. JOSEPH A.
O'HARE, S.J.; Fr. JOSEPH P. PARKES, S.J.;
FREDERICK A. O. SCHWARZ, JR.; PETER G.
PETERSEN; ZBIGNIEW KAIMIERZ BRZEZINSKI;
MARK BRZEZINSKI; JOSEPH R. BIDEN, JR.;
SOEBARKAH (a.k.a Barry Soetoro, a.k.a Barack
Hussein Obama, a.k.a Steve Dunham); NANCY
PELOSI; DEMOCRATIC STATE COMMITTEE OF
THE STATE OF NEW YORK; STATE COMMITTEE
OF THE WORKING FAMILIES PARTY OF NEW

**DECISION & ORDER**

Index No. 6500/11

-1-

YORK STATE; ROGER CALERO; THE SOCIALIST
WORKERS PARTY; IAN J. BRZEZINSKI; JOHN
SIDNEY MCCAIN III; JOHN A. BOEHNER; THE
NEW YORK STATE REPUBLICAN STATE
COMMITTEE; THE NEW YORK STATE
COMMITTEE OF THE INDEPENDENCE PARTY;
STATE COMMITTEE OF THE CONSERVATIVE
PARTY OF NEW YORK STATE; PENNY S.
PRITZKER; GEORGE SOROS; *OBAMA FOR
AMERICA*; *OBAMA VICTORY FUND*; *MCCAIN
VICTORY 2008*; *MCCAIN-PALIN VICTORY 2008*;
JOHN AND JANE DOES; and XYZ ENTITIES.

                    Defendants.

_____


_____


The following papers numbered 1 to 25 read on this motion:          Papers Numbered:

Notice of Motion and Notice of Cross-Motion and
and Affidavits (Affirmations)_____          ____ 1 - 13 ____

Opposing Affidavits (Affirmations)_____          ____ 14 - 21 ____

Reply Affidavits (Affirmations)_____          ____ 22 - 25 ____

_____

    If the complaint in this action was a movie script, it would be entitled *The

Manchurian Candidate Meets The Da Vinci Code*.  *Pro se* plaintiff CHRISTOPHER-

EARL STRUNK brings this action against numerous defendants, including President

BARACK OBAMA, Vice President JOSEPH BIDEN, Senator JOHN MCCAIN, Speaker

of the House of Representatives JOHN BOEHNER, former House of Representatives

Speaker NANCY PELOSI, Governor ANDREW CUOMO, Attorney General ERIC

SCHNEIDERMAN, Comptroller THOMAS DI NAPOLI, the NEW YORK STATE

BOARD OF ELECTIONS, billionaires PETER PETERSEN, PENNY PRITZKER,

GEORGE SOROS and six New York State political parties.  Thirteen motions are

pending before the Court.

Plaintiff STRUNK's complaint is a rambling, forty-five page variation on "birther"

cases, containing 150 prolix paragraphs, in at times a stream of consciousness.  Plaintiff's

central allegation is that defendants President OBAMA and Senator McCAIN, despite not

being "natural born" citizens of the United States according to plaintiff's interpretation of

Article II, Section 1, Clause 5 of the U.S. Constitution, engaged with the assistance of

other defendants in an extensive conspiracy, on behalf of the Roman Catholic Church to

defraud the American people and usurp control of the Presidency in 2008.  Most of

plaintiff STRUNK's complaint is a lengthy, vitriolic, baseless diatribe against defendants,

but most especially against the Vatican, the Roman Catholic Church, and particularly the

Society of Jesus (the Jesuit Order).

Plaintiff STRUNK alleges seven causes of action: breach of state constitutional

fiduciary duty by the NEW YORK STATE BOARD OF ELECTIONS and public officer

defendants; denial of equal protection for voter expectation of a correct ballot; denial of

substantive due process for voter expectation of a correct ballot; interference with the

right to a republican form of government by the two Jesuit defendants and defendant

F.A.O. SCHWARZ, JR., who were all members of the New York City Campaign Finance

Board; interference with plaintiff's election franchise; a scheme to defraud plaintiff of a reasonable expectation of successful participation in the suffrage process; and, a scheme by all defendants for unjust enrichment.

Plaintiff requests a declaratory judgment and a preliminary injunction against defendants, including: enjoining the NEW YORK STATE BOARD OF ELECTIONS from putting Presidential candidates on the ballot for 2012 unless they provide proof of eligibility, pursuant to Article II, Section 1, Clause 5 of the U. S. Constitution; ordering that this eligibility certification be submitted to the Court for proof of compliance; enjoining the Jesuits from interfering with the 2012 elections; ordering expedited discovery to determine the scope of damages, alleged to be more than $12 billion; and, ordering a jury trial for punitive treble damages.

Various defendants or groups of defendants, all represented by counsel, present eleven motions to dismiss and one motion to admit an attorney *pro hace vice* for this action. The eleven individual defendants or groups of defendants are, in chronological order of filing their motions to dismiss: defendants President BARACK OBAMA, Vice President JOSEPH BIDEN, OBAMA FOR AMERICA and the OBAMA VICTORY FUND; defendants MCCAIN VICTORY 2008, MCCAIN-PALIN VICTORY 2008 and Senator JOHN MCCAIN; defendants MARK BRZEZINSKI and IAN BRZEZINSKI; defendant Representative NANCY PELOSI; defendant GEORGE SOROS; defendants THE SOCIALIST WORKERS PARTY and ROGER CALERO; defendant Speaker

-4-

JOHN BOEHNER; defendant ZBIGNIEW BRZEZINSKI; defendants Father JOSEPH A.

O'HARE, S.J., Father JOSEPH P. PARKES, S.J. and FREDERICK A. O. SCHWARZ,

JR.; defendant PENNY PRITZKER; and defendant PETER G. PETERSEN. The eleven

motions to dismiss assert: plaintiff STRUNK lacks standing; plaintiff STRUNK fails to

state a claim upon which relief can be granted; plaintiff STRUNK fails to plead fraud

with particularity; the action is frivolous; plaintiff STRUNK is barred by collateral

estoppel from pursuing this action; and, the Court lacks both personal and subject matter

jurisdiction in this action.

The motion to admit counsel *pro hace vice* for the instant action, by counsel for

defendants MCCAIN VICTORY 2008, MCCAIN-PALIN VICTORY 2008 and Senator

JOHN MCCAIN, for Todd E. Phillips, Esq., a member in good standing of both the

California and District of Columbia bars, is granted.

Further, plaintiff STRUNK cross-moves to consolidate the instant action with a

similar "birther" action filed by him, *Strunk v Paterson, et al*, Index No. 29642/08, in the

Kings County Special Election Part, before Justice David Schmidt. Many of the

defendants oppose consolidation because *Strunk v Paterson, et al*, Index No. 29642/08, is

a disposed case.

The cross-motion to consolidate this action with *Strunk v Paterson, et al*, Index

No. 29642/08, is denied. Defendants who oppose plaintiff's cross-motion are correct.

Justice Schmidt disposed of *Strunk v Paterson, et al*, Index No. 29642/08, on the grounds

-5-

of collateral estoppel, failure to join necessary parties and laches.

The eleven motions to dismiss are all granted and plaintiff STRUNK's instant complaint is dismissed with prejudice. It is clear that plaintiff STRUNK: lacks standing; fails to state a claim upon which relief can be granted; fails to plead fraud with particularity; and, is barred by collateral estoppel. Also, this Court lacks subject matter jurisdiction and personal jurisdiction over most, if not all, defendants.

Furthermore, plaintiff STRUNK's instant action is frivolous. As will be explained, plaintiff STRUNK alleges baseless claims about defendants which are fanciful, fantastic, delusional and irrational. It is a waste of judicial resources for the Court to spend time on the instant action. Moreover, the Court will conduct a hearing to give plaintiff STRUNK a reasonable opportunity to be heard, pursuant to 22 NYCRR § 130-1.1, as to whether or not the Court should award costs and/or impose sanctions upon plaintiff STRUNK for his frivolous conduct. At the hearing, an opportunity will be given to counsel for defendants to present detailed records of costs incurred by their clients in the instant action.

Therefore, plaintiff STRUNK, who is not a stranger in the courthouses of New York, is enjoined from commencing future litigation in the New York State Unified Court System against: the NEW YORK STATE BOARD OF ELECTIONS, JAMES A. WALSH/ Co-Chair, DOUGLAS A. KELLNER/Co-Chair, EVELYN J. AQUILA/

Commissioner, GREGORY P. PETERSON/Commissioner, Deputy Director TODD D.

VALENTINE, and Deputy Director STANLY ZALEN; ANDREW CUOMO, ERIC

SCHNEIDERMAN, THOMAS P. DINAPOLI and RUTH NOEMI COLON, in their

Official and individual capacity; Father JOSEPH A. O'HARE, S.J.; Father JOSEPH P.

PARKES, S.J.; FREDERICK A. O. SCHWARZ, JR.; PETER G. PETERSEN;

ZBIGNIEW KAIMIERZ BRZEZINSKI; MARK BRZEZINSKI; JOSEPH R. BIDEN,

JR.; BARACK H. OBAMA, NANCY PELOSI; the DEOMCRATIC STATE

COMMITTEE OF THE STATE OF NEW YORK; the STATE COMMITTEE OF THE

WORKING FAMILIES PARTY OF NEW YORK STATE; ROGER CALERO; the

SOCIALIST WORKERS PARTY; IAN J. BRZEZINSKI; JOHN SIDNEY MCCAIN III;

JOHN A. BOEHNER; the NEW YORK STATE REPUBLICAN STATE COMMITTEE;

the NEW YORK STATE COMMITTEE OF THE INDEPENDENCE PARTY; the

STATE COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE;

PENNY S. PRITZKER; GEORGE SOROS; *OBAMA FOR AMERICA*; *OBAMA*

*VICTORY FUND*; *MCCAIN VICTORY 2008*; and *MCCAIN-PALIN VICTORY 2008*;

without prior approval of the appropriate Administrative Justice or Judge.

## Background

Plaintiff STRUNK previously commenced similar actions in the United States

District Court for the Eastern District of New York and this Court, the Supreme Court of

the State of New York, Kings County.  In *Strunk v New York State Board of Elections, et al.*, Index No. 08-CV4289 (US Dist Ct, EDNY, Oct. 28, 2008, Ross, J.), the Court dismissed the action because of plaintiff's lack of standing, failure to state a claim and frivolousness.  In that  action, plaintiff STRUNK accused the NEW YORK STATE BOARD OF ELECTIONS of "misapplication and misadministration of state law in preparation for the November 4, 2008 Presidential General Election" by, among other things, in ¶ 51 of the complaint, of "failure to obtain and ascertain that Barrack Hussein Obama is a natural citizen, otherwise contrary to United States Constitution Article 2 Second 1 Clause 5 [sic]" and demanded "Defendants are to provide proof that Barrack Hussein Obama is a natural born citizen and if not his electors are to be stricken from the ballot [sic]."  Judge Ross, at page 6 of her decision, held "the court finds that portions of plaintiff's affidavit rise to the level of the irrational" and, in footnote 6, Judge Ross cited two prior 2008 Eastern District cases filed by plaintiff STRUNK in which "the court has determined that portions of plaintiff's complaints have contained allegations that have risen to the irrational."

My Kings County Supreme Court colleague, Justice Schmidt, in *Strunk v Paterson, et al*, Index No. 29642/08, as cited above, disposed of that matter, on March 14, 2011, by denying all of plaintiff's motions and noting that the statute of limitations expired to join necessary parties President OBAMA and Senator MCCAIN.  Further, Justice Schmidt

denied plaintiff an opportunity to file affidavits of service *nunc pro tunc* and to amend the complaint.

Then, plaintiff STRUNK, eight days later, on March 22, 2011, commenced the instant action by filing the instant verified complaint. Plaintiff STRUNK's complaint recites numerous baseless allegations about President OBAMA. These allegations are familiar to anyone who follows the "birther" movement: President OBAMA is not a "natural-born" citizen of the United States; the President is a radical Muslim; the President's Hawaiian Certificate of Live Birth does not prove that he was born in Hawaii; and, President OBAMA is actually a citizen of Indonesia, the United Kingdom, Kenya, or all of the above. For example, Plaintiff STRUNK alleges, in ¶ 24 of the complaint, that President OBAMA:

> is a Madrasah trained radical Sunni Muslim by birth right . . . practices
>
> Shariah law . . . with the full knowledge and blessing of Defendants:
>
> Peter G. Peterson; Zbigniew Brzezinski; his sons Mark and Ian; Penny
>
> S. Pritzker; George Soros; Jesuits Fathers: Joseph P. O'Hare, Joseph
>
> P. Parkes; Brennan Center Executive Frederick A. O. Schwarz, Jr.;
>
> Nancy Pelosi, John Sidney McCain III; John A. Boehner; Hillary Clinton;
>
> Richard Durbin and others. [sic]

Then, in ¶ 28 of the complaint, plaintiff STRUNK alleges that President OBAMA "or his agent(s) as part of the scheme to defraud placed an image of Hawaiian Certification of Live Birth (COLB) on the Interest . . . and as a prima facie fact means the Hawaii issued COLB does not prove 'natural born' citizenship or birth in Hawaii, only a *long form* document would [sic.]"

Plaintiff's alleged vast conspiracy implicates dozens of political and religious figures, as well as the 2008 presidential candidates from both major parties, with numerous absurd allegations. They range from claiming that an associate at the large law firm of Kirkland and Ellis, LLP masterminded the conspiracy because she wrote a law review article about the U. S. Constitution's natural born citizen requirement for the office of President to the assertion that Islam is a seventh century A.D. invention of the Vatican. Further, plaintiff STRUNK alleges, in ¶ 129 of the complaint, that he:

is the only person in the USA to have duly *fired fired fired* BHO [President

OBAMA] on January 23, 2009 by registered mail (rendering BHO the

*USURPER* as Plaintiff is entitled to characterize BHO as) on the grounds

that he had not proven himself eligible . . . and all acts by the usurper are

void ab initio – a serious problem! [sic]

Plaintiff's allegations are strongly anti-Catholic, anti-Muslim and xenophobic. The

complaint weaves the occasional true but irrelevant fact into plaintiff's rambling stream of consciousness.

Moreover, plaintiff STRUNK alleges, in ¶ 22 of the complaint, that defendant Vice President BIDEN knew that President OBAMA was "not eligible to run for president because he is not a Natural-Born Citizen with a British Subject Father with a student visa, however in furtherance of CFR [Council on Foreign Relations] foreign policy initiatives in the mid-east supported Soebarkah [President OBAMA] as a Muslim [sic]."

Also, Plaintiff STRUNK discusses, in the complaint, then-Senator OBAMA's April 2008 co-sponsorship of Senate Resolution 511. This resolved unanimously that Senator MCCAIN, born in 1936 in Panama, while his father was on active duty in the United States Navy at Coco Sola Naval Air Station, is a natural born citizen of the United States. This resolution put to rest questions about Senator MCCAIN'S eligibility to run for President. However, plaintiff STRUNK alleges, in ¶ 43 of the complaint, that Senate Resolution 511 "is part of the scheme to defraud" and "a fraud upon Congress and the People of the several states and territories contrary to the facts." Then, plaintiff STRUNK, in ¶ 44 of the complaint, cites Senate Resolution 511's text as evidence that President OBAMA concedes that the definition of natural born citizenship for President requires both parents of a candidate be U.S. citizens at birth. Further, the complaint

-11-

alleges that JOHN MCCAIN and ROGER CALERO, presidential candidate of the

SOCIALIST WORKERS PARTY, were also ineligible, like then-Senator OBAMA, for

President because of their failure to qualify under the natural born citizen requirement.

Plaintiff's alleged injury, in ¶ 47 of the complaint, is "[t]hat on November 4, 2008,

Plaintiff, as a victim of the scheme to defraud, voted for the electors representing . . .

McCain . . . not a natural-born U.S. citizen."  Further, in ¶ 49 of the complaint, "as part of

the scheme to defraud, Plaintiff voted for Candidate McCain despite the fact that his wife

is a most devoted Roman Catholic whose two sons were educated by Jesuit priests."

Plaintiff alleges, in ¶ 51 of the complaint, that Senator MCCAIN, was born in

Colon Hospital, Colon, Panama, which was not in the Panama Canal Zone.  Further,

plaintiff alleges, in ¶ 52 of the complaint, that according to the November 18, 1903 Hay-

Bunau Varilla Treaty, by which the United States obtained the Canal Zone, Senator

MCCAIN is not a natural-born citizen.

Plaintiff STRUNK, in his final twenty pages of the complaint, alleges that the

massive conspiracy to defraud American voters was perpetrated by hundreds of

individuals, at the behest of the Roman Catholic Church and especially the Jesuits, with

the aim of bringing about the Apocalypse through the destruction of the Al Aqsa Mosque

in Jerusalem and the re-building a new Jewish Temple on that site.  Among the entities

that Plaintiff STRUNK implicates in his alleged conspiracy are: the Muslim Brotherhood;

the Carlyle Group; the CFR; Halliburton; Kirkland and Ellis, LLP; and, the Brennan

Center for Justice at NYU.  For example, in ¶ 91 of the complaint, plaintiff STRUNK

states:

> That members of *the Council on Foreign Relations* including
>
> Peter G. Petersen as then Chairman that act with the Jesuit Order by
>
> the oath of allegiance superior to the United States Constitution, Treaties,
>
> and various States' Constitutions that starting no later than January 2006
>
> sought to usurp the executive branch of government using Barack Hussein
>
> Obama II and John S. McCain III, as a matched set of contenders then
>
> under joint command and control, to preclude any other contender in
>
> preparation for a banking and sub-prime mortgage collapse that requires
>
> subsuming the sovereignty of the people of the united States of America
>
> and New York to International Monetary Fund conditionality with loss of
>
> the dollar reserve currency status, and collapse of the living standards of
>
> the vast majority of the Americans to that of a third world status. [sic]
>
> Plaintiff STRUNK, in ¶ 139 of the complaint, alleges that defendant GEORGE

SOROS "proves his allegiance to Rome by promoting Muslim Brotherhood overt control

of Egypt . . . We cannot forget that the Jesuits in Cairo created the Muslim Brotherhood in 1928, the same year the Order created Opus Dei in Spain [sic]." Further, plaintiff STRUNK, in ¶ 145 of the complaint alleges that "Defendants Pritzker and Soros have managed a crucial role for the Vatican State as a member of the CFR and high level Freemasonry and in conjunction with King Juan Carlos (the King of Jerusalem) to create global regionalism that subsumes national sovereignty of the USA and the People of New York state to the detriment of plaintiff and those similarly situated [sic]."

Eleven defendants or groups of defendants filed motions to dismiss, arguing that plaintiff STRUNK: lacks standing; failed to state a claim upon which relief can be granted; failed to plead fraud with particularity; and, is barred by collateral estoppel. Further, defendants argue that the Court lacks both personal and subject matter jurisdiction and the instant complaint is frivolous. Plaintiff, in response, filed an affidavit in opposition to the motions to dismiss and moved to consolidate the instant action with *Strunk v Paterson, et al*, Index No. 29642/08.

On August 22, 2011, I held oral arguments on the record with respect to the thirteen instant motions. At the hearing, plaintiff STRUNK agreed with the Court that President OBAMA, with the release of his long-form Hawaiian birth certificate, was born in Honolulu, Hawaii [tr., p. 23]. However, plaintiff STRUNK, at tr., pp. 30 - 31, argued that a "natural born citizen," eligible to run for President of the United States, pursuant to

Article II, Section 1, Clause 5 of the U.S. Constitution, means that not only the candidate

is natural born, but both of the candidate's parents are natural born.

The following exchange at the oral arguments took place, at tr., p. 34, line 25 - p.

35, line 16:

> MR. STRUNK:   My injury, I voted for McCain.

> THE COURT:   Is that an injury?

> MR. STRUNK:   My injury is he did not challenge Mr. Obama

after he went through the whole exercise.

> THE COURT:   You're saying he should have challenged Mr.

Obama's presidency?

> MR. STRUNK:   Absolutely, and the ballot.  The onus is on me

because he violated his agreement with me.  You can't challenge the eligibility

until he's up to be sworn.  McCain, since everybody in Congress, since they

didn't want to know about anything, so it was my responsibility.  I fired him

by registered mail within 72 hours.

> THE COURT:   I saw your letter that you fired the President.

I guess he didn't agree with you because he's still there.

A discussion ensued as to how plaintiff STRUNK alleges that President OBAMA

is a Muslim [tr., pp. 36 - 38].  The following colloquy took place at tr., p. 37, lines 4 - 8:

THE COURT:        How could you come to the conclusion that he's

a radical Sunni Muslim?

MR. STRUNK:        Because that's what his records show and that's

what the testimony of individuals who were in class with him show.

The following portions of the exchange, at tr., p. 39, line 9  - p. 43, line 8

demonstrates the irrational anti-Catholic bias of plaintiff STRUNK:

THE COURT:        What I find fascinating, first of all you said

there was a connection there where you say Cindy McCain says she's a

Catholic.  I don't know if she is.  I think you said she's Catholic faith,

Cindy McCain.

MR. STRUNK:        She is the largest distributor of Budweiser.

THE COURT:        I know that.  That doesn't make her a Catholic

necessarily.

MR. STRUNK:        It's the connection that counts.  Your don't get

those connections.

-16-

THE COURT:          . . . I don't know if the Busch family is Catholic.

I don't care.

MR. STRUNK:          That's big business.

THE COURT:          That's big business selling beer . . . Let's put

Anheuser-Busch to the side.

You said she's a Catholic and you get into this whole riff or rant,

whatever you want to call it, about the Catholic Church and Father O'Hare,

the Vatican.  You go on and on about the Vatican . . . but it seems to me

you have this theory that everything is a conspiracy and it always falls

back to Rome.

MR. STRUNK:          That's a matter of public record.

THE COURT:          Oh, okay.

MR. STRUNK:          What the key is here, Ms. McCain is on the

Board of Directors for a Jesuit run school where her children are going to

school.

THE COURT:          Could very well be.  I don't know.

MR. STRUNK:          . . . In fact, it turns out in the discovery of the

connection to the Jesuits it was so compelling that when I started really

digging into the background of this scheme of defraud, putting up two

Manchurian candidates at once, which would take advantage of New

York State's weakness in our law which required honesty.  We require to

have honesty and didn't get it.

THE COURT:        Your case is more *The Da Vinci Code*.

MR. STRUNK:        *The Da Vinci Code* is a phoney book.

THE COURT:        With all due respect to John Frankenheimer,

*The Manchurian Candidate* according to you and the school of the Vatican,

by that way it describes the gist of your argument.

MR. STRUNK:        Frankenheimer?

THE COURT:        He directed the original *Manchurian Candidate*

movie.

MR. STRUNK:        The old?

THE COURT:        With Frank, not Denzel.

MR. STRUNK:        Frankenheimer?

THE COURT:        1962 movie.

-18-

MR. STRUNK:          I was aware of the movie at that point, but - -

THE COURT:          Okay, forget it.

MR. STRUNK:          This is the one with Frank Sinatra?

THE COURT:          And Laurence Harvey.

MR. STRUNK:          The Queen of Diamonds/ Now you've brought - -

THE COURT:          You mentioned *The Manchurian Candidate*. They

have it in the movie.

MR. STRUNK:          I've used it as a pejorative.

THE COURT:          I understand that, and I think that *The Da Vinci*

*Code*, to make some interesting argument, that's a work of fiction.  At least

I think it's a work of fiction.

MR. STRUNK:          *The Manchurian Candidate* was not a work of

fiction.  The work - - I didn't want to get into this area.

THE COURT:          Let's not get into analogies.  I understand you

have various arguments but it seems to all come back to Rome.

MR. STRUNK:          No, it comes back to New York State and

whether I have standing in the Supreme Court of the State of New York

-19-

on the question of who's going to take responsibility to enforce the law which has not been done.

THE COURT:    Okay, that's your argument.

## Standard for a motion to dismiss

"When determining a motion to dismiss, **the court must** 'accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and **determine only whether the facts as alleged fit within any cognizable legal theory**' (*see Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Milstein, Felder & Steiner*, 96 NY2d 300, 303 [2001]; *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]) [**Emphasis added**]." (*Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561, 570-571 [2005]).  Further, the Court, in *Morris v Morris* (306 AD2d 449, 451 [2d Dept 2003]), instructed that:

In determining whether a complaint is sufficient to withstand a motion pursuant to CPLR 3211 (a) (7), "the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail" (*Guggenheimer v Ginsburg*, 43 NY2d 268, 275 [1977]. **The court** must accept the facts

-20-

alleged in the complaint to be true and ***determine only whether the facts***

***alleged fit within any cognizable legal theory*** (*see Dye v Catholic Med.*

*Ctr. of Brooklyn & Queens*, 273 AD2d 193 [2000]).   ***However, bare***

***legal conclusions are not entitled to the benefit of the presumption***

***of truth and are not accorded every favorable inference*** (*see*

*Doria v Masucci*, 230 AD2d 764 [2000].   [***Emphasis added***]

For a plaintiff to survive a motion to dismiss for failure to state a cause of action,

the factual allegations in the claim cannot be "merely conclusory and speculative in

nature and not supported by any specific facts." (*Residents for a More Beautiful Port*

*Washington, Inc. v Town of North Hempstead*, 153 AD3d 727, 729 [2d Dept 1989]).

"The allegations in the complaint cannot be vague and conclusory." (*Stoianoff v Gahona*,

248 AD2d 525 [2d Dept 1998], *app dismissed* 92 NY2d 844 [1998], *cert denied* by

*Stoianoff v New York Times*, 525 US 953 [1998]).  (*See LoPresti v Massachusetts Mut.*

*Life Ins. Co.*, 30 AD3d 474 [2d Dept 2006]; *Levin v Isayeu*, 27 AD3d 425 [2d Dept

2006]; *Hart v Scott*, 8 AD3d 532 [2d Dept 2004]).

Plaintiff STRUNK's complaint must be dismissed because the "Court need not,

and should not, accept legal conclusions, unwarranted inferences, unwarranted

deductions, baseless conclusions of law, or sweeping legal conclusions cast in the form of

factual allegations. (*Ulmann v Norma Kamali, Inc.*, 207 AD2d 691 [1d Dept 1994]; *Mark Hampton, Inc. v Bergreen*, 173 AD2d 220 [1d Dept 1991])." (*Goode v Charter Oak Fire Ins. Co.*, 8 Misc 3d 1023[A], at 2 [Sup Ct, Nassau County 2005]). It is clear that the facts alleged by plaintiff STRUNK do not fit into any cognizable legal theory.

Plaintiff STRUNK'S complaint is more of a political manifesto than a verified pleading. Similar lawsuits challenging the eligibility of President OBAMA and Senator MCCAIN for the presidency based upon plaintiff's incorrect interpretation of the term "natural born Citizen" in Article II, Section 1, Clause 5 of the U.S. Constitution have been dismissed as a matter of law. (*See Drake v Obama*, 664 F 3d 774 [9th Cir 2011]; *Barnett v Obama,* 2009 WL 3861788 [US Dist Ct, CD CA 2009]; *Berg v Obama,* 574 F Supp 2d 509 [ED Pa 2008], *affd* 586 F3d 234 [3d Cir 2009]; *Robinson v Bowen*, 567 F Supp 2d 1144 [ND Ca 2008]; *Hollander v McCain*, 566 F Supp 2d 63 [D NH 2008]).

## Plaintiff STRUNK lacks standing

Plaintiff STRUNK lacks standing to sue in state court, having suffered no injury. "Standing to sue is critical to the proper functioning of the judicial system. It is a threshold issue. If standing is denied, the pathway to the courthouse is blocked. The plaintiff who has standing, however, may cross the threshold and seek judicial redress." (*Saratoga County Chamber of Commerce, Inc. v Pataki*, 100 NY2d 801 812 [2003], *cert denied* 540 US 1017 [2003]). Professor David Siegel, in NY Prac, § 136, at 232 [4d ed]

instructs that:

> [i]t is the law's policy to allow only an aggrieved person to bring
>
> a lawsuit . . . A want of "standing to sue," in other words, is just
>
> another way of saying that this particular plaintiff is not involved
>
> in a genuine controversy, and a simple syllogism takes us from there
>
> to a "jurisdictional" dismissal: (1) the courts have jurisdiction only
>
> over controversies; (2) a plaintiff found to lack "standing" is not
>
> involved in a controversy; and (3) the courts therefore have no
>
> jurisdiction of the case when such a plaintiff purports to bring it.

"Standing to sue requires an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant's request." (*Caprer v Nussbaum,* 36 AD3d 176, 181 [2d Dept 2006]).  "An analysis of standing begins with a determination of whether the party seeking relief has sustained an injury (*see Society of Plastic Indus. v County of Suffolk,* 77 NY2d 761, 762-773 [1991])." (*Mahoney v Pataki*, 98 NY2d 45, 52 [2002]).  "The Court of Appeals has defined the standard by which standing is measured, explaining that a plaintiff, in order to have standing in a particular dispute, must demonstrate an injury in fact that falls within the relevant zone of interests sought to be protected by law." (*Caprer v Nussbaum* at 183).

A plaintiff, to have standing, "must allege personal injury fairly traceable to the

defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."

(*Allen v Wright*, 468 US 737, 751 [1984]).  If a plaintiff lacks standing to sue, the plaintiff

may not proceed in the action.  (*Stark v Goldberg*, 297 AD2d 203 [1st Dept 2002]).

Plaintiff STRUNK clearly lacks standing to sue because he cannot establish an

injury in fact.  Plaintiff's claim that his November 2008 vote for Senator MCCAIN for

President was his injury is the type of generalized grievance that is foreclosed by the U.S.

Constitution's particularized injury requirement.  "We have consistently held that a

plaintiff raising only a generally available grievance about government-claiming only

harm to his and every citizen's interest in proper application of the Constitution and laws,

and seeking relief that no more directly and tangibly benefits him than it does the public

at large-does not state an Article III case or controversy." (*Lujan v Defenders of Wildlife*,

504 US 555, 572 [1992]).  "Thus, a private citizen who does not show any special rights

or interests in the matter in controversy, other than those common to all taxpayers and

citizens, has no standing to sue." (*Matter of Meehan v County of Westchester*, 3 AD3d

533, 534 [2d Dept 2004]).  (*See Diederich v Rockland County Police Chiefs' Ass'n*, 33

AD3d 653, 654 [2d Dept 2006]; *Concerned Taxpayers of Stony Point v Town of Stony

Point*, 28 AD3d 657, 658 [2d Dept 2006]).  Plaintiff STRUNK's complaint alleges

nothing more than non-justiciable abstract and theoretical claims.  Therefore, the instant

complaint, failing to state any allegation of a particularized injury, is dismissed with

prejudice.  (*Silver v Pataki* at 539; *Mahoney v Pataki* at 52).

## Plaintiff Strunk's failure to state a cause of action

Alternatively, plaintiff STRUNK's complaint must be dismissed for his failure to state a cause of action.  The Court is under no obligation to accept as true plaintiff's complaint, full of legal conclusions and bald assertions cloaked as facts.  (*Ruffino v New York City Tr. Auth.*, 55 AD3d 817, 818 [2d Dept 2008]).  As noted above, in *Morris v Morris* at 451, "bare legal conclusions are not entitled to the benefit of the presumption of truth and are not accorded every favorable inference."  Moreover, plaintiff has failed to plead any facts that fit within any cognizable legal theory.  (*Goldman v Metropolitan Life Ins. Co.*, at 570-571).

Further, plaintiff STRUNK's often rambling and almost incomprehensible complaint fails to satisfy the pleading requirements of CPLR §3013 and CPLR Rule 3014.  CPLR § 3013 requires statements in a pleading to be "sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense."  CPLR Rule 3014 imposes additional pleading requirements that "[e]very pleading shall consist of plain and concise statements in consecutively numbered paragraphs.  Each paragraph shall contain, as far as practicable, a single allegation . . . Separate causes of action or defenses shall be separately stated and numbered and may be

stated regardless of consistency."

In *Sibersky v New York City* (270 AD2d 209 [1d Dept 2000], the Court dismissed an amended petition for its "complete failure to follow the dictates of CPLR 3013 or 3014." The *Sibersky* complaint consisted of "seven pages of single-spaced, unnumbered paragraphs, the import of which is unascertainable," and the Court held that "[p]leadings that are not particular enough to provide the court and the parties with notice of the transaction or occurrences to be proved must be dismissed." Complaints that do not meet the pleading requirements of CPLR § 3013 and CPLR Rule 3014 will be dismissed if "devoid of specific factual allegations" and do not "indicate the material elements of a claim and how they would apply to the case." (*Megna v Becton Dickinson & Co.*, 215 AD2d 542 [2d Dept 1995]). In *Peri v State* (66 AD2d 949 [3d Dept 1979]), *affd* 48 NY2d 734 [1979]), a *pro se* plaintiff's complaint was dismissed for failure to comply with CPLR § 3013. The Court instructed that "[a]t a minimum, a valid complaint must include all material elements of the cause of action."

Plaintiff STRUNK's rambling, forty-five page prolix complaint, with its irrelevant, scatter-shot morass of alleged historical references, virulent anti-Catholic rhetoric and extensive political rant fails to plead his alleged causes of action in a manner that is "sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the

-26-

material elements of each cause of action [CPLR § 3013]" and organized in "plain and concise statements in consecutively numbered paragraphs [CPLR Rule 3014]." "While a refined and attenuated analysis might arguably spell out a shadow of a cause of action, neither the defendants nor the trial court should be subject to the difficulties." (*Kent v Truman*, 9 AD2d 649 [1d Dept 1959]). (*See Geist v Rolls Royce Limited*, 18 AD2d 631 [1d Dept 1962]; *Safer Beef Co., Inc. v Northern Boneless Beef, Inc.*, 15 AD2d 479 [1d Dept 1961]). In a case, such as this one, in which "the amended complaint is prolix, confusing, and difficult to answer" and the complaint contains "a confusing succession of discrete facts, conclusions, comments . . . and considerable other subsidiary evidentiary matter whose relevance to a particular cause of action is frequently obscure . . . Defendants should not be required to answer such a jumble." (*Rapaport v Diamond Dealers, Club, Inc.*, 95 AD2d 743, 744 [1d Dept 1983]). (*See Etu v Cumberland Farms, Inc.*, 148 AD2d 821, 824 [3d Dept 1989]).

### Plaintiff STRUNK fails to plead fraud with particularity

"The elements of fraud are narrowly defined, requiring proof by clear and convincing evidence (*cf., Vermeer Owners v Guterman*, 78 NY2d 1114, 1116 [1991])." (*Gaidon v Guardian Life Ins. Co. of America*, 94 NY2d 330, 349-350 [1999]). Mere conclusory statements alleging the wrong in the pleadings are insufficient. (*McGovern v Nassau County Dept. of Social Services*, 60 AD3d 1016 [2d Dept 2009]; *Sargiss v*

*Magarelli*, 50 AD3d 1117 [2d Dept 2008]; *Dumas v Firoito*, 13 AD3d 332 [2d Dept

2004]; *Sforza v Health Ins. Plan of Greater New York*, 210 AD2d 214, 215 [2d Dept

1994]).

The Appellate Division, Second Department, in *Giurdanella v Giurdanella* (226

AD2d 342, 343 [1996], held that:

> to establish a prima facie case of fraud, the plaintiff must establish
>
> (1) that the defendant made material representations that were false,
>
> (2) that the defendant knew the representations were false and made them
>
> with the intent to deceive the plaintiff, (3) that the plaintiff justifiably
>
> relied on the defendant's representations, and (4) that the plaintiff was
>
> injured as a result of the defendant's representation.

(*See Kerusa Co., LLC v W10Z/515 Real Estate Ltd. Partnership*, 12 NY3d 236 [2009];

*Small v Lorillard Tobacco Co., Inc.* 94 NY2d 43 [1999]; *Channel Master Corp. v

Aluminum Limited Sales, Inc.*, 4 NY2d 403 [1958]; *Smith v Ameriquest Mortg. Corp.*, 60

AD3d 1037 [2d Dept 2009]; *Cash v Titan Financial Services, Inc.* 58 AD3d 785 [2d Dept

2009]).

Plaintiff STRUNK presents in his complaint fraud accusations that can be, at best,

described as bare assertions.  He does not allege that he relied upon any statements of

defendants and fails to allege that he suffered any pecuniary loss as a result of the

statements of any defendant.  Actual pecuniary loss must be alleged in a fraud action.

(*Dress Shirt Sales, Inc. v Hotel Martinique Assoc.*, 12 NY2d 339, 343 [1963]; *Rivera v*

*Wyckoff Heights Hosp.*, 184 AD2d 558, 561 [2d Dept 1992]).  The mere use of the word

"fraud" in a complaint is not sufficient to comply with the specific requirements of CPLR

§ 3016 (b) that fraud be plead with particularity.  Therefore, plaintiff STRUNK fails to

allege the necessary elements for a fraud cause of action.

## This Court lacks jurisdiction

Plaintiff's complaint essentially challenges the qualifications of both President

OBAMA and Senator MCCAIN to hold the office of President.  This is a non-justiciable

political question.  Thus, it requires the dismissal of the instant complaint.  "The

"nonjusticiability of a political question is primarily a function of the separation of

powers."  (*Baker v Carr*, 369 US 186, 210 [1962]).  Under separation of powers, "[t]he

constitutional power of Congress to regulate federal elections is well established."

(*Buckley v Valeo*, 424 US 1, 13 [1976]).  (*See Oregon v Mitchell*, 400 US 112 [1970];

*Burroughs v United States*, 290 US 534 [1934]).  Under New York law, "[t]his judicial

deference to a coordinate, coequal branch of government includes one issue of

justiciability generally denominated as the 'political question' doctrine."  (*Matter of New*

*York State Inspection, Security & Law Enforcement Employees, District Council 82,*

*AFSCME, AFL-CIO v Cuomo*, 64 NY2d 233, 239 [1984]).

The framework for the Electoral College and its voting procedures for President

and Vice President is found in Article II, Section 1 of the U.S. Constitution. This is

fleshed out in 3 USC § 1 *et seq.*, which details the procedures for Presidential elections.

More specifically, the counting of electoral votes and the process for objecting for the

2009 Presidential election is found in 3 USC § 15, as modified by Pub L 110-430, § 2,

122 US Stat 4846. This required the meeting of the joint session of Congress to count the

2008 electoral votes to be held on January 8, 2009. On that day, after the counting of the

Electoral College votes, then-Vice President Dick Cheney made the requisite declaration

of the election of President OBAMA and Vice President BIDEN. (155 Cong Rec H76

[Jan. 8 2009]). No objections were made by members of the Senate and House of

Representatives, which would have resolved these objections if made. This is the

exclusive means to resolve objections to the electors' selection of a President or a Vice

President, including objections raised by plaintiff STRUNK. Federal courts have no role

in this process. Plainly, state courts have no role.

Thus, this Court lacks subject matter jurisdiction to determine the eligibility and

qualifications of President OBAMA to be President, as well as the same for Senator

MCCAIN or ROGER CALERO. If a state court were to involve itself in the eligibility of

a candidate to hold the office of President, a determination reserved for the Electoral

College and Congress, it may involve itself in national political matters for which it is

institutionally ill-suited and interfere with the constitutional authority of the Electoral

College and Congress. Accordingly, the political question doctrine instructs this Court

and other courts to refrain from superseding the judgments of the nation's voters and those federal government entities the Constitution designates as the proper forums to determine the eligibility of presidential candidates.

Justice Robert Jackson, concurring in *Youngstown Sheet & Tube Co. v Sawyer* (343 US 579, 635 1952], in discussing separation of powers stated that "the Constitution diffuses power the better to secure liberty." Justice Thurgood Marshall, in his majority opinion in *U.S. v Munoz-Flores* (495 US 385, 394 [1990]), on the subject of separation of powers, quoted from Justice Antonin Scalia's dissent in *Morrison v Olson*, 487 US 654, 697 [1988], in which Justice Scalia observed that "[t]he Framers of the Federal Constitution . . . viewed the principle of separation of powers as the absolutely central guarantee of a just Government." This Court will not disrupt the separation of powers as enunciated in the U.S. Constitution and articulated by Justices Jackson, Marshall and Scalia.

Further, plaintiff STRUNK has failed to properly serve defendants, including President OBAMA and Senator MCCAIN, pursuant to the CPLR. With numerous other grounds present for dismissing the instant action, the Court will not elaborate upon how plaintiff STRUNK failed to obtain personal jurisdiction over defendants.

### Plaintiff STRUNK is precluded by collateral estoppel

Collateral estoppel or "issue preclusion," as observed by Prof. Siegel, in NY Prac

§443, at 748-749, [4th ed], "scans the first action and takes note of each issue decided in it. Then if the second action, although based on a different cause of action, attempts to reintroduce the same issue, collateral estoppel intervenes to preclude its relitigation and to bind the party, against whom the doctrine is being invoked, to the way the issue was decided in the first action." In *Ryan v New York Telephone Company* (62 NY2d 494, 500 [1984]), the Court of Appeals, held that "[t]he doctrine of collateral estoppel, a narrower species of *res judicata*, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or ***those in privity***, whether or not the tribunals or causes of action are the same [***Emphasis added***]." Two prerequisites must be met before collateral estoppel can be raised. The Court of Appeals, in *Buechel v Bain* (97 NY2d 295 [2001], *cert denied* 535 US 1096 [2002]), instructed at 303-304, that:

> There must be an identity of issue which has necessarily been decided
>
> in the prior action and is decisive of the present action, and there
>
> must have been a full and fair opportunity to contest the decision now
>
> said to be controlling (*see, Gilberg v Barnieri*, 53 NY2d 285, 291
>
> [1981]). The litigant seeking the benefit of collateral estoppel must
>
> demonstrate that the decisive issue was necessarily ***decided in the prior***

*action against a party, or one in privity with a party (see, id.).* The

party to be precluded from relitigating the issue bears the burden of

demonstrating the absence of a full and fair opportunity to contest

the prior determination. [*Emphasis added*]

(See *D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664 [1990]; *Gramatan*

*Home Investors Corp. v Lopez*, 46 NY2d 481, 485 *supra*; *Westchester County Correction*

*Officers Benevolent Ass'n, Inc. v County of Westchester*, 65 AD3d 1226, 1227 [2d Dept

2009]; *Franklin Dev. Co. Inc. v Atlantic Mut. Ins. Co.*, 60 AD3d 897, 899 [2d Dept

2009]; *Luscher ex. rel Luscher v Arrua*, 21 AD3d 1005 [2d Dept 2005]).

Plaintiff STRUNK litigated many of the issues in the instant action in US District

Court, but also in the previously cited *Strunk v Paterson, et al*, Index No. 29642/08,

before Justice Schmidt.  He acknowledged this, in ¶ 2 of the instant complaint, by stating:

That this complaint is fairly traceable to the events and actions

leading up to the Party primaries during the 2008 election cycle for the

ballot access of the Presidential slates at the November 4, 2008 General

Election as complained of in the related election law case, Strunk v

Paterson, et al. NYS Supreme Court in the County of Kings with

Index No. 29642-08 before the Honorable David I Schmidt of Part 1

-33-

as an election law matter.  [sic]

As mentioned above, Justice Schmidt disposed of *Strunk v Paterson, et al*, Index No.

29642/08, on March 14, 2011, by denying all of plaintiff's motions and noting that the

statute of limitations expired to join necessary parties President OBAMA and Senator

MCCAIN.  Therefore, collateral estoppel precludes plaintiff STRUNK from pursuing the

instant action.

### Denial of plaintiff's cross-motion to consolidate

Plantiff's cross-motion to consolidate this action with *Strunk v Paterson, et al*,

Index No. 29642/08, and transfer the instant action to Justice Schmidt is denied.  Justice

Schmidt, on November 19, 2008, in *Strunk v Paterson, et al*, declined to sign plaintiff

STRUNK's order to show cause to enjoin Governor Paterson from convening  New

York's December 2008 meeting of the Electoral College, because "plaintiff is collaterally

estopped."  This refers to the Eastern District action dismissed by Judge Ross, in which

she found the complaint frivolous.

After a hiatus of several years, plaintiff STRUNK, by order to show cause,

attempted to amend his complaint.  Justice Schmidt, in his January 11, 2011 short-form

order, denied this motion in its entirety.

Then, plaintiff STRUNK moved to reargue.  On March 14, 2011, Justice Schmidt,

in a short-form order, denied reargument because plaintiff "failed to join a necessary

-34-

party President OBAMA and Senator MCCAIN and the statute of limitations to do so expired." Finally, on November 9, 2011, H. William Van Allen, an ally of plaintiff STRUNK, moved to intervene as a plaintiff to challenge President OBAMA's placement on the upcoming 2012 ballot.  In his November 22, 2011 short-form order, Justice Schmidt denied Mr. Van Allen's intervention "in all respects."  Further, Justice Schmidt held "[t]his is an action that was commenced in 2008 and has remained inactive for several years and it would be improper to allow plaintiff to raise new matters before the Court after the extended period of inactivity."

### Plaintiff's frivolous conduct

"A complaint containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis" and "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." (*Neitzke v Williams*, 490 US 319, 325 [1989]).  Plaintiff STRUNK, as cited above, alleges numerous fanciful, fantastic, delusional, irrational and baseless claims about defendants.  The U.S. Supreme Court, citing *Neitzke*, held in *Denton v Hernandez* (504 US 25, 32-33 [1992]), that:

A court may dismiss a claim as factually frivolous only if the facts

alleged are "clearly baseless," 490 US at 127, 109 S Ct at 1833, a

category encompassing allegations that are "fanciful," *id.*, at 325,

109 S Ct at 1831, "fantastic," *id.*, at 328, 109 S Ct at 1833, and

"delusional," *ibid.* As those words suggest, a finding of factual

frivolousness is appropriate when the facts alleged rise to the level

of the irrational or the wholly incredible.

In *Denton*, the plaintiff alleged that he had been repeatedly raped by a number of

inmates at several different prisons, all using the same *modus operandi.* The Court

concluded that these allegations were "wholly fanciful" and dismissed the claim as

frivolous as a result. In *Shoemaker v U.S. Department of Justice* (164 F 3d 619, 619 [2d

Cir 1998]), plaintiff alleged that the government and television stations conspired to: "(1)

broadcast information about his feces on national television; and (2) file and publicized

false charges of child abuse against him." The Court, citing *Neitzke* and *Denton*,

dismissed the action as frivolous because plaintiff's "factual claims are irrational and

incredible." Another case applying the frivolous standards of *Neitzke* and *Denton* is *Perri*

*v Bloomberg* (2008 WL 2944642 [US Dist Ct, ED NY 2008]), in which plaintiff alleged

that a secret unit of the NYPD was attempting to kill him and his cats. The Court

dismissed the case, finding that plaintiff's complaint has "a litany of sensational

allegations pertaining not only to the NYPD, but also to various arms of government, both

state and federal. Accordingly, Perri has not established that he is entitled to a

preliminary injunction, because his allegations of irreparable harm are unsupported and

bizarre."

Plaintiff STRUNK'S complaint, as well as his opposition to defendants' motions to dismiss, alleges that the correct interpretation of the natural born citizen clause of the U.S. Constitution requires a natural born citizen to have been born on United States soil and have two United States born parents. Despite plaintiff's assertions, Article II, Section 1, Clause 5 does not state this. No legal authority has ever stated that the natural born citizen clause means what plaintiff STRUNK claims it states. "The phrase 'natural born Citizen' is not defined in the Constitution, *see Minor v Happersett*, 88 US 162, 167 [1875]), nor does it appear anywhere else in the document, *see* Charles Gordon, *Who Can Be President of the United States: An Unresolved Enigma*, 28 Md. L. Rev. 1, 5 (1968)." (*Hollander v McCain* at 65). Plaintiff STRUNK cannot wish into existence an interpretation that he chooses for the natural born citizen clause. There is no arguable legal basis for the proposition that both parents of the President must have been born on U.S. soil. This assertion is as frivolous as the multitude of alleged allegations outlined above.

Moreover, President OBAMA is the sixth U. S. President to have had one or both of his parents not born on U.S. soil. Plaintiff STRUNK and his fellow "birthers" might not realize that: both parents of President Andrew Jackson were born in what is now Northern Ireland; President James Buchanan's father was born in County Donegal, Ireland; President Chester A. Arthur's father was born in what is now Northern Ireland;

President Woodrow Wilson's mother was born in Carlisle, England; and, President Herbert Hoover's mother was born in Norwich, Ontario, Canada.

Therefore, the prosecution of the instant action by plaintiff STRUNK, with its fanciful, fantastic, delusional, irrational and baseless claims about defendants appears is frivolous.  22 NYCRR § 130-1.1 (a) states that "the Court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct as defined in this Part, which shall be payable as provided in section 130-1.3 of this Subpart."  22 NYCRR § 130-1.1 (c) states:

> conduct is frivolous if:
>
> (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
>
> (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
>
> (3) it asserts material factual statements that are false.

Conduct is frivolous and can be sanctioned, pursuant to 22 NYCRR § 130-1.1 (c),  if "it is completely without merit . . . and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law." (*Gordon v Marrone,* 202 AD2d 104, 110 [2d Dept 1994] *lv denied* 84 NY 2d 813 [1995]). (*See RKO Properties, Inc. v Boymelgreen*, 77 AD3d 721 [2d Dept 2010]; *Finkelman v SBRE, LLC*, 71 AD3d 1081 [2d

Dept 2010]; *Glenn v Annunziata*, 53 AD3d 565, [2d Dept 2008]; *Miller v Dugan*, 27

AD3d 429 [2d Dept 2006]; *Greene v Doral Conference Center Associates,* 18 AD3d 429

[2d Dept 2005]; *Ofman v Campos*, 12 AD3d 581 [2d Dept 2004]).  It is clear that plaintiff

STRUNK's complaint: "is completely without merit in law;" "is undertaken primarily

. . . to harass" defendants; and, "asserts material factual statements that are false."

Several years before the drafting and implementation of the Part 130 Rules for

costs and sanctions, the Court of Appeals (*A.G. Ship Maintenance Corp. v Lezak*, 69

NY2d 1, 6 [1986]) observed that "frivolous litigation is so serious a problem affecting the

proper administration of justice, the courts may proscribe such conduct and impose

sanctions in this exercise of their rule-making powers, in the absence of legislation to the

contrary (*see* NY Const, art VI, § 30, Judiciary Law § 211 [1] [b] )."

Part 130 Rules were subsequently created, effective January 1, 1989, to give the

courts an additional remedy to deal with frivolous conduct.  In *Levy v Carol Management*

*Corporation* (260 AD2d 27, 33 [1st Dept 1999]) the Court stated that in determining if

sanctions are appropriate the Court must look at the broad pattern of conduct by the

offending attorneys or parties.  Further, "22 NYCRR 130-1.1 allows us to exercise our

discretion to impose costs and sanctions on an errant party." (*Levy* at 33).  Moreover,

"[s]anctions are retributive, in that they punish past conduct.  They also are goal oriented,

in that they are useful in deterring future frivolous conduct not only by the particular

parties, but also by the Bar at large." (*Levy* at 34).

-39-

The Court, in *Kernisan, M.D. v Taylor* (171 AD2d 869 [2d Dept 1991]), noted that the intent of the Part 130 Rules "is to ***prevent the waste of judicial resources*** and to deter vexatious litigation and dilatory or malicious litigation tactics (*cf. Minister, Elders & Deacons of Refm. Prot. Church of City of New York v 198 Broadway*, 76 NY2d 411; *see Steiner v Bonhamer*, 146 Misc 2d 10) [***Emphasis added***]." To adjudicate the instant action, with the complaint replete with fanciful, fantastic, delusional, irrational and baseless allegations about defendants, combined with plaintiff STRUNK's lack of standing, the barring of this action by collateral estoppel and the Court lacking personal jurisdiction and subject matter jurisdiction over many of the defendants, is "a waste of judicial resources." This conduct, as noted in *Levy*, must be deterred. In *Weinstock v Weinstock* (253 AD2d 873 [2d Dept 1998]) the Court ordered the maximum sanction of $10,000.00 for an attorney who pursued an appeal "completely without merit," and holding, at 874, that "[w]e therefore award the maximum authorized amount as a sanction for this conduct (*see,* 22 NYCRR 130-1.1) calling to mind that ***frivolous litigation causes a substantial waste of judicial resources*** to the detriment of those litigants who come to the Court with real grievances [***Emphasis added***]." Citing *Weinstock,* the Appellate Division, Second Department, in *Bernadette Panzella, P.C. v De Santis* (36 AD3d 734 [2d Dept 2007]) affirmed a Supreme Court, Richmond County $2,500.00 sanction, at 736, as "appropriate in view of the plaintiff's ***waste of judicial resources*** [***Emphasis added***]."

In *Navin v Mosquera* (30 AD3d 883, 883 [3d Dept 2006]) the Court instructed that

-40-

when considering if specific conduct is sanctionable as frivolous, "courts are required to examine 'whether or not the conduct was continued when its lack of legal or factual basis was apparent [or] should have been apparent' (22 NYCRR 130-1.1 [c])."

Therefore, the Court will examine the conduct of plaintiff STRUNK in a hearing, pursuant to 22 NYCRR § 130-1.1, to determine if plaintiff STRUNK engaged in frivolous conduct, and to allow plaintiff STRUNK a reasonable opportunity to be heard. Further, at the hearing, an opportunity will be given to counsel for defendants to present detailed records of costs incurred by their clients in the instant action.

### Plaintiff precluded from relitigation of the same claims

.The Court is concerned that plaintiff STRUNK continues to use the scarce resources of the New York State Unified Court System to fruitlessly pursue the same claims. He is no stranger to litigation in Supreme Court, Kings County, Civil Term. Further, plaintiff STRUNK has had several bites of the same apple in U.S. District Court, which resulted in findings of his engagement in frivolous conduct with, as stated by Judge Ross, complaints that "have contained allegations that have risen to the irrational." The Court should not have to expend resources on the next action by Mr. STRUNK that will be a new variation on the same theme of defendants' alleged misdeeds and misconduct. The continued use of the New York State Unified Court System for the personal pursuit by plaintiff STRUNK of irrational complaints against defendants must cease.

Our courts have an interest in preventing the waste of judicial resources by a party

-41-

who knows that his or lawsuit has no legitimate basis in law or fact and continues to attempt to relitigate resolved claims and issues.  (*Martin-Trigona v Capital Cities/ABC, Inc.*, 145 Misc 2d 405 [Sup Ct, New York County 1989]).  The Court, in *Sassower v Signorelli* (99 AD2d 358, 359 [2d Dept 1984]), noted that "public policy mandates free access to the courts . . . and, ordinarily, the doctrine of former adjudication will serve as an adequate remedy against repetitious suits."  Then, the *Sassower* Court observed, in the next paragraph, that: "[n]onetheless, a litigious plaintiff pressing a frivolous claim can be extremely costly to the defendant and can waste an inordinate amount of court time, time that this court and the trial courts can ill afford to lose (see *Harrelson v United States*, 613 F2d 114)."

   *Pro se* litigants whom abuse judicial process have had their access to the courts limited.  In *Spremo v Babchik* (155 Misc2d 796 (Sup Ct, Queens County 1996]), the Court, in enjoining a *pro se* litigant from instituting any further actions and proceedings in any court in the New York State Unified Court System, citing *Sassower* and *Kane v City of New York*, 468 F Supp 586 [SD NY 1979], *affd* 614 F2d 1288 [2d Cir 1979]).  The *Kane* Court, at 592, held:

   The fact that one appears pro se is not a license to abuse the

   process of the Court and to use it without restraint as a weapon of

   harassment and libelous bombardment.  The injunction herein ordered

-42-

is fully warranted to put an end to such activity . . . Commencement of

action upon action based on the same facts dressed in different garb,

after thrice being rejected on the merits and having been repeatedly

warned that the claims were barred by res judicata, can only be explained

as malicious conduct.

In *Muka v New York State Bar Association* (120 Misc 2d 897 [Sup Ct, Tompkins

County 1983]), a *pro se* plaintiff commenced a fourth unsuccessful lawsuit against the

State Bar Association upon various conspiracy theories.  The Court in dismissing the

action, based upon *res judicata,* observed, at 903, that "all litigants have a right to

impartial and considered justice.  Insofar as any litigant unnecessarily consumes

inordinate amounts of judicial time and energy, he or she deprives other litigants of their

proper share of these resources. A balance must be kept."

Therefore, plaintiff STRUNK, with his history of abusing the civil justice system,

by bringing *pro se* actions devoid of merit against the same defendants, is precluded from

relitigating the same claims and issues which waste court resources and is enjoined from

bringing any future actions in the New York State Unified Court System against: the

NEW YORK STATE BOARD OF ELECTIONS, JAMES A. WALSH/ Co-Chair,

DOUGLAS A. KELLNER/Co-Chair, EVELYN J. AQUILA/Commissioner, GREGORY

P. PETERSON/Commissioner, Deputy Director TODD D. VALENTINE, and Deputy

Director STANLY ZALEN; ANDREW CUOMO, ERIC SCHNEIDERMAN, THOMAS

P. DINAPOLI and RUTH NOEMI COLON, in their Official and individual capacity;

Father JOSEPH A. O'HARE, S.J.; Father JOSEPH P. PARKES, S.J.; FREDERICK A. O.

SCHWARZ, JR.; PETER G. PETERSEN; ZBIGNIEW KAIMIERZ BRZEZINSKI;

MARK BRZEZINSKI; JOSEPH R. BIDEN, JR.; BARACK H. OBAMA, NANCY

PELOSI; the DEOMCRATIC STATE COMMITTEE OF THE STATE OF NEW YORK;

the STATE COMMITTEE OF THE WORKING FAMILIES PARTY OF NEW YORK

STATE; ROGER CALERO; the  SOCIALIST WORKERS PARTY; IAN J.

BRZEZINSKI; JOHN SIDNEY MCCAIN III; JOHN A. BOEHNER; the NEW YORK

STATE REPUBLICAN STATE COMMITTEE; the NEW YORK STATE COMMITTEE

OF THE INDEPENDENCE PARTY; the STATE COMMITTEE OF THE

CONSERVATIVE PARTY OF NEW YORK STATE; PENNY S. PRITZKER;

GEORGE SOROS; *OBAMA FOR AMERICA*; *OBAMA VICTORY FUND*; *MCCAIN*

*VICTORY 2008*; and *MCCAIN-PALIN VICTORY 2008*; without the prior approval of the

appropriate Administrative Justice or Judge.  The Court instructed, in *Vogelgesang v*

*Vogelgesang* (71 AD3d 1132, 1134 [2d Dept 2010]), that:

> The Supreme Court providently exercised its discretion in enjoining
>
> the appellant from filing any further actions or motions in the . . . action
>
> without prior written approval.  Public policy generally mandates free

access to the courts (*see Sassower v Signorelli,* 99 AD2d 358, 359

[1984]).  However, a party may forfeit that right if he or she abuses the

judicial process by engaging in meritless litigation motivated by spite or

ill will (*see Duffy v Holt-Harris,* 260 AD2d 595 [2d Dept 1999]; *Shreve v*

*Shreve,* 229 AD2d 1005 [2d Dept 1996]).  There is ample basis in

this record to support the Supreme Court's determination to prevent

the appellant from engaging in further vexatious litigation.

(*See Scholar v Timinsky,* 87 AD3d 577 [2d Dept 2011]; *Dimeryv Ulster Sav. Bank,* 82

AD3d 1034 [2d Dept 2011]; *Capogrosso v Kansas,* 60 AD3d 522 [1d Dept 2009];

*Simpson v Ptaszynska,* 41 AD3d 607 [2d Dept 2007]; *Pignataro v Davis,* 8 AD3d 487 [2d

Dept 2004]; *Cangro v Cangro,* 288 AD2d 417 [2d Dept 2001]; *Mancini v Mancini,* 269

AD2d 366 [2d Dept 2000]; *Braten v Finkelstein,* 235 AD2d 513 [2d Dept 1997]).

## Conclusion

Accordingly, it is

ORDERED, that the motion by counsel for defendants MCCAIN VICTORY 2008,

MCCAIN-PALIN VICTORY 2008 and Senator JOHN MCCAIN, to admit Todd E.

Phillips, Esq., a member in good standing of both the California and District of Columbia

bars, for the instant action *pro hace vice* is granted; and it is further

ORDERED, that the motions to dismiss plaintiff CHRISTOPHER-EARL

STRUNK's instant complaint by: defendants President BARACK OBAMA, Vice

President JOSEPH BIDEN, OBAMA FOR AMERICA and the OBAMA VICTORY

FUND; defendants MCCAIN VICTORY 2008, MCCAIN-PALIN VICTORY 2008 and

Senator JOHN MCCAIN; defendants MARK BRZEZINSKI and IAN BRZEZINSKI;

defendant Representative NANCY PELOSI; defendant GEORGE SOROS; defendants

THE SOCIALIST WORKERS PARTY and ROGER CALERO; defendant Speaker

JOHN BOEHNER; defendant ZBIGNIEW BRZEZINSKI; defendants Father JOSEPH A.

O'HARE, S.J., Father JOSEPH P. PARKES, S.J. and FREDERICK A. O. SCHWARZ,

JR.; defendant PENNY PRITZKER; and defendant PETER G. PETERSEN; are all

granted, with the instant complaint dismissed with prejudice; and it is further

ORDERED, that the cross-motion of plaintiff CHRISTOPHER EARL-STRUNK

to consolidate the instant action with *Strunk v Paterson, et al*, Index No. 29642/08, before

Justice David Schmidt, is denied; and it is further

ORDERED, that  plaintiff CHRISTOPHER EARL-STRUNK is hereby enjoined

from commencing any future actions in the New York State Unified Court System

against: the NEW YORK STATE BOARD OF ELECTIONS, JAMES A.  WALSH/ Co-

Chair, DOUGLAS A. KELLNER/Co-Chair, EVELYN J. AQUILA/Commissioner,

GREGORY P. PETERSON/Commissioner, Deputy Director TODD D. VALENTINE,

and Deputy Director STANLY ZALEN; ANDREW CUOMO, ERIC SCHNEIDERMAN,

THOMAS P. DINAPOLI and RUTH NOEMI COLON, in their Official and individual

capacity; Father JOSEPH A. O'HARE, S.J.; Father JOSEPH P. PARKES, S.J.;

FREDERICK A. O. SCHWARZ, JR.; PETER G. PETERSEN; ZBIGNIEW KAIMIERZ

BRZEZINSKI; MARK BRZEZINSKI; JOSEPH R. BIDEN, JR.; BARACK H. OBAMA,

NANCY PELOSI; the DEOMCRATIC STATE COMMITTEE OF THE STATE OF

NEW YORK; the STATE COMMITTEE OF THE WORKING FAMILIES PARTY OF

NEW YORK STATE; ROGER CALERO; the  SOCIALIST WORKERS PARTY; IAN J.

BRZEZINSKI; JOHN SIDNEY MCCAIN III; JOHN A. BOEHNER; the NEW YORK

STATE REPUBLICAN STATE COMMITTEE; the NEW YORK STATE COMMITTEE

OF THE INDEPENDENCE PARTY; the STATE COMMITTEE OF THE

CONSERVATIVE PARTY OF NEW YORK STATE; PENNY S. PRITZKER;

GEORGE SOROS; *OBAMA FOR AMERICA*; *OBAMA VICTORY FUND*; *MCCAIN*

*VICTORY 2008*; and *MCCAIN-PALIN VICTORY 2008*; without prior approval of the

appropriate Administrative Justice or Judge; and it is further

ORDERED, that any violation of the above injunction by CHRISTOPHER-EARL

STRUNK may subject CHRISTOPHER-EARL STRUNK to costs, sanctions and

contempt proceedings; and it is further

ORDERED, that it appearing that plaintiff CHRISTOPHER EARL-STRUNK,

engaged in "frivolous conduct," as defined in the Rules of the Chief Administrator, 22

NYCRR § 130-1.1 (c), and that pursuant to the Rules of the Chief Administrator, 22

NYCRR § 130.1.1 (d), "[a]n award of costs or the imposition of sanctions may be made

. . . upon the court's own initiative, after a reasonable opportunity to be heard," this Court will conduct a hearing affording plaintiff CHRISTOPHER EARL-STRUNK "a reasonable opportunity to be heard" and counsel for all defendants may present to the Court detailed records of costs incurred by their clients in the instant action, before me in Part 27, on Monday, May 7, 2012, at 2:30 P.M., in Room 479, 360 Adams Street, Brooklyn, NY 11201; and it is further

ORDERED, that Ronald D. Bratt, Esq., my Principal Law Clerk, is directed to serve this order by first-class mail, upon CHRISTOPHER EARL-STRUNK, 593 Vanderbilt Avenue, # 281, Brooklyn, New York, 11238 and upon counsel for all defendants in this action.

This constitutes the Decision and Order of the Court.

E  N  T  E  R

HON. ARTHUR M. SCHACK
J. S. C.

HON. ARTHUR M. SCHACK J.S.C

# TAB H



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CHARLES TISDALE,

     Plaintiff,

v.            Civil Action No. 3:12-cv-00036-JAG

HONORABLE BARACK H. OBAMA, II, *et al*,

     Defendants.

### <u>ORDER</u>

  This matter is before the Court on the Motion to Proceed in Forma Pauperis and Financial Affidavit filed by the plaintiff, Charles Tisdale, on January 17, 2012. Upon due consideration, the Court finds that Mr. Tisdale is unable to pay the costs of proceeding in the instant case. Accordingly, the Court grants Mr. Tisdale's Motion to Proceed in Forma Pauperis. For the following reasons, however, the Court DISMISSES the Complaint with prejudice.

  In proceedings in Forma Pauperis, the Court may dismiss the case at any time if the court finds that the action fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006).

  When interpreting a *pro se* complaint, the Court must afford the complaint a liberal construction. *See Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). The Court need not, however, attempt "to discern the unexpressed intent of the plaintiff." *Id.* The Fourth Circuit has stated: "[T]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts

be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

Mr. Tisdale seeks an injunction enjoining the Virginia State Board of Elections from certifying any candidate who lacks standing as a "natural born citizen" from appearing on the ballot for the upcoming presidential general election on November 6, 2012. Specifically, Mr. Tisdale cites Barack Obama, Mitt Romney, and Ron Paul as ineligible to appear on the ballot, on the grounds that each had at least one parent who was not a citizen of the United States.

The Court rules that the Complaint does not state a claim upon which relief may be granted. The eligibility requirements to be President of the United States are such that the individual must be a "natural born citizen" of the United States and at least thirty-five years of age. U.S. Const. art. II, § 1. It is well settled that those born in the United States are considered natural born citizens. *See, e.g., United States v. Ark*, 169 U.S. 649, 702 (1898) ("Every person born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States."); *Perkis v. Elg*, 99 F.2d 408, 409 (1938). Moreover, "those born 'in the United States, and subject to the jurisdiction thereof,' . . . have been considered American citizens under American law in effect since the time of the founding . . . and thus eligible for the presidency." *Hollander v. McCain*, 566 F. Supp. 2d 63, 66 (D.N.H 2008). Thus, Mr. Tisdale's contention that President Obama, Governor Romney, and Congressman Paul are not eligible to be President due to their nationalities is without merit.

Accordingly, the Court dismisses the Complaint for failure to state a claim. This dismissal is with prejudice, as the Court finds that allowing leave to refile would yield the same result, given the underlying premise of Mr. Tisdale's claim.

2

Mr. Tisdale may appeal the decision of the Court. Should he wish to appeal, written notice of appeal must be filed within thirty (30) days of the date of entry hereof. Failure to file a timely notice of appeal may result in the loss of the right to appeal.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record and Mr. Tisdale.

/s/ _Gaṇṭ_

John A. Gibney, Jr.
United States District Judge

Date: January 20, 2012
Richmond, VA