**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**DR. ORLY TAITZ, ESQ., ET AL.**                                        **PLAINTIFFS**

**V.**                                        **CIVIL ACTION NO. 3:12cv280-HTW-LRA**

**DEMOCRAT PARTY OF MISSISSIPPI, ET AL.**                      **DEFENDANTS**

---

**MEMORANDUM IN SUPPORT OF THE**
**MOTION TO DISMISS FOR LACK OF IN PERSONAM JURISDICTION OR IN THE**
**ALTERNATIVE FOR FAILURE TO STATE A CLAIM FOR RELIEF AGAINST**
**DEFENDANTS DR. ALVIN ONAKA AND LORETTA FUDDY AND INSUFFICIENT**
**PROCESS AND SERVICE OF PROCESS**

---

COME NOW the Defendants, Dr. Alvin Onaka (hereinafter "Onaka") and Loretta Fuddy (hereinafter "Fuddy") (hereinafter collectively "Defendants"), by and through their counsel of record, Dukes, Dukes, Keating & Faneca, P.A., and pursuant to Rules 12(b)(2), 12(b)(4), 12(b)(5), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure, file this their Memorandum in Support of their Motion to Dismiss for Lack of In Personam Jurisdiction or in the Alternative for Failure to State a Claim for Relief and for Insufficient Process and Service of Process, and without waiving the right to plead and be heard on any other defenses would further show unto this Honorable Court the following:

## I.   RELEVANT FACTUAL AND PROCEDURAL HISTORY

This action was commenced by the filing of a Petition for Injunctive and Declaratory Judgment on or about February 19, 2012, in the Circuit Court of Hinds County, Mississippi as civil action number 251-12-107CIV, captioned "DR. ORLY TAITZ, ESQ V. DEMOCRAT PARTY OF MISSISSIPPI, SECRETARY OF STATE OF MISSISSIPPI[.]"

On or about April 19, 2012, Dr. Orly Taitz, Esq. filed a First Amended Complaint asserting a statutory general election challenge under Miss. Code Ann. § 23-15-963, adding several new plaintiffs (hereinafter collectively "Plaintiffs"), several new defendants (including Onaka and Fuddy), and asserting a cause of action under the Racketeer Influenced and Corrupt Organization Act (hereinafter "RICO") against the Mississippi Democratic Party and the new defendants.  This matter was lawfully removed to the United States District Court of the Southern District of Mississippi, Jackson Division, on April 24, 2012, as this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiffs never successfully effectuated service of the Summons and First Amended Complaint upon Onaka and Fuddy despite their allegation that personal service was performed on or about October 8, 2012.[1]  [PACER Doc. 44].

## II.    PERSONAL JURISDICTION DOES NOT EXIST AS TO THE DEFENDANTS

In this case the Plaintiffs failed to even allege facts giving rise to personal jurisdiction.  In fact, as both the United States Supreme Court and the Fifth Circuit Court of Appeals have explained, the Plaintiffs "apparently did not recognize the difference between in personam jurisdiction and subject matter jurisdiction, or the fact that both types of jurisdiction are required."  *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 918 (5th Cir. 1987) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).   For purposes of clarity and completeness, however, these Defendants offer the following discussion in support of their Motion to Dismiss for Lack of In Personam Jurisdiction and Failure to State a Claim for Relief against them

---

[1] *See* Section VII, *supra.*

**A. This Court does not have Personal Jurisdiction over Defendants Onaka and Fuddy based on the Jurisdictional Provisions of RICO.**

Although the Plaintiffs have not alleged that the jurisdictional provisions of RICO authorize this Court to assume personal jurisdiction over Onaka and Fuddy, it is indelibly clear that the provisions of RICO do not provide for personal jurisdiction over them.

Under RICO, a civil action "against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Contrary to some courts, the Fifth Circuit and the language of the statute itself simply do not support the contention that § 1965(a) provides for nationwide service of process. Indeed, the Fifth Circuit and various other district courts have specifically held that the language of § 1965(a) "requires that a defendant be conducting business in the forum." *Caldwell*, 811 F.2d at 918 (citing *Miller Brewing Co. v. Landau*, 616 F. Supp. 1285, 1288 (D.C. Wis. 1985); *Donovan v. Mazzola*, 606 F. Supp. 119 (D.C. Cal. 1984); *Van Schaick v. Church of Scientology of Cal., Inc.*, 535 F. Supp. 1125, 1133 (D. Mass. 1982)).

The undisputed facts in this case establish that the Defendants did not conduct business in Mississippi, and have not had any dealings with Mississippi. *See* Exs. "A" and "B." Furthermore, neither of the Defendants has ever resided in Mississippi, neither was found or served in Mississippi, neither has agents in Mississippi, nor have either conducted any business in Mississippi. As such, the requirements of § 1965(a) are not satisfied and any action brought against Onaka and Fuddy in Mississippi based on RICO is improper.

**B. This Court does not have Personal Jurisdiction over the Defendants based on the Plaintiffs' Remaining Claims.**

As it relates to the Plaintiffs' claims that neither involve a federal statute nor involve a federal statute which provides for service of process, this Court may "exercise personal

jurisdiction over a non-resident defendant (1) as allowed under [Mississippi's] long-arm statute; **and** (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009) (emphasis added); *see also Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773, 775 (S.D. Miss. 2001) ("[I]n federal question cases where the federal statute in question does not provide for service of process, 'a federal court, even in a federal question case, can use a state long-arm statute only to reach those parties whom a court of the state could also reach under it.'") (quoting *Burstein v. State Bar of Cal.*, 693 F.2d 511, 514 (5th Cir. 1982)).  Therefore, even if a non-resident defendant falls within Mississippi's long-arm statute, the exercise of personal jurisdiction over that defendant must not be inconsistent with due process.  *See Wilson v. Highpointe Hospitality, Inc.*, 62 So. 3d 999, 1001 (Miss. Ct. App. 2011); *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

Although it is difficult to fully ascertain the nature of the allegations against the Defendants in the First Amended Complaint, it appears that the majority of Plaintiffs' claims arise under RICO.  For example, Plaintiffs' allege that: (1) Fuddy, Director of Health for the State of Hawaii's Department of Health, "aided and abetted Obama in committing elections fraud by covering up the fact that Obama is using a forged birth certificate[;]" and (2) Onaka, Chief of the Office of Health Status Monitoring in the State of Hawaii's Department of Health, "aided and abetted Obama and was complicit in the cover up of the fact that Obama is using a forged birth certificate."  First Amended Complaint at 32.  Plaintiffs further allege that Fuddy "obstructed justice in order to aid and abet Obama in his use of a forged birth certificate."  *Id.* at 39.  The fraud claims mentioned above are styled as RICO claims, while the obstruction of justice claim against Fuddy is not.  Nevertheless, and because this Court still must have personal jurisdiction over the Defendants to entertain Plaintiffs' RICO claims, an analysis of the

Mississippi long-arm statute and the requirements of Due Process is necessary.  As will be clearly shown below, the exercise of personal jurisdiction over the Defendants would violate of both Mississippi's long-arm statute and the Due Process Clauses of the United States Constitution and Mississippi Constitution because it would offend traditional notions of fair play and substantial justice, and the Plaintiffs have not borne their burden of establishing personal jurisdiction by presenting *prima facie* evidence.  *Mason v. Cassady*, No. 1:09cv156-LG-JMR, 2011 U.S. Dist. LEXIS 55025 *3 (S.D. Miss. May 17, 2011) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006); *Burstein*, 693 F.2d at 514, 517).

### III.     THE DEFENDANTS DO NOT FALL WITHIN THE REACH OF THE MISSISSIPPI LONG-ARM STATUTE

Mississippi's long-arm statute provides that a non-resident defendant is subject to the jurisdiction of the Mississippi courts if he or she: (1) makes a contract with a resident of Mississippi to be performed in whole or in part by any party in Mississippi; (2) commits a tort in whole or in part in Mississippi against a resident or non-resident of Mississippi; or (3) does any business or performs any character of work or service in Mississippi.  *See* Miss. Code Ann. § 13-3-57.

#### A.  The Defendants do not Conduct any Business in Mississippi.

In the First Amended Complaint, Plaintiffs have alleged that Defendants "aided and abetted Obama in committing elections fraud by covering up the fact that Obama is using a forged birth certificate[,]" and specifically that Fuddy "obstructed justice in order to aid and abet Obama in his use of a forged birth certificate." First Amended Complaint 32, 39.  The Plaintiffs do not even allege that the acts giving rise to the purported causes of action occurred in Mississippi.  Indeed, outside the bare assertions put forth by the Plaintiffs there is nothing in the

First Amended Complaint to suggest that the Defendants or their alleged acts or omissions bear any relation to Mississippi.  The foregoing deficiencies in the First Amended Complaint, coupled with the supporting declarations by the Defendants, make it clear that the Defendants have never conducted any business in Mississippi.

It has been noted "[t]he doing business prong of the Mississippi long-arm statute bears a certain resemblance to the minimum contacts requirement under the due process analysis . . . [t]hus, there is a substantial overlap in the discussion involving the two."  *Seymour v. Scorpion Payroll, Ltd.*, No. 2:09CV189KS-MTP, 2010 U.S. Dist. LEXIS 83639, at *10 (S.D. Miss. Aug. 13, 2010).

The general requirements for jurisdiction under the "doing business" prong of the Mississippi long-arm statute are as follows: "(1) the non-resident . . . must purposefully do some act or consummate a transaction in Mississippi; (2) the cause of action must either arise from or be connected with the act or transaction; and (3) the assumption of jurisdiction by Mississippi must not offend traditional notions of fair play and substantial justice." *Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873, 877 (Miss. 1995) (citing *Rittenhouse v. Mabry*, 832 F.2d 1380, 1384 (5th Cir. 1987)); *see also Cycles Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 620 (5th Cir. 1989).

As is clearly set forth in the declarations attached hereto, Defendants have not purposefully performed any act or consummated any transaction in Mississippi.  *See* Exs. "A" and "B."  Therefore, Defendants were not "conducting business" in Mississippi and this prong of Mississippi's long-arm statute cannot be satisfied.

Furthermore, any assumption of jurisdiction will offend those standards set out in *International Shoe.*  *See* Section III, *supra*.  As such, the Defendants do not fall within the

6

jurisdiction of Mississippi's long-arm statute, and the Plaintiffs' First Amended Complaint should be dismissed with prejudice as to the Defendants.

**B. The Plaintiffs may not rely on Mississippi's Long-Arm Statute to Assert Personal Jurisdiction over the Defendants.**

The First Amended Complaint makes it clear that Plaintiff Taitz is a resident of Rancho Santa Margarita, California.[2]   Nevertheless, it appears that Plaintiff Brian Fedorka is a resident of Mississippi.  It is well-settled that non-residents cannot rely on the "doing business prong" or "contract prong" of the Mississippi long-arm statute as a basis for asserting personal jurisdiction over the Defendants.  *See Mortensen Constr. & Util., Inc. v. Grinnell Mut. Reinsurance Co*., 718 F. Supp. 2d 781, 783 (S.D. Miss. 2010); *Delgado v. Reef Resort Ltd*., 364 F.3d 642 (5th Cir. 2004) (observing that "[t]his court has on numerous occasions interpreted (Mississippi's long-arm) statute to mean that non-residents may not sue non-resident[s] . . . doing business in Mississippi" and that "[n]o intervening change in state statute or case law has occurred that would allow us to abandon the existing circuit precedent"), *cert. denied*, 543 U.S. 1003 (2004); *Submersible Sys., Inc. v. Perforadora Cent., S.A*., 249 F.3d 413, 418 (5th Cir. 2001) (observing that "a non-resident plaintiff . . . may not take advantage of the doing business portion of the Mississippi  long-arm statute."); *Herrley v. Volkswagen of America, Inc.,* 957 F.2d 216, 216 (5th Cir. 1992) (holding that "the 'doing-business' provision of the Mississippi long-arm statute is not available to non-resident plaintiffs").  However, because at least one of the Plaintiffs is a Mississippi resident, it is clear that the Plaintiffs can—from a residency perspective—theoretically rely on the Mississippi long-arm statute.  It is important to note, however, that there are no allegations in the First Amended Complaint and absolutely no admissible evidence to

_____

[2] The only contact information provided regarding the remaining Plaintiffs, with the exception of Brian Fedorka, consists of e-mail addresses; therefore, it is impossible to determine their respective residencies.

indicate that the Defendants have ever conducted business in or have entered into contracts in Mississippi as is required under the statute.  *See* Exs. "A" and "B."  Thus, only the tort prong of the Mississippi long-arm statute is available to the Plaintiffs.  *See Cowart v. Shelby County Health Care Corp.,* 911 F. Supp. 248, 250 (S.D. Miss. 1996).

As previously discussed, the Plaintiffs allege that Fuddy and Onaka engaged in fraud, and Fuddy, specifically, engaged in obstruction of justice.  *See* First Amended Complaint at 32, 29. Turning to the specific factual allegations of fraud, the First Amended Complaint claims that on or around April 25, 2011, "Fuddy either personally issued a fraudulent letter, claiming that she observed copying of Obama's birth certificate, or she was silent when she had a duty to speak up, when Obama, his attorney[,] Robert Bauer[,] and his press secretary[,] Jay Carney[,] presented a forgery, claiming that it came with an authenticating letter from Fuddy."  *Id.* at 32. Similarly, the First Amended Complaint claims that Onaka "had a duty to speak up when on April 27th Obama and his associates presented a forgery, claiming it to be a true and correct copy of Obama's original 1961 birth certificate."  *Id.*  Finally, the First Amended Complaint alleges that Fuddy obstructed justice when she "refused to comply with [a] valid federal subpoena" served by Plaintiff Taitz in June of 2011.  *Id.* at 39.

Not only do these allegations fail to sufficiently provide a link between the alleged tortious acts or omissions of the Defendants, but they fail to describe any sufficiently specific information to state a cause of action for fraud.  As such, the First Amended Complaint is facially deficient as to the claims against the Defendants because there is absolutely no indication by the Plaintiffs that the acts or omissions of the Defendants had anything to do with Mississippi, much less that they occurred there.  Having established that the tort prong of the Mississippi long-arm statute is the only provision of that statute available to the non-resident Plaintiffs, it is

8

obvious that the Plaintiffs claims must fail because the First Amended Complaint—even when construed in the light most favorable to the Plaintiffs—does not allege, and therefore the Plaintiffs have failed to present, *prima facie* evidence that the Defendants committed a tort "in whole or in part in Mississippi against a resident or non-resident of Mississippi[.]"  Miss. Code Ann. § 13-3-57; *see also Cowart*, 911 F. Supp. at 250 (citing *Herrley*, 957 F.2d at 216); *Morris v. Medley,* No. 1:10cv389-LG-RHW, 2011 U.S. Dist. LEXIS 18452, at *5 (S.D. Miss. Feb. 24, 2011).

## IV.    THE EXERCISE OF PERSONAL JURISDICTION OVER THE DEFENDANTS WOULD VIOLATE DUE PROCESS

Plaintiffs have failed to make, and cannot make, a *prima facie* showing of one of the most essential elements of their case—personal jurisdiction.  Although this case involves at least one federal question based on a cause of action under RICO, the Plaintiffs still must present *prima facie* evidence that this Court has personal jurisdiction over the defendants.  *See Caldwell*, 811 F.2d at 918 (citing *Rudzewicz*, 471 U.S. 462 (1985); *Duplantier v. United States*, 606 F.2d 654, 663 (5th Cir. 1979), *cert. denied*, 449 U.S. 1076 (1981); *Club Assistance Program, Inc. v. Zukerman*, 594 F. Supp. 341, 344 (N.D. Ill. 1984) (personal jurisdiction must be established in a civil RICO case)).  Even the most favorable reading of Plaintiffs' First Amended Complaint reveals no facts that authorize this Court to exercise jurisdiction over Defendants.  Moreover, the Defendants lack sufficient contacts with the State of Mississippi to allow this Court to exercise personal jurisdiction over them.

As was merely *alluded to* in the First Amended Complaint, the Defendants are residents of the State of Hawaii; therefore, "[t]o satisfy the requirements of due process, the [P]laintiff[s] must demonstrate: (1) that the non-resident purposely availed himself of the benefits and

protections of the forum state by establishing minimum contacts with the state; and (2) that the

exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."

*Ainsworth v. Cargotec USA, Inc.*, No. 2:10-CV-236-KS-MTP, 2011 U.S. Dist. LEXIS 49665, at

*6 (S.D. Miss. May 9, 2011) (quoting *Mullins*, 564 F.3d 386 at 398) (internal quotations

omitted).  Furthermore, "[t]he 'constitutional touchstone' of the inquiry . . . is whether the

[D]efendant[s] 'purposefully established minimum contacts in the forum State.'"  *Id.* (quoting

*Seiferth*, 472 F.3d at 271 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S.

102, 114 (1987))).

### A. The Defendants do not Maintain Minimum Contacts with Mississippi.

As the Defendants' attached declarations make clear, neither of them has ever had *any*

interaction with Mississippi, either personally or professionally.  Ironically, this lawsuit

represents the only contact either Defendant has ever had with Mississippi.  Further, Defendants:

1. Are residents of Hawaii and have never resided in Mississippi;
2. Have never lived in Mississippi;
3. Have never considered Mississippi to be their place of domicile;
4. Have never owned real property in Mississippi;
5. Have never voted in Mississippi;
6. Have never held a driver's license in Mississippi;
7. Have never filed suit in Mississippi;
8. Have never been sued in any court in Mississippi (with the exception of the present case);
9. Have never been employed by a Mississippi employer;
10. Have never consented to the exercise of jurisdiction by the courts of Mississippi;
11. Have never purposefully availed themselves of the benefits or protections of the laws of Mississippi;
12. Were not served with process in Mississippi;
13. Have never transacted business, personal or professional, in Mississippi;
14. Are not qualified to do business in Mississippi;
15. Have neither incurred nor paid taxes in Mississippi;
16. Have not appointed an agent for service of process in Mississippi;
17. Have no office, no place of business, no officers, no agents, no employees, no salesmen, no licensees, no franchisees, and no distributors in Mississippi;

18. Have never advertised in local Mississippi media and are not listed in any Mississippi telephone directories; and

19. Have never sent representatives, agents, or personnel to Mississippi.

*See* Exs. "A" and "B."

Having established that the Defendants have never had *any* interaction and/or contacts with Mississippi, it is clear that "[n]ot even under the broadest interpretation of the due process minimum contacts requirement can [Defendants] be found to have purposefully enjoyed the benefits and protections of [Mississippi] law." *R. Clinton Constr. Co. v. Bryant & Reaves, Inc.*, 442 F. Supp. 838, 850 (N.D. Miss. 1977) (quoting *Benjamin v. W. Boat Bldg. Corp.*, 472 F.2d 723, 729 (1973)).

**B.   Exercise of Personal Jurisdiction would not be Fair or Reasonable.**

It is well-established that "[j]urisdiction may be general or specific, depending on the nature of the defendant's forum-related contacts."[3] *Ainsworth*, 2011 U.S. Dist. LEXIS 49665, at *6-7 (S.D. Miss. May 9, 2011) (quoting *Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010)); *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).

Plaintiffs have failed to allege that Defendants' contacts with Mississippi give rise to specific personal jurisdiction over Defendant in Mississippi.  Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *See Rudzewicz*, 471 U.S. at 472 (internal citations omitted).  The non-resident's purposefully-directed activities in the forum must be such that he could reasonably anticipate being hailed into

---

[3] Simply put, the Plaintiffs have presented no allegations whatsoever to support a finding of general jurisdiction.  In order to find general jurisdiction, Defendant's contacts with Mississippi must be "substantial, continuous, and systematic.  The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010); *see also* Exs. "A" and "B."

court in the forum state.  See *id.* at 474.  The Fifth Circuit Court of Appeals requires that in order for specific jurisdiction to exist, the exercise of personal jurisdiction must be fair and reasonable. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth*, 472 F.3d at 271 (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002))).

The Court examines five factors when determining whether the exercise of personal jurisdiction would be fair and reasonable: (1) the burden upon the non-resident Defendants to litigate in the forum; (2) the interests of the forum state; (3) the Plaintiffs' interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the several states' shared interest in furthering substantive social policies. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987).

The first factor weighs heavily in favor of dismissal. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  *Id.*  It is clear from their declarations that Onaka and Fuddy would be "tremendously burden[ed]" if they were required to attend trial in Mississippi because it would require them: (1) to litigate in a foreign legal system; (2) to travel a great distance; and (3) to miss valuable time from work serving the State of Hawaii in their official capacities.  *See* Exs. "A" and "B."

The second factor does not weigh in either party's favor.  It is true that forum states have significant interests in protecting their residents from harm. *See Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 245 (5th Cir. 2008).  However, in the case *sub judice*, only one of the Plaintiffs, Brian Fedorka, is believed to be a resident of Mississippi.  Therefore, the interests of Mississippi, if any, are rendered moot or at a minimum outweighed by the competing interest of a more highly-interested forum, such as Hawaii.

As to the third factor needed for exercising jurisdiction, it is important to note that balancing the Plaintiffs' interest must be weighed against the burden placed on these Defendants. Additionally, it is clear that the Plaintiffs can more appropriately seek relief in other jurisdictions in which the exercise of personal jurisdiction over these Defendants will exact much less of a burden.

The fourth factor weighs in favor of dismissal. This lawsuit has only one venue proper for the exercise of jurisdiction over the claims made, that being the State of Hawaii. The "interstate judicial system" has a definite and real interest in this matter, as it involves a dispute between at least one resident of California and two Hawaii residents.

Finally, the fifth factor weighs in favor of dismissal as the "substantive social policies" involved in this case can be adequately decided in a more appropriate, and alternative forum. Furthermore, to the extent that the exercise of jurisdiction over these Defendants would permit the Court to rule on the substantive social policies inherent in this case, that ruling would be outweighed by the negative and deleterious effect that the exercise of jurisdiction in Mississippi would have on the Due Process rights of the Defendants in light of the clear absence of minimum contacts with Mississippi. Based on the foregoing, the exercise of jurisdiction over the Defendants herein violates the Due Process Clause of the 14th Amendment, and therefore, dismissal is proper.

## V.     THE PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The 45-page First Amended Complaint and 42-page RICO Statement are long on rhetoric about alleged conspiracies and fraud, but short on the specific factual allegations required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). For example, the Plaintiffs broadly (and

recklessly) allege that the Defendants have aided, abetted, were complicit in, and participated in a cover up of an alleged birth certificate used by Obama, but altogether fail to specifically allege the "who, what, when, where and how" details of any such conspiracy.  *See* First Amended Complaint at 32, 39; RICO Statement at 1, 8.  In fact, the RICO Statement simply rehashes the facially deficient allegation in the First Amended Complaint regarding the Defendants.  Aside from the failure to plead fraud with particularity, which will be further addressed later, it is clear that the Defendants are employees of governmental entities and cannot be subject to civil RICO liability when acting in the course and scope of their employment.

### A.  The Standard of Review under a Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the formal sufficiency of a complaint.  *See* Fed. R. Civ. P. 12(b)(6); 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356.  The Plaintiffs "must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim."  *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).  "[The Court] will thus not accept as true conclusory or unwarranted deductions of fact."  *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

In *Twombly*, the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 570 (quoting Fed. R. Civ. P. 8(a)(1)).  A Rule 12(b)(6) motion should be granted if the Plaintiffs have failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.*  This standard applies in all civil cases.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 667-68 (2009); *see also Sonnier v. State Farm Mut. Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570).

14

*Twombly*, *Iqbal*, and their progeny make clear that the very purpose of the federal pleading rules is to thwart allegations predicated upon pure speculation. *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' . . . [t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 667.

*Iqbal* and *Twombly* also mandate that the Plaintiffs' pleadings contain "more than labels and conclusions" because the "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, a complaint which merely propounds "naked assertion[s]" devoid of "further factual enhancement" does not fulfill the federal pleading requirements, nor is the mere possibility of misconduct enough. *Iqbal*, 556 U.S. at 697. "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). For these reasons, and as is more fully discussed below, the First Amended Complaint should be dismissed because the Plaintiffs have failed to state a claim for relief that is plausible on its face.

**B.  The Plaintiffs' First Amended Complaint Fails to State a Claim for Relief under the Substantive Provisions of RICO.**

In the First Amended Complaint, Plaintiffs have alleged that Defendants "aided and abetted Obama in committing elections fraud by covering up the fact that Obama is using a forged birth certificate[.]" First Amended Complaint 32, 39. These allegations are insufficient to impose RICO liability under 18 U.S.C. §§ 1961-1968 because the Defendants were, at all times relevant to the allegations in the First Amended Complaint, acting within the course and

scope of their employment as employees of the State of Hawaii's Department of Health.[4] Indeed, although courts have taken different approaches in reaching the same conclusion, regardless of the theoretical basis, it is clear that employees and their respective governmental employers are not subject to civil liability under the relevant provisions of RICO.

Virtually all courts addressing the issue have concluded that governmental entities and their employees carrying out their duties are immune from civil RICO liability because they are incapable of forming the *mens rea* necessary to commit a predicate act.  The leading case in this regard is *Lancaster Cmty Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397 (9th Cir. 1991).  In that case, Lancaster accuses the defendants of "conducting the affairs of Antelope through a pattern of fraudulent schemes, including misappropriation of public funds, violations of federal and state anti-kickback statutes, and violations of state laws prohibiting the making of false entries in the records of a corporation."  *Id.* at 399.  The Ninth Circuit affirmed the dismissal of Lancaster's civil RICO claims "because government entities are incapable of forming [the] malicious intent" necessary for purposes of committing the requisite predicate acts.  *Id.* at 404. The Court further explained that "[t]he wisdom of this rule is evident in light of the circumstances of the instant case.  The 'body politic,' that is, the taxpayers, will pay if Lancaster's RICO claim is successful."  *Id.*  Moreover, punitive damages are not awarded against governmental entities "because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer is being chastised," and since RICO damages "are not merely

---

[4] The Plaintiffs have not adequately stated an individual capacity claim against the Defendants.  In fact, the First Amended Complaint merely refers to the Defendants in their official capacities as employees of the State of Hawaii. Additionally, even if the Plaintiffs had stated that the Defendants are being sued in their individual capacities, "the mere incantation of the term 'individual capacity' is not enough to transform an official capacity into an individual capacity action."  *Lizzi v. Alexander*, 255 F.3d 128 (4th Cir. 2001), *overruled on other grounds Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003); *see also Sizemore v. Miller*, No. 92-2098, 1994 U.S. App. LEXIS 6999, at *2 (7th Cir. 1994) (affirming district court's dismissal of individual capacity claim for similar reasons). Nevertheless, the Plaintiffs have not even attempted to allege that the Defendants are being sued in their individual capacities.

compensatory, but are trebled," such damages are in essence punitive and the civil RICO claims against the hospital were appropriately dismissed.[5]  *Id.* at 405.

While the Fifth Circuit has not addressed this issue, district courts within the Fifth Circuit agree with *Lancaster*.  For example, in *Dammon v. Folse*, 846 F. Supp. 36, 37-38 (E.D. La. 1994), the court cited *Lancaster* when it held that a local school board could "not be liable under RICO" because such a governmental entity "lacks the ability to form the criminal intent necessary to commit the required predicate acts under RICO."   *Id.*; *see also Andrade v. Chojnacki*, 65 F. Supp. 2d 431, 449 (W.D. Tex 1999) (quoting *Lancaster* for the proposition that "governmental entities are not capable of forming the criminal intent necessary to support the predicate RICO offenses") (internal quotations omitted).

Most courts that have considered the issue have reached the very same conclusion, although some took the additional step of holding that governmental entities cannot be deemed a "person" within the meaning of civil RICO because they are incapable of forming the requisite *mens rea* for the required predicate acts.[6]  In light of this well-settled body of law, the Plaintiffs'

---

[5] In *Gentry v. Resolution Trust Corp.*, 937 F.2d 899 (3rd Cir. 1991), the Third Circuit relied upon the same public policy reasons for denying RICO liability against a government entity, without reaching the question of whether such an entity is capable of forming the requisite *mens rea* to commit the predicate offenses.

[6] *See Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996) (dismissing civil RICO claims against city because governmental entity is incapable of forming malicious intent); *Call v. Watts*, No. 97-5406, 1998 WL 165131, at *2 (6th Cir. Apr. 2, 1998) ("Counties are not persons under RICO because they lack the capability to form the *mens rea* requisite to the commission of the predicate acts.") (internal quotations omitted); *Gutenkauf v. City of tempe*, No. CV-10-02129-PHX-FJM, 2011 WL 1672065, at *5 (D. Ariz. May 4, 2011) (civil RICO claims against government entities "*and their employees acting in their official capacity* fail because governmental entities are incapable of forming a malicious intent") (emphasis added); *Guoba v. Sprotsman Props.*, No. 03-CV-5039(JS)(WDW), 2006 WL 2792753, at *4 (E.D.N.Y. Sept. 26, 2006) ("[A] RICO claim may not be sustained againsrt a municipality because the municipality . . . is incapable of possessing the requisite *mens rea* of the underlying predicate offenses."); *Pilitz v. Village of Rockvill Centre*, CV 07-4078, 2008 WL 4326996, at *5 (E.D.N.Y. Sept. 22, 1998) ("a municipality is not capable of forming the required *mens rea* to support any underlying predicate offense"); *Pine ridge Recycling, Inc. v. Butts County, Georgia*, 855 F. Supp. 1264, 1273 (M.D. Ga. 1994) (same); *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 504 (W.D. Ky. 1990) (a county, like a municipal corporation, "cannot be considered a person under 18 U.S.C. § 1961(3) because it is an artificial person and lacked the capability to form the *mens rea* requisite to the commission of the predicate acts"); *Biondolillo v. City of Sunrise*, 736 F. Supp. 258, 261 (S.D. Fla. 1990) ("A municipality is incapable of the criminal intent necessary to support the alleged predicate offenses.").

civil RICO claims against the Defendants fail to state a claim upon which relief can be granted because, as a matter of law, the Defendants, as employees of the State of Hawaii acting in the course and scope of their employment, cannot form the requisite *mens rea* for purposes of satisfying the predicate act requirements of civil RICO and should dismissed accordingly.

Furthermore, to the extent that the Plaintiffs allege the existence of an active conspiracy to defraud between these Defendants and the remaining defendants, it should be noted that, conclusory allegations are insufficient to properly plead the elements of a RICO conspiracy. *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992). Indeed, "because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Id.* (quoting *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir. 1990)); *see also Glessner v. Kenny,* 952 F.2d 702, 714 (3d Cir. 1991) (civil RICO conspiracy claim must plead agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity); *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 47 (1st Cir. 1991) (civil RICO conspiracy claim must charge that defendants knowingly entered into an agreement to commit two or more predicate crimes). Accordingly, because the First Amended Complaint fails to specifically plead the existence of an agreement to commit predicate acts of a civil RICO claim, there is no plausible evidence that a conspiracy exists and any such claims should be dismissed.

## VI. THE PLAINTIFFS HAVE FAILED TO PLEAD FRAUD WITH SUFFICIENT PARTICULARITY

It is elementary that "[i]n alleging fraud . . . a party *must* state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). While Rule 9(b) generally applies to state law allegations of intentional fraud, it also "applies to RICO claims resting on fraud

allegations." *Alpert v. Riley*, No. H-04-CV-3774, 2007 U.S. Dist. LEXIS 22950, at *52 (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). In the instant case, the Plaintiffs allege that the Defendants engaged in fraud by "aiding and abetting Obama in committing elections fraud by covering up the fact that Obama is using a forged birth certificate." First Amended Complaint at 32. Specifically, the Plaintiffs claim that on April 25, 2011[,] Fuddy "either personally issued a fraudulent letter . . . or was silent when she had a duty to speak up[,]" and that Onaka had a duty to speak up but failed to do so "when on April 27th Obama and his associates presented a forgery, claiming it to be a valid true and correct copy of Obama's original 1961 birth certificate." *Id.*

Rule 9(b) makes it clear that "[p]leading the elements of fraud with particularity requires a plaintiff to specify 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *See Alpert*, 2007 U.S. Dist. LEXIS 22950, at *52 (citing *Williams*, 112 F.3d at 177). Based on the First Amended Complaint, it can be argued that the Plaintiffs identified the Defendants and addressed the time, place, and contents of any false representations made by them, but there is no language addressing what, if anything, the Defendants obtained by making the alleged misrepresentations. *See* First Amended Complaint at 32. It is important to note, however, that when fraud claims are instituted under RICO, the Plaintiffs must show reliance on the fraud. *See Sandwich Chef of Tex., Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 219 (5th Cir. 2003) ("RICO fraud cases 'require a showing of detrimental reliance *by the plaintiff,* which is consistent with *Holmes'* admonition that federal courts employ traditional notions of proximate cause when assessing the nexus between a plaintiffs injuries and the underlying RICO violation.") (emphasis in original); *Summit Props. Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556,

559 (5th Cir. 2000) (stating that in a criminal RICO case "the government can punish unsuccessful schemes to defraud because the underlying mail fraud violation does not require reliance, but a civil plaintiff faces an additional hurdle and must show an injury caused by reason of the violation.") (internal quotations omitted).

In the First Amended Complaint, the Plaintiffs merely allege, albeit incorrectly, that the Defendants committed fraud.  Because these allegations are seeking civil RICO damages for injuries resulting from fraud, they are also required to show their detrimental reliance on the Defendants' allegedly fraudulent statements or omissions.  Because the Plaintiffs failed to assert that they relied to their detriment on the Defendants' alleged fraudulent misrepresentations, they have failed to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and, as such, their claims are due to be dismissed.

## VII.    THE DEFENDANTS WERE NOT PROPERLY SERVED WITH PROCESS

Despite the return previously filed in this case, the Plaintiffs never successfully effectuated personal service of process on the Defendants on October 8, 2012.  [PACER Doc. 44].  Instead, process server, Lawrence B. Fenton (hereinafter "Fenton"), left two copies of the Summons and First Amended Complaint with Audrey Gibo (hereinafter "Gibo"), an employee of the State of Hawaii's Department of Health.  S*ee* Affidavit of Audrey Gibo, Ex. "C."  Contrary to the conclusory statements in the Proof of Service made by Fenton that Gibo is "designated by law to accept service of process on behalf of [the] Hawaii State Department of Health[,]" Gibo is in no way authorized by law or permission to accept process on behalf of Onaka or Fuddy.  [PACER Doc. 44];

Rule 4(e)(1) of the Federal Rules of Civil Procedure provides that an individual may be served "following state law for serving a summons in an action brought in courts of general

jurisdiction in the state where the district court is located or where service is made[.]"  Because this case was removed to the United States District Court for the Southern District of Mississippi, the Mississippi Rules of Civil Procedure are applicable.  Rule 4(d)(1)(A) of the Mississippi Rules of Civil Procedure provides that an individual may be served "by delivering a copy of the summons and of the complaint to him personally or to an agent authorized by appointment or by law to receive service of process[.]"  Based on her affidavit it is clear that Gibo is neither an agent authorized by appointment nor an agent authorized by law to receive service of process on behalf of Dr. Alvin T. Onaka or Loretta Fuddy, either personally or in their official capacities. *See* Ex. "C."  As such, service of process was not proper under the Mississippi Rules of Civil Procedure.  For the same reasons, service of process was not proper under the provision of the Federal Rules of Civil Procedure permitting service by "delivering a copy of [the summons and complaint] to an agent authorized to receive service of process."  *See* Fed. R. Civ. P. 4(e)(2)(C).

As previously mentioned, service of process is also proper under the Rule 4(e)(1) of the Federal Rules of Civil Procedure if it complies with state law "where service is made[.]"  As such, the Hawaii Rules of Civil Procedure are also applicable because the attempt to effectuate service was "made" in Hawaii.  Because Gibo is neither an agent authorized by appointment nor an agent authorized by law to receive service of process on behalf of Dr. Alvin T. Onaka or Loretta Fuddy, either personally or in their official capacities, service was not proper under Rule 4(d)(1)(B) of the Hawaii Rules of Civil Procedure.  *See* Ex. "C."  Interestingly, however, Hawaii permits service of process on an officer or agency of the State of Hawaii "by serving the State and by delivering a copy of the summons and of the complaint to such officer or agency." Nevertheless, because Gibo was neither an agent authorized by appointment nor an agent authorized by law to receive service of process on behalf of the Hawaii State Department of

Health, the Defendants were not properly served under that provision.  *See* Ex. "C."; Haw. R. Civ. P. 4(d)(5).

Based on the foregoing, it is clear that the Plaintiffs' attempt to effectuate service on the Defendants was insufficient; therefore, their claims are due to be dismissed based on Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure.

Alternatively, even if service of process was not insufficient under Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure, the Plaintiffs' claims should be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure because service of the Summons and First Amended Complaint was not made upon the Defendants within 120 days after the filing of the First Amended Complaint and the Plaintiffs cannot show good cause as to why such service was not made within that period.

Indeed, the Plaintiffs' filed the First Amended Complaint on April 19, 2012, in the Circuit Court of Hinds County, Mississippi.  [PACER Doc. 6].  The Defendants did not receive a copy of the Summons and First Amended Complaint until October 8, 2012—**172 days** after the filing of the First Amended Complaint.  Because the Plaintiffs have failed to produce any admissible evidence that the Defendants attempted to avoid service or other good cause to justify their failure to effectuate service within the prescribed time period, their claims should be dismissed.  *See* Fed. R. Civ. P. 4(m); [PACER Doc. 6]; [PACER Doc.  44].

WHEREFORE, PREMISES CONSIDERED, Defendants, Dr. Alvin Onaka and Loretta Fuddy, respectfully request that this Honorable Court enter a dismissal of this action, with prejudice, due to a lack of personal jurisdiction; the failure to state a claim for relief; failure to plead fraud with particularity; or alternatively, without prejudice due to insufficient process and insufficient service of process.  Defendants, Dr. Alvin Onaka and Loretta Fuddy further pray for

22

such other relief to which they may be entitled and, if necessary, hereby request an extension of time within which to file an Answer to the First Amended Complaint in the event that these Motions are denied.

RESPECTFULLY SUBMITTED, this the 26th day of October, 2012.

DR. ALVIN ONAKA AND LORETTA FUDDY, DEFENDANTS

BY:   DUKES, DUKES, KEATING & FANECA, P.A.


BY:   *s/ Walter W. Dukes*_____
WALTER W. DUKES

Walter W. Dukes (MSB No. 6214)
Dukes, Dukes, Keating & Faneca, P.A.
2909 13th  Street, Sixth Floor
Post Office Drawer W
Gulfport, Mississippi  39501
Telephone:  (228) 868-1111
Facsimile:  (228) 863-2886

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been electronically filed with the Clerk of Court and thereby served on the following persons, and also separately served by electronic mail as indicated below:

| | |
|---|---|
| Orly Taitz | Scott J. Tepper |
| 29839 Santa Margarita Parkway, Suite 100 | Garfield & Tepper |
| Rancho Santa Margarita, California 92688 | 1801 Century Park East, Suite 2400 |
| orly.taitz@gmail.com | Los Angeles, California 90067-2326 |
| | scottjtepper@msn.com |
| | |
| Samuel L. Begley | Harold E. Pizzetta, III |
| Begley Law Firm, PLLC | Justin L. Matheny |
| P.O. Box 827 | Office of the Attorney General |
| Jackson, Mississippi 39205 | 550 High Street, Suite 220 |
| sbegley1@bellsouth.net | P.O. Box 220 |
| | Jackson, Mississippi 39205 |

And to the following persons by electronic mail:

Brian Fedorka
bfedorka82@gmail.com

Laurie Roth
drljroth@aol.com

Leah Lax
lealax1234@aol.com

Tom MacLeran
tom@macleran.com

SO CERTIFIED, this the 26th day of October, 2012.

*s/ Walter W. Dukes*
WALTER W. DUKES