Dr. Orly Taitz, ESQ

29839 Santa Margarita, ste 100

Rancho Santa Margarita, Ca 92688

949-683-5411, fax 949-766-7603

orly.taitz@gmail.com

PRO SE PLAINTIFF IN MS



SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

NOV 14 2012

J. T. NOBLIN, CLERK
BY_____DEPUTY

## IN THE US DISTRICT COURT

## SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| Dr. Orly Taitz, ESQ et al | ) | CASE 12-CV-280 |
| v | ) | HON. HENRY WINGATE |
| Democratic Party of Mississippi et al | ) | PRESIDING |

## OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANTS OBAMA, PELOSI, OBAMA FOR AMERICA

**This opposition is brought by Plaintiff Dr. Orly Taitz, ESQ, hereinafter "Taitz'. Taitz includes by reference all of the arguments, precedents and facts brought previously in opposition to motion for Judgment on the Pleadings by Secretary of State, Democratic Party and in the opposition to motion to Dismiss by defendants Onaka and Fuddy**

**Defendants Obama, Pelosi and "Obama for America" filed a Motion for Judgment on the Pleadings, where they are adopting the arguments in such motion brought by co-defendants Democratic Party of Mississippi. As such Taitz is responding to the argument contained in the motion for JOP brought by the co-defendants and arguments brought in reply to opposition to JOP.**

## 1. STANDING AND RIGHT TO DISCOVERY IS RES JUDICATA/ OR BARRED UNDER COLLATERAL ESTOPPEL IN RELATION TO DEFENDANT OBAMA.

Shortly prior to filling the case at hand in the state court in Mississippi, Obama was a defendant in a similar case in the state of Georgia. Named Plaintiffs, candidates for President Laura Roth, Thomas MacLeran and Leah Lax were plaintiffs in a case <u>Farrar, MacLeran, Judy, Lax, Roth v Obama  OSAH-SECSTATE-CE-1215136060-MALIHI,</u> presided over by the **Deputy Chief judge of the Administrative court of the State of Georgia Michael Malihi**. Defendant Obama by and through his attorney filed a similar motion to dismiss and a Pre-trial proposed order with similar arguments. Motion to dismiss was denied and Obama was ordered to appear at trial. Taitz filed subpoenas for witness appearances and production of documents. Obama by and through his attorney filed a motion to quash subpoenas. Taitz filed an opposition to motion to quash (Exhibit 1). Judge Malihi ruled in favor of Plaintiffs and Obama was ordered to comply with subpoenas and produce documents.(Exhibit 2) On the  night before trial Obama, by and through his attorney, filed a letter with the Secretary of State of Georgia seeking to take the case and trial away from the presiding judge. (Exhibit 3) Secretary of   State of Georgia denied the demand (Exhibit 4 letter from the Secretary of State of Georgia to Michael Jablonski, attorney for Obama). At trial the court found that the evidence submitted was not convincing enough to remove Obama from the ballot in Georgia. Even though on January 26, 2012  there was not enough evidence, the standing of the plaintiffs was established, the right to issue subpoenas was established and the subpoenas were deemed to be proper. Moreover, this case shows that Taitz indeed exercised her due diligence and attempted to obtain all necessary information in regards to RICO conspiracy, forged  IDs, fraudulently obtained Social Security number, however

defendants simply did not cooperate, refused to respond to duly issued subpoenas. Obama refused to appear at trial, he boycotted the trial.

After the trial in Georgia more evidence became available, specifically Sheriff Joseph Arpaio  of Maricopa county Arizona. issued an affidavit and conducted a number of press conferences, where he announced results of his 6 month investigations and confirmed evidence of forgery in Obama's birth certificate, Selective Service certificate and Social Security card. Whether this new evidence is sufficient, is to be decided at trial or at the minimum     after the discovery is conducted. However, the standing  was established.

Defense in their pleadings disproven their own assertions that the case was filed too late.

In their motion for JOP Defendants argued that until a candidate is nominated by the party at the nominating convention, challenges against him are premature, not ripe, he is not a party nominee yet.  Based on such assertion, defendants are precluded to claim that the case at hand was filed too late.  Based on their own assertion this case is ripe now, after the nomination.

If the court finds that no sufficient fact were pled Impossibility excuses such possible lack of facts due to the facts that the defendants are the custodians of the records in the center of controversy and they refused to comply with the Federal and State subpoenas issued in prior cases and refused to provide necessary documents. As such, due to obstruction of Justice by the Defendants, contempt of court in prior proceedings in Georgia, impossibility to provide additional factual evidence without discovery, subpoenas and court order to compel, this court should rule that the pleadings are sufficient to proceed to discovery and lack of additional facts

more fully describing RICO is excused due to impossibility and obstruction by the defendants themselves.

## 2. DEFENSE CONCEDED THAT OBAMA WAS NOT A PARTY NOMINEE UNTIL SEPTEMBER 6, 2012 NOMINATING CONVENTION. PER ADMISSION BY THE DEFENSE AND GOURLAY V WILLIAMS III THE CASE BECAME RIPE ONLY ON SEPTEMBER 7TH, 2012 AND ALL OF THE ARGUMENTS THAT IT WAS FILED TOO LATE ARE COMPLETELY WITHOUT MERIT.

Today there are multiple similar cases that make their way to the Supreme Court of the United States.

At the center of the controversy is timing: when is it the right time to file a challenge against the Candidate for the U.S. President?

In their Motion for Judgment on the Pleadings and in reply to the opposition to motion for Judgment on the Pleadings (JOP) Defense brings forward the following argument:

a. Complaint was filed both too early and too late. Defense is stating that the complaint was supposed to be filed on February 8 and not February 9, as such it is 1 day too late, but because Obama was not nominated until September 6 2012 nominating convention, it was filed too early at the same time.

b.  William P. GOURLAY v. Eddie Andrew WILLIAMS, III.

2003-EC-02380-SCT  is the only controlling precedent

c. Gourley v Williams clashes with decisions brought in other courts around the country

Taitz responds that :

a. complaint was filed timely

b. per  Gourley v Williams Obama was not a party nominee until the nominating convention and time to file a challenge against a candidate for the U.S. President tolled until Obama was actually nominated

c.  Gourley v Williams did not clash with statutes and decisions around the country and as far as the Presidential Nominee is concerned the legal action challenging the Presidential nominee is not filed too late until it has been 10 days after the national nominating convention. As such the case was filed timely, motion to dismiss should be denied, the case should go to discovery

a. As stated previously, a similar challenge was brought and heard at trial on January 26, 2012 in the sister state of Georgia. Three of the same named plaintiffs were plaintiffs in Georgia in Farrar, MacLeran, Judy, Lax, Roth v Obama OSAH-SECSTATE-CE-1215136060-MALIHI, presided over by the Deputy Chief judge of the Administrative court of the State of Georgia Michael Malihi. The case was

found to be not frivolous, was found to be with merit, it proceeded to trial and Obama was allowed on the primary ballot only because Judge Malihi ruled that the evidence that existed at the time of the trial, on January 26, 2012, was not sufficient enough to remove Obama from the trial. Noteworthy is the fact that since Georgia trial was conducted in the administrative court Plaintiffs were not able to obtain letters rogatory from the court, as the court ruled that it did not have jurisdiction. It will not be the case here, as USDC has more jurisdictional powers. When Farrar was appealed to the Superior court of Georgia, Chief Judge of the Superior Court of Fulton County, Susan Wright, ruled that the challenge against the candidate for the U.S. President is not ripe until he is nominated by his party. This decision was echoed by judge Lewis in Florida, who stated the same, that Obama is not a party nominee until he was nominated by the convention. Defense herein claim that decisions from Georgia and Florida clash with Gourley v Williams in Mississippi. However, lets look closely at Gourley v Williams. Gourley and Williams were two candidates for the position of the Bolivar county supervisor. They were not candidates for the U.S. President. Chief Judge Smith stated in Gourley v Williams:

"ANALYSIS

23-15-961 and 23-15-963.  ¶□7. Gourlay raises several issues, but all generally fall under the Court's interpretation of §§

23-15-963 is Available to Contest the Qualifications of a **Party Nominee Prior to the General Election?** 23-15-961 vs. 23-15-963: □Whether §  Mississippi Code Ann. §§    I.

 23-15-961 and 23-15-963 address election contests challenging the qualifications of a candidate prior to the general election.  ¶□8. Miss.Code Ann. §§

"After a party nominee assumes an elective office, his qualifications to hold that office may be contested as otherwise provided by law.   After a **party nominee** has been elected to public office, the election may be challenged as otherwise provided by law.   The procedure set forth above shall be the sole and only manner in which the qualifications of a candidate seeking public office as a party nominee may be challenged prior to the time of his nomination or election." id emphasis added.

Gourlay clearly talks about **<u>PARTY NOMINEE</u>**.

What Judge Wright in Georgia in Farrar case and Judge Lewis in Florida  in <u>Voeltz v Obama et al</u> (2012 CA 467) Circuit Court of the Second Judicial Circuit Leon County Florida were saying, is that **Presidential elections are different from all other elections**. For example, in Georgia Obama was the only nominee of the Democratic party in the Primary election. However, the courts ruled that in order to avoid unnecessary premature  litigation and expenses of premature litigation, it is important to delay determination of the legitimacy of the candidate for the U.S.

President until such **candidate is actually nominated by the party, by the nominating convention**.

As a matter of fact during the motion hearing to dismiss, Judge Lewis joked that if the Democratic Party nominates somebody, who is not eligible, it is their problem, it is their loss. As such, Gourley v Williams is not inconsistent with the decisions of other courts, it simply shows that as far as the Candidate for President is concerned, **he is not a party nominee until he is nominated by the nominating convention**.    Noteworthy is the fact that this is not some type of a right wing conspiracy, which gives Plaintiffs additional time to    challenge a Democrat candidate for President. Both Judge Wright in Georgia and Judge Lewis in Florida are Democrats. Judge Wright is a far left Democrat.    Decision by Chief Judge Smith in Gourlay is consistent with other decisions around the country. Per Gorlay Mississippi code 23-15-961 relates to **a party nominee**. Obama was not a party nominee until September 6, 2012 nomination, as such the challenge was timely. So, regardless of whether 23-15-961 or 23-15-963 is used,  the complaint was not filed late, as Obama did not become a party nominee until September 6. Original complaint was filed in February and Amended Complaint was filed in April.

Could this challenge be viewed in  different light?  No. If this court were to rule that one is a party nominee for President prior to the nominating convention, than

this court would deprive a large group of voters of their voting rights. Let's illustrate this point with an example:

Some candidates for president did not qualify to be on the ballot in each and every state. For example, GOP Candidates Gingrich and Bachmann did not qualify in Virginia. If one of them were to win the GOP nomination,   citizens of Virginia would be disenfranchised, if they were allowed to bring a challenge only prior to the primary. They would never have any opportunity to challenge the candidate for the U.S. President, as Gingrich and Bachmann were not on the ballot in the primary. As such the only way to view Gourley as far as the candidate for the U.S. President is concerned, is that one is not a party nominee until he is nominated by the convention, which was September 6, 2012. As such this challenge is timely.

This is the only way to view the challenge against the candidate for the U.S. President in a light, which would  survive the Constitutional muster and would survive challenges in higher courts, as it would be consistent with other decisions on the same matter around the country.

4. **Taitz paid $300 bond and satisfied a bond requirement.**

There is only one complaint, which required one bond of $300, which Taitz paid. If this court rules for some reason that 2 bonds need to be paid, this is a minor

technical issue which can be easily cured. Taitz is prepared to pay an additional $300 if this court rules for some reason that 2 bonds need to be paid in one case.

5. Defense claims that results of the election cannot be invalidates after the elections. they are claiming that since elections already took place the whole case is moot.

This is not the case. Election results are often invalidated due to fraud, irregularities. as a matter of fact today's edition of "Jackson Advocate the voice of Black Mississippians" runs an article about a 12 member jury agreeing with an attorney by a candidate Joyce Jackson and invalidating results of February 28 run-off election due to precinct irregularities. http/www.jacksonadvocateonline.com/?p=9491Exhibit 13. This court can invalidate results of an election due to fraud or alternatively issue an injunction to certification of elections held on November 6, 2012.

6. Complaint is sufficient under FRCP Rule 8. Complaint is sufficient under Iqbal v Ashcroft or Bell Atlantic. In the alternative, if the court feels that the complaint was not pled enough per higher standards of the Federal court, since Plaintiffs filed the complaint in the state court and expected the complaint to be viewed based on the standards of the state court, and it was removed to the Federal court by the defendants, Plaintiffs should be given a leave of court to file an

amended complaint, which is pled more fully if for any reason the court finds that Plaintiffs did not plead sufficient facts in any particular area or any particular cause of action.

7. Obstruction of Justice by the Defendants and impossibility would allow the plaintiffs to proceed to discovery with the facts pled so far.

Whilr Plaintiffs believe that sufficient facts were pled, in case this court finds that pleadings are not sufficient, impossibility excuses such possible lack of facts due to the facts that the defendants are the custodians of the records in the center of controversy and they refused to comply with the Federal and State subpoenas issued in prior cases and refused to provide necessary documents. As such, due to impossibility to provide additional factual evidence without discovery, subpoenas and court order to compel Plaintiffs are unable to plead more facts. Unclean hands, obstruction of Justice by one of the parties would excuse performance by the opponent.

7. . Defense states that MS code 23-15-963 relates only to independent candidates is not supported by the statute. Statute is listed below, it does not state only independent candidates. It states **procedures for contesting qualifications of candidate for general election; which includes candidate Obama.**

| MISSISSIPPI | CODE | OF | 1972 |
|---|---|---|---|
| *As* | | | *Amended* |

## SEC. 23-15-963. Exclusive procedures for contesting qualifications of candidate for general election; exceptions.

(1) Any person desiring to contest the qualifications of another person who has qualified pursuant to the provisions of Section 23-15-359, Mississippi Code of 1972, as a candidate for any office elected at a general election, shall file a petition specifically setting forth the grounds of the challenge not later than thirty-one (31) days after the date of the first primary election set forth in Section 23-15-191, Mississippi Code of 1972. Such petition shall be filed with the same body with whom the candidate in question qualified pursuant to Section 23-15-359, Mississippi Code of 1972.

(2) Within ten (10) days of receipt of the petition described above, the appropriate election officials shall meet and rule upon the petition. At least two (2) days before the hearing to consider the petition, the appropriate election officials shall give notice to both the petitioner and the contested candidate of the time and place of

the hearing on the petition. Each party shall be given an opportunity to be heard at such meeting and present evidence in support of his position.

(3) If the appropriate election officials fail to rule upon the petition within the time required above, such inaction shall be interpreted as a denial of the request for relief contained in the petition.

(4) Any party aggrieved by the action or inaction of the appropriate election officials may file a petition for judicial review to the circuit court of the county in which the election officials whose decision is being reviewed sits. Such petition must be filed no later than fifteen (15) days after the date the petition was originally filed with the appropriate election officials. Such person filing for judicial review shall give a cost bond in the sum of Three Hundred Dollars ($300.00) with two (2) or more sufficient sureties conditioned to pay all costs in case his petition be dismissed, and an additional bond may be required, by the court, if necessary, at any subsequent stage of the proceedings.

(5) The circuit court with whom such a petition for judicial review has been filed shall at the earliest possible date set the matter for hearing. Notice shall be given the interested parties of the time set for hearing by the circuit clerk. The hearing before the circuit court shall be de novo. The matter shall be tried to the circuit judge, without a jury. After hearing the evidence, the circuit judge shall determine

whether the candidate whose qualifications have been challenged is legally qualified to have his name placed upon the ballot in question. The circuit judge may, upon disqualification of any such candidate, order that such candidate shall bear the court costs of the proceedings.

(6) Within three (3) days after judgment is rendered by the circuit court, the contestant or contestee, or both, may file an appeal in the Supreme Court upon giving a cost bond in the sum of Three Hundred Dollars ($300.00), together with a bill of exceptions which shall state the point or points of law at issue with a sufficient synopsis of the facts to fully disclose the bearing and relevancy of such points of law. The bill of exceptions shall be signed by the trial judge, or in case of his absence, refusal or disability, by two (2) disinterested attorneys, as is provided by law in other cases of bills of exception. The filing of such appeals shall automatically suspend the decision of the circuit court and the appropriate election officials are entitled to proceed based upon their decision unless and until the Supreme Court, in its discretion, stays further proceedings in the matter. The appeal shall be immediately docketed in the Supreme Court and referred to the court en banc upon briefs without oral argument unless the court shall call for oral argument, and shall be decided at the earliest possible date, as a preference case over all others. The Supreme Court shall have the authority to grant such relief as is appropriate under the circumstances.

(7) The procedure set forth above shall be the sole and only manner in which the qualifications of a candidate seeking public office who qualified pursuant to the provisions of Section 23-15-359, Mississippi Code of 1972, may be challenged prior to the time of his election. After any such person has been elected to public office, the election may be challenged as otherwise provided by law. After any person assumes an elective office, his qualifications to hold that office may be contested as otherwise provided by law.

**SOURCES:** Derived from 1972 Code Sec. 23-3-63 [Codes, 1942, Sec. 3191; Laws, 1935, ch. 19; Repealed by Laws, 1986, ch. 495, Sec. 333]; En, Laws, 1988, ch. 577, Sec. 2; 1990, ch. 307, Sec. 2, eff from and after May 4, 1990 (the date the United States Attorney General interposed no objection to the amendment of this section).

8. The court should not reward defendants, who are custodians of records in the center of controversy, for stonewalling and refusing to provide requested records.

9. **DEFENDANTS ERRED IN THEIR ASSERTION THAT THE COURT CANNOT ISSUE AN INJUNCTION AGAINST ACTIONS OF THE SECRETARY OF STATE IN REMOVING A CANDIDATE FROM THE BALLOT.**

The whole premise of the court of law, as far as Constitution rights are concerned, is to evaluate whether certain actions of the elected officials, legislature, secretaries of state and so on, met the Constitutional muster and enjoin flagrantly unconstitutional actions.

The irony is that the Democratic Party of Mississippi and the Executive committee of the Democratic Party of MS in 2008 sought just that: declaratory and injunctive action from this very court, U.S. District Court for the District of Mississippi, alleging potential elections fraud in primary elections. (Democratic Party of Mississippi, Executive Committee of the Democratic Party of Mississippi v Haley Barbour in his official capacity as the Governor, Delbert Hosemann in his official capacity as the Secretary of state and Jim Hood in his official capacity as the Attorney General of Mississippi 07-60667 in the Circuit Court of Appeals for the fifth Circuit).

Plaintiffs Mississippi Democratic Party and Mississippi Democratic Executive Committee filed a declaratory judgment action seeking to overturn as unconstitutional Mississippi's semi-closed primary1 statute, Miss. Code Ann. § 23-15-575. They succeeded beyond their expectations when the district court declared the statute unconstitutional and fashioned a sweeping injunction that required not only party registration but also photo identification in order to vote.

Later decision of the District Court was overturned for different reasons, however it remains axiomatic that the District court can review the actions by the Secretary of State and issue a declaratory and injunctive relief when those actions are unconstitutional. In their reply Defendants are stating that the reversal of Democratic Party v Haley Barbour in the 5th Circuit means no standing for Plaintiffs. This is incorrect. 5th circuit confirmed that MSDP has standing in general, however they ruled that in case brought in 2004 by MSDP was akin to Renne v Geary 501 U.S. at 321.111 S.Ct at 2338 coming out of CA. 5th circuit ruled that even though MSDP did have standing in general, if there would have been a specific elector they referred to, they could challenge, but MSDP did not provide any names, any specific electors or candidates they referred to, the challenge was hypothetical. In case at hand Taitz met her burden and brought a specific challenge, she brought a specific candidate Obama, who is using forged IDs. This means that case at hand will meet Constitutional muster and will not be overturned if the court rules in favor of Plaintiffs and if the defense appeals to the 5th Circuit.

Moreover, Declaratory relief in declaring a candidate not legitimate for office due to use of forged IDs and Injunctive relief in removing the candidate of the ballot or alternatively enjoining certification of such candidate by the court are REMEDIES.

If the challenge is successful, a proper remedy is a declaratory and injunctive relief.

In their reply to JOP Defense claims that Plaintiffs did not provide any authority for declaratory and injunctive relief. This is patently not true. Plaintiffs brought forward        *Cleaver v Jordan*, Calif. Supreme Court minutes, Sep. 26, 1968, case no. 7838, not reported. This is the case, where a candidate for the U.S. President, member of the Peace and Freedom Party,  Eldridge Cleaver was removed from the ballot, due to the fact that he was only 34 years old and not 35 and did not meet the requirements for eligibility for the U.S. President. similarly Obama does not meet such requirements since he is not a natural born U.S. citizen, he is a citizen of Kenya and since age 5 he is a citizen of Indonesia and considering the forged IDs he is using he never obtained U.S. citizenship, his whole citizenship is based on fraud and forgery. Cleaver was heard in the Superior Court of California, it was confirmed in the Supreme Court of California. Cleaver appealed to the Supreme Court of the U.S. but SCOTUS refused to take the case certiorari. As such Cleaver decision stands. A Judge, a court can issue a declaratory relief, declare a candidate for the U.S. President not eligible and can enjoin him from being on the ballot or alternatively can enjoin certification of votes for such candidate.

Another case that can be brought forward is the case of Fulani v Hogsett from the 7th Circuit. 917 F 2d 1028 (7th cir., 1990). In Fulani, one Lenora Fulani challenged both George Bush and Michael Dukakis on the ballot in one state, Indiana, seeking to remove both of them from the ballot in Indiana due to the fact that the candidates did not file their candidacies timely. 7th circuit ruled that there is standing, that the court can issue the relief requested, however they found that Lenora Fulani waited too long to file her

case in September, right before the General election, that there were latches and therefore 7th Circuit dismissed the complaint, however Fulani established that a remedy of declaratory and injunctive relief in removing a Presidential candidate from the ballot, is indeed available to courts and specifically Federal courts.

## 10. PLAINTIFFS FILED AN ADDITIONAL CHALLENGE AFTER THE NOMINATING CONVENTION IN RESPONSE TO DEFENSE ARGUMENT THAT THE CHALLENGE IS NOT RIPE UNTIL THE CANDIDATE FOR THE U.S. PRESIDENT IS NOMINATED. PLAINTIFFS GOT A RESPONSE "GO AWAY", WHICH SHOWED MALICE  AND UNWILLINGNESS TO COMPLY WITH THE REQUIREMENT OF HOLDING A HEARING ON THE CHALLENGE.

Defendants claimed that the complaint for declaratory relief and injunction was not ripe until Obama was nominated by the nominating convention of the Democratic party. In response Plaintiffs and a number of other voters filed a new complaint after the Democratic nominating convention. In response the Democratic Party of Mississippi responded by and through its' legal counsel Attorney Samuel Begley via e-mail. Begley responded by stating: "in case I was not clear before, go away". This comes on the heels of the Democratic Party of Mississippi violating their duty under 23-15-961 and 23-15 963 to review the complaint of elections fraud filed prior to the Primary and General election.  This clearly shows that the Democratic

party has failed to vet candidate Obama before and after the nomination and acted in bad faith in refusing to respond to challenges. As such, it is up to this court to conduct vetting and ascertain eligibility and the issue is ripe now. In the alternative this court should grant the plaintiffs a leave of court to file a second amended complaint, which would be filed after the nominating convention and would be ripe.

11. **PLAINTIFFS ARGUMENTS THAT TAITZ DID NOT DO HER DUE DILIGENCE AND DID NOT GATHER SUFFICIENT FACTS FOR RICO COMPLAINT AND AT THE SAME TIME THEIR ASSERTION THAT SHE IS A LEGAL TERRORIST IN BRINGING TOO MANY CHALLENGES, SUBPOENAS AND REQUESTS FOR PRODUCTION OF DOCUMENTS, REPRESENT LOGICAL IMPOSSIBILITY AND AN ARGUMENT WITHOUT MERIT.**

In its reply to opposition to JOP, MDEC states:

"Taitz complains that she needs "discovery and … subpoena power in order to provide more details for [the] RICO complaint" (ECF 47 at 21), tacitly admitting she failed to perform the due diligence required of her under F.R. Civ. Proc. 11. " ¶7 Reply to opposition to JOP by MDEC.

This statement is flagrantly wrong.

As stated previously, Taitz made a superhuman effort of working 24/7 for 4 years in gathering information and serving defendants with subpoenas to appear in court and provide    evidence.

As stated previously and as illustrated in exhibits 1-8 Taitz has successfully opposed motions to quash subpoenas in prior cases, and issued subpoenas seeking additional information on Obama's forged IDs, information, which she would have provide in the RICO case at hand, if defendants, particularly Obama complied with subpoenas and appeared in court for hearings and trial. Obama and other defendants refused to comply with both federal and state subpoenas served on them by Taitz (Exhibits 5-8). For four years Obama and the rest of the defendants obstructed justice and refused to comply with subpoenas and refused to provide any information and any documents in relation to the conspiracy at hand to defraud the American people and usurp the U.S.Presidency  with forged and fraudulently obtained IDs. As evidenced in Exhibit 3  Defendant Obama, who is a sitting U.S. President,  used his attorneys and his weight and position of the U.S. President to apply pressure and intimidate State Elections officials and judges. As described in a letter from Obama's attorney Michael Jablonski to Secretary of State Kemp (Exhibit 3), Obama was demanding from the Secretary of State of a sister state of Georgia  to take a case away from the presiding judge the night before trial. This behavior in itself shows a pattern of racketeering and a pattern of intimidation of

officials in an attempt to obstruct justice.  More importantly defendants cannot draw a benefit from their own Obstruction of Justice. They cannot claim that the RICO case at hand should be dismissed because Taitz did not plead sufficient facts to fully describe the RICO conspiracy. Obama's claims that Taitz did not do her due diligence under Rule 11 to gather information is beyond arrogant, fraudulent, despicable, outrageous and completely untrue based on the history of these cases for the last four years. Taitz cannot provide more information on RICO conspiracy in her original complaint not because she did not exercise due diligence, but because defendants committed massive fraud, obstructed justice, used White House Counsel Robert Bauer and Obama's private attorneys Judith Corley, Michale Jablonski, Scott Tepper and Samuel Begley to utter forged documents and aid and abet in fraud.

Taitz is providing as Exhbits 9, 10, 11 OCON, Official certificates of Candidate for Al Gore, John Kerry and Barack Obama. OCON for Obama, submitted by the chair of the Democratic Party of Hawaii Brian Schatz, contained a falsified language where former Chair of the Democratic Party of Hawaii and current Lieutenant Governor of Hawaii  Brian Schatz removed the usual language "legally qualified to serve under the provisions of the   U.S. Constitution".  In Obama's OCON wording "legally qualified to serve under the provisions of the U.S. Constitution" was removed and replaced with:

"legally qualified to serve under provisions of the National Democratic Party balloting and the Presidential Preference Poll and Caucus held on February 19h, 20OB in the State of Hawaii and by acclamation at the National Democratic Convention held August 27, 2008 in Denver, Colorado."

This is yet another example of wide spread fraud and involvement of high ranking officials in the cover up of this forgery and fraud, which makes it difficult to investigate.

Exhibit 12 is the true and correct copy of the 04.27.2011 White House press conference in relation to Obama's alleged birth certificate. In this press conference former white House counsel Bob Bauer and former attorney for Obama Judith Corley were used to defraud the public and attempt to give legitimacy to the forgery that they posted on the whitehouse.gov claiming it to be a valid birth certificate. In the press conference Bauer claimed that Corley flew to Hawaii to pick up certified copies of the alleged birth certificate, which she hand carried and which was posted on whitehouse.gov. Clearly this is flagrant fraud, as what was posted on whitehouse.gov, was a computer file, which had multiple layers, with the stamp of the registrar residing on a different layer from the rest of the document. Clearly, this is impossible when one scans a paper document. So there are only a few options:

a. Corley never went to Hawaii. Forgery was created locally in DC, possibly in the White House and uploaded.

b. Corley travelled to Hawaii, brought something, some paper document, but what was uploaded on line, was the computer file with all the layers, not a certified copy

c. Corley travelled to Hawaii, but what she actually brought, was a memory stick with the computer/electronic file of the forgery, which was uploaded on whitehouse.gov and was printed. The last version is the most probable, as just e-mailing this file with a forged birth certificate or sending it by mail, is not safe. Mail is being checked and logged.

This is yet another example of Obama using his attorneys in committing fraud and covering up forgery, which shows how extremely difficult it is to obtain the information, it shows that it is not a case of Taitz not doing her due diligence under rule 11, but Obama and other named and John Doe defendants engaging in massive Obstruction of Justice.

Considering the fact that the defendant is the sitting U.S. President, who is using forged identification papers, obstructing justice, refuses to comply with subpoenas, boycotts trials and hearings and applies pressure on state and federal officials, there is a clear excuse of impossibility. Due to the fact that it is impossible for the Plaintiffs to obtain further information without a motion to compel by this court,

in light of impossibility, even if this court finds that RICO should be more fully pled, this court should acknowledge uniqueness of this case and extreme difficulty for Plaintiffs to gather any information and allow this case to proceed into discovery.

## 12. DEFENDANTS ENGAGED IN CONTINUOUS PATTERN OF RACKETEERING AFTER THIS CASE WAS FILED AND CONTINUED UP TO TODAY.

Recently defendants by and through their attorney sent to the plaintiffs a settlement offer. In reality this was not a legitimate settlement offer, but rather an intimidation attempt, which came from a sitting president.

In the settlement offer an attorney for the sitting U.S. President was de facto seeking an obstruction of justice and fraud on the court.

Rule 408 allows admission of the settlement offer in certain circumstances, such as obstruction of justice in criminal investigation.  Civil RICO allows parties to proceed under the criminal statutes.

RULE 408. COMPROMISE OFFERS AND NEGOTIATIONS

(a) **Prohibited Uses.** Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

  **(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

(**2**) conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

**(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

On Thu, Nov 1, 2012 at 4:08 PM, Scott J Tepper <scottjtepper@msn.com> wrote:
> 		Dear		Ms.		Taitz
>
> On behalf of our clients we make the following settlement proposal subject to Rule	408,	Federal	Rules	of	Evidence:
>
> 1. You will dismiss this action, with prejudice. You will announce such dismissal on the record during the telephone conference on Monday morning.
>
> 2. You will stop defaming the defendants in this action and stop defaming their attorneys.
>
> 3. You will pay by certified funds to the trust account of Mr. Begley the sum of $25,000 within the next 30 days. As to this latter item, we intend to seek sanctions against you pursuant to 28 USC sec. 1927 which are several multiples of that amount	if	this	matter	is	not	settled	on	these	terms.
>
> 4. This settlement offer remains open until 5 pm on Sunday, and if not accepted by that time in writing or by e mail, it will be deemed rejected.
>
> 5. We understand you do not represent your co plaintiffs but we are willing to entertain	an	offer	from	them	as	well.
>
> 		Scott		J.		Tepper,
> Via iPhone 4s

28 USC 1927 relates only to attorneys, who represent clients in a particular case.

Taitz is not admitted to represent anyone in the state of Mississippi, defendants through their attorney Tepper in section 5 of their "offer" acknowledge that they know that   Taitz is not an attorney in this case, they acknowledge that she is a co-plaintiff  and does not represent anyone  and 28 USC 1927 does not apply to her. Additionally, there was no unreasonable multiplication of proceedings, there was and there is a valid complaint of elections fraud. Calling an action to stop elections fraud with forged IDs and a stolen Social Security number frivolous or vexatious equates calling legal crusade for voting rights of Thurgood Marshall vexatious. The only difference, is that Thurgood Marshall fought for the rights of only some of the people to have voting rights, while plaintiffs here represent all of the people regardless of gender, race or ethnicity, all of the people, whose voting rights for fair and lawful elections for the U.S. President were violated by elections fraud, forgery and treason.

Additionally, their demand of "no defamation" of defendants and their attorneys is a clear  attempt to make Taitz lie, to become complicit in fraud, forgery and treason. Taitz presented the court with substantial evidence, over 10 sworn affidavits, including an affidavit of a sheriff with 50 years of experience, Senior deportation officer and others attesting to the fact that Obama is using all forged IDs. Moreover, demand to stop "defamation" was made  after Taitz made public a sworn affidavit by Henry Wayland Black, PhD, stating that Scott Tepper and Sam

Begley, attorneys for the defendants, submitted to this court a new version of Obama's birth certificate with significant alterations.

This "settlement offer" represented a clear case of an intimidation of whistleblowers, a threat to go after them, if they do not shut up, if they do not go silent about Obama's forged IDs and a fraudulently obtained Social Security number and about Tepper's submission of an altered document. What is egregious that this threat came on behalf of a sitting U.S. President, who acted as a mob boss in using his attorneys in intimidating whistleblowers. Moreover, Tepper and Begley went on the radio and continued taunting the Plaintiffs and threatening them and their families and stating that they will go after Plaintiffs' houses. Current actions by the Defendants and their attorneys reinforce the RICO cause of action on behalf of all the plaintiffs and warrant a leave of court to allow the Plaintiffs to file a Second Amended Complaint which would incorporate Defendants' actions in furtherance of RICO up to today.

## 13. DEFENSE NOTION THAT THERE IS NO LEGAL AND PROXIMATE NEXUS BETWEEN THE RICO PREDICATE ACTS AND DAMAGES IS A WISHFUL THINKING AND TOTALLY WITHOUT MERIT.

In the Fifth Circuit, a person will be considered injured "by reason of" a RICO violation if the predicate acts constitute (1) factual (but for) causation and (2) legal (proximate) causation of the alleged injury." *Crawford Arms* 23 F. Supp. 2d at 679, citing *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 744 (5th Cir.1989). 1961(1)(B)

In case at hand there is a factual and proximate causation between the Predicate acts and alleged injury.

Predicate acts included fraud, wire fraud, forgery, Social Security Fraud, use of forged identification papers, intimidation of the whistle blowers. A number of named and John /Doe defendants engaged in these predicate acts and acted in concert in the form of a criminal enterprise in fact.

First question is: was it   foreseeable that whistle blowers and attorneys representing whistleblowers and other challengers,  like Taitz would be hurt?

Yes, any time there is a criminal enterprise, there is also an attempt to cover up and silence the whistle blowers and attorneys.

One of the examples Taitz brought, were actions of Scott Tepper, who at the moment is  John Doe in this case, who s also an attorney for defendant Obama and other Defendants. In her RICO statement Taitz described actions by Tepper, where Tepper used his position of an investigator with a California bar and filed multiple complaints seeking to suspend or strip Taitz of her law license. At the end California bar decided not to take any action against Taitz and her license, however in the process Taitz had to spend over \$10,000 in fees paying attorneys specializing in bar representation,  defending herself and her license from Tepper.

What is more, Tepper together with his co-counsel Begley were caught lying to this court, stating that when they filed a motion for judicial notice of Obama's birth certificate, they had not knowledge that it might be forged.   This came after for four years  Tepper kept a site Fogbow, where under pseudonim Sterngard Friegen

he analyzed each and every pleading, each and every word and each and every step made by Taitz. Tepper clearly knew that there was evidence of forgery. In order to cover up further Tepper submitted to this court a new version of Obama's birth certificate, where the original layers were flattened and halo effect, which is a strong evidence of forgery, was minimized.  So, Tepper is clearly connected to this RICO conspiracy, and as a member of conspiracy he caused significant financial damage in attempting to silence Taitz, a whistle blower and an attorney for whistleblowers, by hounding her and her California law license, by abusing his discretion as a  bar investigator in writing complaints about her, attempting to stop her by going after her license. Damages suffered by Taitz in $10,000 in legal fees stemmed directly from the conspiracy and were foreseeable and therefore valid proximate damages.

Further, Taitz reported that she was a victim of vandalism. Obama supporters and associates sent her e-mails, advising her that they will hack into her accounts, they sent threatening letters to her tenants, where she was subleasing space, tenants moved out, Taitz suffered financial damage.  Her car was tampered with, Taitz suffered damage. Her e-mail accounts and web sites were vandalized, Taitz had to pay thousands of dollars in repair fees and lost thousands of dollar in advertising dollars for her website.

Additional count of financial damages is fully pled in RICO statement, cases relating to representation of Major Cook and Captain Rhodes. As defendants engage in fraud, forgery and use of forged IDs for Obama, a number of Plaintiffs, among them members of the U.S. military rose and sought a lawful redress of grievances from the courts. Major Cook and Captain Rhodes were members of the U.S. military, who were supposed to be deployed to the Middle East, to the field of battle and they sought declaratory relief and injunctive relief, seeking to know, whether they are following lawful orders, whether orders given by Obama were lawful orders in light of evidence of forgery in Obama's IDs. They asked Taitz to represent them pro bono. Taitz filed a valid challenge. In the first case, US military rescinded Cook's deployment orders, rather than show any identification papers for Obama, as clearly the top brass in the military knew that Obama has no papers. Cook case was a success for Taitz, as it became crystal clear that if Obama were to have any papers, the military would have provided them, rather than endanger the whole campaign of deployment to Afghanistan with rescission of Cook's orders.

After success of Cook case,  Taitz was approached by yet another officer, surgeon Connie Rhodes, who sought the same verification of Obama's IDs. By that time Taitz became enemy number one, as her actions disrupted deployment and threatened to blow a lid on Obama's forged IDs. So Judge Clay D. Land responded

by retaliating against Taitz and sanctioning her $20,000, claiming that it was frivolous to file the action in question.

What's important, is that Land could not deny Rhodes standing, as she was supposed to be deployed within days. So Land decided to dismiss the case based on abstention, saying that he simply wants to abstain from hearing this case on the merits. Abstention in itself was not justified, as this was not a technical issue, which is best left for the military to decide internally, it was an issue of constitutionality of the U.S. President. It was a clear Article 3 issue to be resolved on the merits in court.  Even if one were to believe that is was excusable for a presiding judge to simply abstain from hearing on the merits such an important issue of National security, just because the judge decided to abstain, to sit back and not hear the case on the merits, it in itself does not make this case frivolous. However, judge Land issued $20,000 in sanctions with a clear intent to  intimidate Taitz and silence all opposition to Obama and bury the issue of Obama's forged IDs. This was done as a message to all attorneys, that if they dare to represent active members of the U.S. military challenging Obama, they will be persecuted by the Establishment, just as Taitz was persecuted.

There is a direct and proximate nexus between the RICO conspiracy at hand and financial damages suffered by Taitz. RICO conspiracy consisted of acts of fraud and forgery. Judge Land  was either extremely naive and believed Obama to be

legitimate and therefore retaliated against Taitz who was the whistle blower and an attorney for a Federal whistle blower, Officer Rhodes, or Land was complicit in this RICO scheme and retaliated against Taitz because he was complicit and a part of the scheme. Regardless, Taitz suffered direct and foreseeable proximate  injuries of $20,000.

Due to page limitation Taitz cannot expand in this opposition and plead more facts, however facts already pled are sufficient to show that as a result of this RICO scheme Taitz suffered financial damages. Her damages were actually and proximately related to RICO. As such she overcame the threshold needed  in order to proceed  to discovery.

## CONCLUSION

1. Defense motion for judgment on the pleadings should be denied.

Declaratory relief deeming candidate Obama not eligible to be on the ballot should be granted. Due to the fact that the election has already occurred the Court should enjoin certification of any and all votes for candidate Obama  due to his lack of legitimacy for the U.S. Presidency and his use of a forged birth certificate, forged

Selective Service certificate and a fraudulently obtained Social Security number, which was never assigned to him according to E-Verify and SSNVS.

2. Parties should proceed to discovery to ascertain damages in RICO.

3.In the alternative Plaintiffs should be allowed to file a Second Amended complaint and seek additional RICO Damages in relation to latest racketeering actions by the defendants. Additionally, Plaintiffs should be allowed to seek an injunctive relief of seeking injunction of certification of votes versus injunction to placement on the ballot, as the election has already occurred.

New Plaintiffs, who after the nominating convention signed and forwarded to the Democratic Party a complaint to remove Obama from the ballot, should be allowed to join as additional plaintiffs.

Respectfully submitted

/s/ Dr. Orly Taitz, ESQ

11.13.2012