**EXHIBIT 4**

## McCarthy v. Briscoe, 429 U.S. 1317 (1976)

Supreme Court of the United States
Eugene J. McCARTHY et al., Petitioners,
v.
Dolph BRISCOE, Governor of Texas and Mark W. White, Jr., Secretary of State of the State of Texas.
No. A-247.
Sept. 30, 1976.
429 U.S. 1317, 97 S.Ct. 10, 50 L.Ed.2d 49

*1317 **11 Mr. Justice POWELL, Circuit Justice.

This is an application for injunctive relief,FN1 presented to me as Circuit Justice. The applicants, former Senator Eugene J. McCarthy and four Texas voters who support Senator McCarthy's independent candidacy for President, have asked that I order Senator McCarthy's name placed on the 1976 general election ballot in Texas. They sought relief without success from a three-judge District Court for the Western District of Texas D. C., 418 F.Supp. 816 and, on appeal, from the Court of Appeals for the Fifth Circuit 539 F.2d 1353.FN2 Upon consideration *1318 of the record before me, I have concluded that the courts below erred in failing to remedy a clear violation of the applicants' constitutional rights. I have therefore granted the requested relief.

FN1. Although the application is styled "Application for a partial stay of an order and judgment of the United States Court of Appeals, Fifth Circuit," the applicants actually seek affirmative relief. I have therefore treated the papers as an application for an injunction pursuant to 28 U.S.C. s 1651 and Rules 50 and 51 of this Court.

FN2. The applicants filed an initial application in this Court for a stay of the District Court order on September 8, 1976, before they had filed an appeal to the Court of Appeals. In my capacity as Circuit Justice, I denied that request on September 14 on the ground that this Court was without jurisdiction to entertain a direct appeal from the District Court under 28 U.S.C. s 1253. Ante, p. 1316. See MTM, Inc. v. Baxley, 420 U.S. 799, 804, 95 S.Ct. 1278, 1281, 43 L.Ed.2d 636 (1975). I specified that the denial

was without prejudice to the applicants' right to seek relief in the Court of Appeals. The applicants filed a notice of appeal in the Court of Appeals on September 16; the Court of Appeals denied their request for interlocutory relief on September 23; and the applicants renewed their application here the following day.

Effective September 1, 1975 Texas amended its Election Code so as to preclude candidates for the office of President from qualifying for position on the general election ballot as independents. Acts of 1975, c. 682, s 23, codified in Tex.Elec. Code, Art. 13.50, Subd. 1 (Supp.1976). Before that date independent candidates for all offices had been able to gain access to the ballot by submitting a prescribed number of voters' signatures by a deadline several months in advance of the general election. Tex.Elec. Code, Arts. 13.50, 13.51 (1967); see American Party of Texas v. White, 415 U.S. 767, 788-791, 94 S.Ct. 1296, 1309, 39 L.Ed.2d 744, (1974). Under the new law that method of qualifying for the ballot was carried forward for most offices, but not for the office of President.FN3 A Presidential candidate must now be a member of a political party as a precondition to securing a place on the ballot. An independent candidate can seek election as President only by joining or organizing a political party, Tex.Elec. Code, Arts. 13.02, 13.45 (Supp.1976), or by mounting a campaign to have his supporters "write in" his name on election day, Arts. 6.05, 6.06 (Supp.1976).

FN3. Candidates for the offices of Vice Presidential and Presidential elector are similarly excluded from qualifying as independents. Art. 13.50, subd. 1 (Supp.1976). Although two of the applicants are candidates for the office of Presidential elector, they have not specifically sought relief with respect to their own candidacies. My order of September 27 (see n. 4, infra ) is sufficiently broad to encompass such relief, to the extent necessary to perfect Senator McCarthy's qualification for general election.

On July 30, 1976, the applicants filed this suit in the District Court, claiming that Art. 13.50 of the Texas Election *1319 Code, as amended, violated the rights "secured to them under Article II, Section 1, Clauses 2 and 4, and Article VI, Clause 2 of the United States Constitution and the First, Twelfth and Fourteenth Amendments thereto." The applicants asked the court to order Senator McCarthy's name placed on

the ballot or, alternatively, to devise reasonable criteria by which Senator McCarthy might demonstrate support for his candidacy as a means of qualifying for ballot position. The applicants submitted affidavits that tended to show that Senator McCarthy **12 was a serious Presidential aspirant with substantial support in many States.

The defendants, the Governor and Secretary of State of the State of Texas, denied that the new law was unconstitutional and claimed that Senator McCarthy was barred by laches from obtaining the injunctive relief he requested. In support of the laches claim, the defendants presented the affidavit and later the live testimony of Mark W. White, Jr., the Secretary of State, to the effect that it would be impossible in the time remaining before the November election for the State to verify that Senator McCarthy had substantial support among Texas voters.

On September 3, 1976, the District Court held that the Texas law, as amended, was constitutionally invalid for failure to provide independents a reasonable procedure for gaining ballot access, but declined to enter injunctive relief. The court perceived its only choice to be one

"between standing by and permitting this incomprehensible policy to achieve its apparent objective or substantially burdening the entire general election at the behest of one who has at least dawdled over his rights . . . ." Memorandum Opinion, 418 F.Supp. at 818.

Believing it to be "too late for us to fashion meaningful relief without substantially disrupting the entire Texas election scheme," the court concluded that injunctive relief was not warranted. Ibid.
*1320 On September 23, 1976, the Court of Appeals, 5 Cir., 539 F.2d 1353, denied the applicants' request for emergency injunctive relief on the same basis:

"We are . . . regretfully constrained to agree with the District Court that because the

complaint was so lately filed there is insufficient time for the Court to devise a petition requirement for ascertaining whether McCarthy has substantial community support in Texas without disrupting the entire election process in that state. . . ."

The following day, September 24, 1976, the applicants presented this application to me as Circuit Justice.

The new Texas law precluding independent candidates for President from gaining access to the general election ballot as independents raises no novel issue of constitutional law. In Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), the Court flatly rejected the notion that an independent could be forced to seek ballot position by joining or organizing a political party:

"It may be that the 1% registration requirement is a valid condition to extending ballot position to a new political party. Cf. American Party of Texas v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974). But the political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other. A new party organization contemplates a statewide, ongoing organization with distinctive political character. Its goal is typically to gain control of the machinery of state government by electing its candidates to public office. From the standpoint of a potential supporter, affiliation with the new party would mean giving up his ties with another party or sacrificing his own independent status, even though his possible interest in the new party centers around a particular candidate for a particular office. For the candidate himself, it *1321 would mean undertaking the serious responsibilities of qualified party status . . . such as the conduct of a primary, holding party conventions, and the promulgation of party platforms. But more fundamentally, the candidate, who is by definition an independent and desires to remain one, must now consider himself a party man, surrendering his independent status. Must he necessarily choose the political party route if he wants to appear on the ballot in the general election? We think not." Id., at 745-746, 94 S.Ct. at 1286.

And in Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974), the Court

**13 characterized as "dubious at best" the intimation that a write-in provision was an acceptable means of ballot access:

"The realities of the electoral process . . . strongly suggest that 'access' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot. . . . That disparity would, itself, give rise to constitutional questions . . . ." Id., at 719 n. 5, 94 S.Ct. at 1321.

In view of these pronouncements, the District Court was fully justified in characterizing the new Texas law enacted little more than a year after Storer and Lubin were decided as demonstrating an "intransigent and discriminatory position" and an "incomprehensible policy."

Despite this recognition of the clear constitutional infirmity of the Texas statute, the District Court refused to grant the requested relief. The District Court, and the Court of Appeals, apparently assumed that the only appropriate remedy was to order implementation of the former statutory procedure permitting independent Presidential candidates to demonstrate substantial support by gathering a prescribed number of voters' signatures a procedure still available to independent candidates for most other elective offices. Since the signature-gathering procedure involved not only a filing deadline which had long since expired but also a lengthy *1322 process of signature verification, both lower courts concluded that there was too little time to impose a signature-gathering requirement without undue disruption of the State's electoral process.

This Court will normally accept findings of a district court affirmed by a court of appeals, on factual considerations such as those underlying a determination of laches. But acceptance of findings of fact does not in this case require acceptance of the conclusion that violation of the applicants' constitutional rights must go unremedied. In assuming that a signature-gathering process was the only available remedy, the courts below gave too little recognition to the amendment passed by the Texas Legislature making that very process unavailable to independent candidates for the office of President. In taking that action, the Texas Legislature provided no means by

which an independent Presidential candidate might demonstrate substantial voter support. Given this legislative default, the courts were free to determine on the existing record whether it would be appropriate to order Senator McCarthy's name added to the general election ballot as a remedy for what the District Court properly characterized as an "incomprehensible policy" violative of constitutional rights. This is a course that has been followed before both in this Court, see Williams v. Rhodes, 89 S.Ct. 1, 21 L.Ed.2d 69 (1968) (Stewart, J., in chambers), and, more recently, in three District Court decisions involving Senator McCarthy, McCarthy v. Noel, 420 F.Supp. 799 (D.C.R.I.1976); McCarthy v. Tribbitt, 421 F.Supp. 1193 (D.C.Del.1976); McCarthy v. Askew, 420 F.Supp. 775 (D.C.Fla.1976).

In determining whether to order a candidate's name added to the ballot as a remedy for a State's denial of access, a court should be sensitive to the State's legitimate interest in preventing "laundry list" ballots that "discourage voter participation and confuse and frustrate those who do participate." *1323 Lubin v. Panish, supra, 415 U.S., at 715, 94 S.Ct. at 1319. But where a State forecloses independent candidacy in Presidential elections by affording no means for a candidate to demonstrate community support, as Texas has done here, a court may properly look to available evidence or to matters subject to judicial notice to determine whether there is reason to assume the requisite community support. See McCarthy v. Askew, supra.

It is not seriously contested that Senator McCarthy is a nationally known figure; that he served two terms in the United States Senate and five in the United States House of Representatives; that he was an active candidate for the Democratic nomination for President in 1968, winning a substantial percentage of the votes cast in **14 the primary elections; and that he has succeeded this year in qualifying for position on the general election ballot in many States. The defendants have made no showing that support for Senator McCarthy is less substantial in Texas than elsewhere.

For the reasons stated, I have ordered that the application be granted and that the Secretary of State place the name of Eugene J. McCarthy on the November 1976 general election ballot in Texas as an independent candidate for the office of President of the United States.FN4 I have consultedinformally *1324 with each of my

Brethren and, although no other Justice has participated in the drafting of this opinion, I am authorized to say that a majority of the Court would grant the application.FN5

FN4. The order granting the application was issued on September 27, 1976. The Texas Election Code does not appear to prescribe a deadline for the printing of ballots for the general election. The earliest date when printed ballots are required for any purpose is October 13, 20 days before the election, when the statutory period for absentee voting by mail begins. Art. 5.05, Subd. 4(a) (Supp.1976). Ballots are to be mailed to persons outside the United States "as soon as possible after the ballots become available, but not earlier than (October 3)," Art. 5.05, Subd. 4e, and to others intending to vote by mail on October 13 "or as soon thereafter as possible," Art. 5.05, Subd. 4(b). Political parties are not required to certify their nominees to the Secretary of State until September 28, Art. 11.04 (1967), and the Secretary of State is not required to certify the names of those who have qualified for ballot position to local election officials until October 3, Art. 1.03, Subd. 2 (Supp.1976). Thus there appears to be ample time to add Senator McCarthy's name.

FN5. Mr. Justice WHITE, Mr. Justice MARSHALL, Mr. Justice BLACKMUN, and Mr. Justice REHNQUIST have asked to be recorded as holding a different view.

U.S.Tex., 1976.
McCarthy v. Briscoe
429 U.S. 1317, 97 S.Ct. 10, 50 L.Ed.2d 49