**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

DR. ORLY TAITZ, ESQ.; BRIAN FEDORKA;
LAURIE ROTH; LEAH LAX; and TOM
MACLERAN                                                    **PLAINTIFFS**

VS.                                              **Civil Case No. 3:12-CV-280-HTW-LRA**

DEMOCRAT PARTY OF MISSISSIPPI;
SECRETARY OF STATE OF MISSISSIPPI;
BARACK HUSSEIN OBAMA; NANCI PELOSI;
DR. ALVIN ONAKA; LORETTA FUDDY;
MICHAEL ASTRUE; JANE DOES, JOHN DOES 1-100          **DEFENDANTS**

<u>**ORDER DENYING REMAND**</u>

The plaintiffs herein have challenged President Barack Hussein Obama's

qualifications to be a candidate[1] for President of the United States and to serve as

President of the United States, saying that President Obama was not born in the United

States, as is required by the "Natural Born Citizen" Clause of the United States

Constitution.  U.S. Const. art. II, § 1, cl. 4.[2]  Plaintiffs, Dr. Orly Taitz, Brian Fedorka,

Laurie Roth, Leah Lax, and Tom MacLeran, filed this lawsuit in the Circuit Court of the

First Judicial District of Hinds County, Mississippi, but the defendants, Mississippi

Democratic Party (incorrectly named "Democrat Party of Mississippi") and the Secretary

---

[1] This lawsuit was filed in 2012, when President Barack Obama was a candidate for President of the United States, running for a second term.  In November 2012, President Barack Obama was re-elected to the Presidency of the United States.  This court recognizes that President Barack Obama presently is not a candidate for President, nor could he run as a candidate again.  This court merely sets forth the claims as alleged by the plaintiffs.

[2] U.S. Const. art. II, §, cl. 4 states:
   No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President; neither shall any Person be eligible to that Office who shall not have attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States.

of State of Mississippi, removed this lawsuit from that state court to this federal forum

under the authority of Title 28 U.S.C. § 1441.[3]

Plaintiffs' initial core contention in their state-filed complaint was that President

Obama had engaged in election fraud by using forged, altered, or fraudulently-obtained

identification records.  Plaintiffs' challenge has evolved; now, the plaintiffs additionally

accuse the President and a host of others of conspiring to violate the federal Racketeer

Influenced and Corrupt Organizations Act ("RICO"), Title 18 U.S.C. §§ 1961 through

1968.[4]  The plaintiffs add that President Obama and others have perpetrated mail and

---

[3] Title 28 U.S.C. § 1441(a) states:
>    Generally.--Except as otherwise expressly provided by Act of Congress, any civil action
>    brought in a State court of which the district courts of the United States have original
>    jurisdiction, may be removed by the defendant or the defendants, to the district court of
>    the United States for the district and division embracing the place where such action is
>    pending.

[4] Title 18 U.S.C. § 1962 states:
>        a) It shall be unlawful for any person who has received any income derived, directly or
>    indirectly, from a pattern of racketeering activity or through collection of an unlawful debt
>    in which such person has participated as a principal within the meaning of section 2, title
>    18, United States Code, to use or invest, directly or indirectly, any part of such income,
>    or the proceeds of such income, in acquisition of any interest in, or the establishment or
>    operation of, any enterprise which is engaged in, or the activities of which affect,
>    interstate or foreign commerce. A purchase of securities on the open market for
>    purposes of investment, and without the intention of controlling or participating in the
>    control of the issuer, or of assisting another to do so, shall not be unlawful under this
>    subsection if the securities of the issuer held by the purchaser, the members of his
>    immediate family, and his or their accomplices in any pattern or racketeering activity or
>    the collection of an unlawful debt after such purchase do not amount in the aggregate to
>    one percent of the outstanding securities of any one class, and do not confer, either in
>    law or in fact, the power to elect one or more directors of the issuer.
>      (b) It shall be unlawful for any person through a pattern of racketeering activity or
>    through collection of an unlawful debt to acquire or maintain, directly or indirectly, any
>    interest in or control of any enterprise which is engaged in, or the activities of which
>    affect, interstate or foreign commerce.
>      (c) It shall be unlawful for any person employed by or associated with any enterprise
>    engaged in, or the activities of which affect, interstate or foreign commerce, to conduct
>    or participate, directly or indirectly, in the conduct of such enterprise's affairs through a
>    pattern of racketeering activity or collection of unlawful debt.

2

wire fraud, Title 18 U.S.C. § 1341[5] and Title 18 U.S.C. § 1343[6], as part of a pernicious

RICO scheme[7] to deceive the United States electorate.  Key to their argument is that

---

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

[5] Title 18 U.S.C. § 1341 states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

[6] Title 18 U.S.C. § 1343 states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

[7] The RICO statutes permit both civil and criminal actions.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).  Plaintiffs *sub judice* are pursuing a civil RICO action.  Should they prevail, plaintiffs would be entitled to recover treble damages for any injury caused by reason of a violation of the RICO statutes.  *Id.*

President Obama has used a fraudulent birth certificate and social security number to run for President.

Plaintiffs also have challenged, under Mississippi's election law[8], the Secretary of State's placement of President Obama's name on the Democratic primary and general election ballots. Plaintiffs claim that because President Obama does not qualify as a natural born citizen[9] and has used forged identity documents, President Obama cannot be placed on Democratic primary and general election ballots.

This lawsuit has generated multiple pre-trial motions. First, the court must address two motions challenging this court's authority to hear this lawsuit. Those motions, both filed by plaintiff Dr. Orly Taitz, Esquire, are a motion to dismiss and for sanctions [docket no. 11]; and, a motion asking this court to remand this litigation to state court [docket no. 20]. On an earlier day, after affording oral argument to the parties, this court, from the bench, denied plaintiffs' motion for remand and for sanctions. This order will elaborate upon that bench opinion.

---

[8] Mississippi Code § 23-15-961 provides the procedures to challenge a candidate's qualifications in a political party primary election. *Gourlay v. Williams*, 874 So.2d 987, 989 (Miss. 2004). Mississippi Code § 23-15-963 details the method to challenge a candidate's qualifications in the general election. *Id.*

[9] Article II, Section 1, Clause 4 of the United States Constitution says that only "natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President."

Plaintiffs have made two arguments: (1) President Obama is not a natural born citizen of the United States because he was born in Kenya, not the Unite States; and (2) even if President Obama was born in the United States, he is not a "natural born" citizen because his father was not a United States citizen. To support this second argument, plaintiffs have argued that the framers of the United States Constitution must have drawn upon Emerich de Vattel's 1758 treatise, *The Law of Nations*, which defined "natural born citizens" as "those born in the country of parents who are citizens." As President Obama's father was not a United States Citizen, plaintiffs contend that President Obama is not a natural born citizen.

This order also will resolve some additional motions:  a motion to stay case [docket no. 24] filed by plaintiffs; a motion for sanctions [docket no. 25] filed by plaintiffs; a motion to strike [docket no. 27] filed by the defendant Democratic Party of Mississippi; a motion to supplement [docket no. 35] filed by the Democratic Party of Mississippi; a motion for judicial notice, and for an emergency evidentiary hearing [docket no. 37] filed by plaintiffs; and a motion to expedite [docket no. 40] filed by plaintiffs.

A number of other motions are also ripe for adjudication, namely a motion for judgment on the pleadings [docket no. 8] filed by defendant Secretary of the State of Mississippi; a motion for judgment on the pleadings [docket no. 15] filed by defendant Mississippi Democratic Party; a notice of filing a petition to the Multidistrict Litigation Panel ("MDL") and motion to bifurcate state and federal claims [docket no. 46] filed by plaintiff Orly Taitz; a motion to dismiss for lack of jurisdiction [docket no. 57] filed by defendants Loretta Fuddy and Alvin Onaka; a motion for an emergency evidentiary hearing [docket no. 64] filed by plaintiffs Orly Taitz and Brian Fedorka; a motion to strike [docket no. 72] filed by defendants Loretta Fuddy and Alvin Onaka; a motion to withdraw and a motion to sanction Orly Taitz [docket no. 76] filed by plaintiff Leah Lax; a motion to intervene [docket no. 83] filed by James R. Grinols; a response in opposition and motion for sanctions against Lea Lax [docket no. 84] filed by plaintiff Orly Taitz; and a motion for reconsideration [docket no. 94] filed by plaintiff Orly Taitz.  These motions will be addressed in a subsequent order to be later filed.

Plaintiff Dr. Orly Taitz ("Taitz"), a self-proclaimed "political dissident leader of an opposition movement against Barack Obama,"[10] filed this lawsuit for injunctive and declaratory relief, on February 14, 2012, in the Circuit Court of the First Judicial District of Hinds County, Mississippi, against the Secretary of the State of Mississippi and the Mississippi Democratic Party.  Plaintiff Taitz, who is an attorney, licensed to practice in the State of California, sued these defendants as a *pro se* plaintiff.  She has not applied for admission *pro hac vice* in Mississippi to function here as an attorney-at-law.[11]

She was joined in the first amended complaint by the following *pro se* plaintiffs: (1) Brian Fedorka, a Mississippi resident and registered voter; (2) Leah Lax, a purported 2012 Democratic candidate for President; (3) Laurie Roth, a purported 2012 American Independent Party candidate for President; and (4) Tom MacLeran, a purported 2012 Republican candidate for President.  Brian Fedorka is the only plaintiff who claims the State of Mississippi as his home.

As earlier stated, the Secretary of the State of Mississippi removed this lawsuit from state court to this federal forum under the authority of Title 28 U.S.C. § 1441.[12]

---

[10] In the section of the first amended complaint naming the parties, Taitz describes herself as: [. . .] political dissident leader of an opposition movement against Barack Obama.  Taitz was named by the media either the "leader of the birther movement" or a "queen of the birthers" due to her leadership position in bringing forward explosive evidence, showing Obama committing elections fraud and using a computer forgery instead of a valid long form birth certificate [. . .].  FAC at 2, docket no. 1-1.

[11] *Pro hac vice* "usually refers to a lawyer who has not been admitted to practice in a particular jurisdiction but who is admitted there temporarily for the purpose of conducting a particular case."  PRO HAC VICE, Black's Law Dictionary (9th ed. 2009).

[12] Title 28 U.S.C. § 1441(a) states, "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the

The Mississippi Democratic Party, through its governing entity, the Mississippi Democratic Executive Committee ("MDEC"), joined in that removal.  The subject-matter jurisdictional key, contend these defendants in their removal papers, is federal question jurisdiction, codified at Title 28 U.S.C. § 1331[13], which unlocks this federal portal to removal here.  The clutch of federal question jurisdiction arises where a plaintiff's claim arises from the United States Constitution or federal law.  In their first amended complaint, plaintiffs made claims against the MDEC and other defendants under the federal RICO statutes, an accusation sufficient, say the defendants, to provide this litigation with a federal character.

## I.  Facts and Procedural History

Plaintiff Taitz and others in the "birther"[14] movement mounted a legal campaign in 2008 aimed at preventing Barack Obama from assuming the mantle of President of the United States.  Taitz has participated as an attorney or plaintiff in numerous lawsuits around the nation with various formulations of claims and defendants, all charging at core the central accusation that Barack Obama cannot qualify as a candidate for, nor ever serve as, President of the United States because he is not a "natural born citizen" as required by the United States Constitution.  See, e.g., *Barnett v. Obama*, 2009 WL 3861788 (C.D.Cal. 2009), *aff'd sub nom., Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011), *cert. denied*, *Keyes v. Obama*, ___ U.S. ____, 132 S.Ct. 2748, 183 L.Ed.2d 616 (2012);

district court of the United States for the district and division embracing the place where such action is pending."

[13] Title 28 U.S.C. § 1331 states, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[14] Taitz references the term "birther" as one used by the media to describe her.  *See supra*, note 2.

*Cook v. Good*, 2009 WL 2163535 (M.D.Ga. 2009); *Rhodes v. MacDonald*, 2009 WL 2997605 (M.D.Ga. 2009); *Keyes v. Bowen*, 189 Cal.App.4th 647 (Cal.Ct.App. 2010), *cert. denied*, ____ U.S. ____, 132 S.Ct. 99, 181 L.Ed.2d 27 (2011); *Taitz v. Obama*, 754 F.Supp.2d 57 (D.D.C. 2010); *Taitz v. Astrue*, 806 F.Supp.2d 214 (D.D.C. 2011), *aff'd*, 2012 WL 1930959 (D.C.Cir. 2012); *Taitz v. Ruemmler*, 2011 WL 4916936 (D.D.C. 2011), *aff'd,* 2012 WL 1922284 (D.C.Cir. 2012); *Grinols v. Electoral College*, 2013 WL 2294885 (May 23, 2013).

   In an attempt to quiet this nagging controversy, on April 27, 2011, President Obama held a press conference at the White House where he presented what he alleged to be a true and correct copy of his original long-form birth certificate from the State of Hawaii.  *See* President Obama's Long Form Birth Certificate, THE WHITE HOUSE BLOG, http://www.whitehouse.gov/blog/2011/04/27/president-obamas-long-form-birth-certificate (last visited Mar. 6, 2014).  At that time, argues Taitz, the President used that forum to attack and ridicule her and other "birthers," who question whether the President is a "natural born citizen."

   Since that press conference, claims Taitz, she has been subjected to a wave of attacks, defamation, slander of her character, harassment, and persecution.  First amended complaint at 12, docket no. 1-1.

   Prior to President Obama's White House press conference, says Taitz, Sheriff Joseph Arpaio ("Arpaio") of Maricopa County, Arizona, had investigated President Obama's birth certificate and found it to be a forgery.  In March of 2012, Arpaio held a press conference during which he announced the results of his alleged six-month investigation into the validity of a copy of Barack Obama's birth certificate.  Says Taitz,

8

Arpaio announced that the stamp of Alvin Onaka, Registrar for the State of Hawaii, and the date stamp on the copy of Obama's alleged birth certificate were "transported to this computer-generated forgery from other documents."  First amended complaint at 13, docket no. 1-1.

Indisputably, a legitimate candidate for the United States Presidency must be a "natural born citizen" as required by Article II, Section 1 of the United States Constitution.  This section states in pertinent part:

> No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President;

Because President Obama has used "forged identification papers," claims Taitz, he "does not have any credentials to be a legitimate candidate[15]" for, or to hold the office of, President of the United States.

## A.  Original Complaint

On February 14, 2012, Taitz filed a petition for injunctive and declaratory relief in the Circuit Court for the First Judicial District of Hinds County, Mississippi, naming the "Democrat Party of Mississippi"[16] and the Secretary of the State of Mississippi as defendants.  Apparently relying on Miss. Code Ann. § 23-15-961,[17] Taitz sought the following:  (1) a declaration that "Barack Hussein Obama [was] not Constitutionally

---

[15] *See* supra note 1.

[16] The correct name for this defendant is the Mississippi Democratic Party.  This defendant is represented here by the Mississippi Democratic Executive Committee ("MDEC").

[17] "Miss.Code Ann. §§ 23-15-961 and 23-15-963 address election contests challenging the qualifications of a candidate prior to the general election. The critical distinction between the application of § 23-15-961 and § 23-15-963 is the fact that the former is the sole means for contesting the qualifications of a candidate seeking office as a party nominee."  *Gourlay v. Williams*, 874 So.2d 987, 989 (Miss. 2004).

eligible for the position of the U.S. President"; (2) "injunctive relief [to prevent] the Democrat[ic] Party of Mississippi and the Secretary of State of Mississippi from certifying Obama as a candidate on the ballot;" and (3) injunctive relief to prevent these defendants from counting any and all votes for candidate Obama in the primary, or the general Presidential election.  Petition at 7, docket no. 7.

The Democratic presidential preference primary was held in Mississippi on March 13, 2012, before the Hinds County Circuit Court had an opportunity to schedule any hearings in this matter.   Docket no. 9.  President Obama won that presidential primary. *Id.*

## B.  First Amended Complaint

Taitz filed an amended complaint on April 19, 2012, which added as defendants Barack Hussein Obama; Obama for America; Nanci Pelosi, as "[C]hair of the 2008 [Democratic] nominating convention," and signatory on the certificate[18] of Barack Obama; Dr. Alvin Onaka, Registrar for the State of Hawaii; Loretta Fuddy, Director of the Department of Health for the State of Hawaii; Michael Astrue, Commissioner of the Social Security Administration; and Jane Does and John Does 1-100.  First amended complaint, docket no. 1-1.

In their first amended complaint, the plaintiffs request:  (1) a declaratory judgment asking the court to declare Barack Obama ineligible to be placed on the ballot as a candidate for President; (2) injunctive relief against the Mississippi Secretary of State to

---

[18] In accusing Nanci Pelosi, Taitz says that Nanci Pelosi was a "signatory on the certificate of candidate of Barack Obama."  Taitz provides not further clarification on the nature of this "certificate."  The court, however, presumes that Taitz refers to a certificate delivered to each state announcing that President Obama is a candidate for President of the United States for the Democratic Party.

prevent the Secretary from placing Obama's name on the ballot, or to annul all votes for Obama; and (3) treble damages under civil RICO for injury caused by the defendants' alleged fraud (mail and wire), obstruction of justice, and retaliation.  The plaintiffs assert that they are entitled to punitive and exemplary damages, as well as costs and fees. First amended complaint at 43-44, docket no. 1-1.[19]

The Secretary of the State of Mississippi filed its notice of removal on April 24, 2012, pleading that this court has federal question subject-matter jurisdiction because of the plaintiffs' new RICO claims.  Defendant MDEC filed its consent to, and joinder in, the notice of removal on April 25, 2012.  Docket no. 4.  At the time of removal, plaintiffs had not served process on any defendants, other than the Secretary of State and MDEC.[20]

As required by Rule 83.8 of the Local Uniform Civil Rules, the United States Clerk of Court for the Southern District of Mississippi entered a RICO Notice on April 25, 2012, directing the plaintiffs to file a RICO case statement within twenty days.[21]  Docket

---

[19] The plaintiffs' first amended complaint is forty-five pages, with over one-hundred pages of exhibits.  This court has carefully reviewed this complaint and attempted to parse the claims as accurately as possible.  Plaintiffs, however, have not been helpful in this matter.  To the contrary, plaintiffs have given headings to some claims, while others bleed together.  The language is sometimes rambling and unclear.  As a basis for these claims, plaintiffs cite entire sections of the United States Code and Mississippi election law.  The prayer for relief sheds some light on the claims as it enumerates demands based on declaratory relief, injunction, and RICO damages.

[20] Plaintiff Taitz has argued that she "substantially complied" with Rule 4 of the Mississippi Rules of Civil Procedure by mailing a copy of the first amended complaint to Barack Obama, Obama for America, Nancy Pelosi, Dr. Alvin Onaka, Loretta Fuddy, and Michael Astrue. The state court docket shows that the state court issued no summonses for these defendants.

[21] Rule 83.8(a) states:
    In all cases in this court in which claims are asserted under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, a RICO Statement,

no. 2.  Local Rule 83.8, *inter alia*, requires a plaintiff to detail the pattern of racketeering activity; to list the alleged wrongdoers and alleged victims; to state how the alleged victims were injured and to specify the damages suffered; and to list the alleged predicate acts, including the dates on which they occurred and the specific facts surrounding the acts.

The Secretary of State and MDEC each filed motions for judgment on the pleadings soon after removal.  Instead of filing a RICO case statement or responding to the defendants' dispositive motions, plaintiffs filed a motion to remand on May 11, 2012.  Docket no. 20.

This court held a hearing on the plaintiffs' motion to remand on September 24, 2012.  At that time, plaintiffs had not responded to the defendants' pending dispositive motions, nor had the plaintiffs filed a RICO case statement.  At the hearing, plaintiff Taitz asked for additional time—two weeks—to complete several activities:  issue summonses and effectuate service on the unserved defendants.

As to the due RICO case statement and responses to the defendants' dispositive motions, while Taitz urged the court to act quickly, she requested an additional three weeks after all defendants were served and had answered the complaint to file her RICO case statement and respond to the dispositive motions.  Sept. 24, 2012, hearing transcript at 63.

Her requested time frame would extend well beyond the November 6, 2012, general election date.  So, in order to expedite the proceedings, the court allowed Taitz

conforming to the requirements of this order, must accompany the filing of the RICO complaint.

12

two weeks to serve the remaining defendants, and granted her a concurrent three-week time period to file her RICO case statement and to respond to defendants' pending dispositive motions.  Sept. 24, 2012, hearing transcript at 67-69.

As the election date approached, the court held a telephonic status conference with the parties on November 5, 2012.  All parties participated in the conference call. The court asked Taitz whether her claims would be viable after the election had taken place.  She expressed her belief that she could still pursue her claims.  Taitz then agreed to a motion hearing on the defendants' dispositive motions, the hearing to occur on November 16, 2012, ten days after the general election.

## II.  Removal and Subject-Matter Jurisdiction

Federal courts have limited jurisdiction.  U.S. Const., art. III, § 2.[22]  Only those matters that fall within the embrace of the federal courts' Constitutional and congressionally-authorized grant of power may be heard by a federal court.  Those actions filed in state court that originally could have been filed in federal court, however, may be removed from state court to federal court by a defendant obedient to the proper procedure.  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

---

[22] U.S. Const. art. III, § 2 states:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;-- between a State and Citizens of another State;--between Citizens of different States;-- between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

Federal courts have original jurisdiction under the federal question jurisdiction statute codified at Title 28 U.S.C. § 1331,[23] and thus may exert jurisdiction over lawsuits originally filed in state court, when the lawsuit arises "under the Constitution, laws, or treaties of the United States." *Caterpillar,* 482 U.S. at 392 n.6 (citing Title 28 U.S.C. § 1331).  To determine whether a claim arises under federal law, the "presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule.'"  *Id.* at 392.  This rule requires that the court examine the plaintiff's complaint to determine whether the complaint presents a federal question on its face.  *Id.*  The court ordinarily ignores potential defenses based in federal law, even if the defenses are anticipated and cited in the complaint.  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003).  The plaintiff, as the "master of the claim," may choose to assert federal causes of action or only those based upon state law.  *Caterpillar*, 482 U.S. at 392.  By properly pleading only state law claims, the plaintiff may avoid federal jurisdiction.  *Id.*

In this instance, plaintiffs have sued under the RICO statute, codified at Title 18 U.S.C. §§ 1961 through 1968.  Docket no. 1-1.  The plaintiffs, thus, have chosen to sue under federal law.  This court, therefore, finds that it has federal question subject-matter jurisdiction over this lawsuit.  Plaintiffs clearly have invoked claims under federal law on the face of their first amended complaint.

---

[23] Title 28 U.S.C. § 1331, *supra* note 13.

### III.  Plaintiffs' Motions Challenging Subject-Matter Jurisdiction

In addition to attacking this court's subject-matter jurisdiction, plaintiffs have filed two motions challenging removal based on alleged procedural defects and other alleged improprieties.  The court will address these motions below.

### A.  Motion to Dismiss and for Sanctions [docket no. 11]

In a three-page pleading entitled "Motion (Demand) for Immediate Termination of Unlawful Proceedings in Federal Court," plaintiff Taitz seeks to end these proceedings here, to have her lawsuit remanded to state court, and to have this court impose sanctions on the Secretary of State for removing this lawsuit to federal court.  Docket no. 11.[24]  Taitz offers neither statutory nor case law to provide a legal underpinning for her "demands."  The gist of the motion, however, indicates that she believes removal was improper, and the case should not be heard in federal court.  This court, therefore, will treat her pleading as a motion to remand under Title 28 U.S.C. § 1447.[25]

Plaintiff Taitz argues that removal here was improper for three reasons:  (1) the plaintiffs filed an interlocutory appeal to the Mississippi Supreme Court and, thus, jurisdiction over this lawsuit lay in the Mississippi Supreme Court, and not the state trial

---

[24] Taitz's motion is not clear whether she aims her "demands" at this court or against the defendants.  Taitz indicates in the header and footer of the motion that her pleading is a letter to provide "notice of an improper attempt by the defendant to remove the case to the federal court."  Docket no. 11.

[25] Title 28 U.S.C. § 1447(c) states:
> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

court at the time defendants filed the notice of removal; (2) the Secretary of State of Mississippi has no standing to remove the action because plaintiffs did not make claims against him under federal law; and (3) this lawsuit should not be heard in federal court because of an inherent bias in this federal forum in favor of defendant President Obama.  Plaintiffs also say that the Secretary of State is improperly trying to usurp the power of the state courts and manipulate the forum.  Further, say plaintiffs, the court should impose sanctions on the removing defendants "for harassing the Plaintiff[s] with manipulations and [an] attempt to commence unlawful proceedings" in federal court. Motion to dismiss at 2, docket no. 11.

### 1.  Effect of Appeal Before the Mississippi Supreme Court

While this matter was still pending in state court, Taitz, dissatisfied with the assigned state court judge, filed an interlocutory appeal to the Mississippi Supreme Court seeking appointment of a new judge.  This court is unsure when this interlocutory appeal was filed because the copy provided to the court is not date stamped.  The court presumes that the interlocutory appeal was filed sometime between April 16, 2012, when the state court canceled a hearing, and April 24, 2012, when this lawsuit was removed to this federal forum.  Plaintiffs claim that this interlocutory appeal to the Mississippi Supreme Court removed jurisdiction from that trial court.  This argument is wholly without merit.

Mississippi Rule of Appellate Procedure 5(f), which addresses interlocutory appeals, states that, "[t]he petition for appeal shall not stay proceedings in the trial court unless the trial judge or the Supreme Court shall so order."  Plaintiffs have not provided any evidence that either state court, the trial court or the Supreme Court of Mississippi,

16

ordered the lower court proceedings to be stayed.  This lawsuit, therefore, proceeded in the trial court, despite plaintiffs having requested an appeal.  Thus, the trial court maintained jurisdiction over the proceedings until the defendants filed their notice of removal.

Further, by the nature of removal jurisdiction, federal courts hear cases which originated and were being prosecuted in the state courts.  If the federal court has jurisdiction over the matter, the removal statutes apply whether the lawsuit is pending in the state trial or appellate courts.  *Matter of 5300 Mem'l Investors*, Ltd., 973 F.2d 1160, 1161-62 (5th Cir. 1992) (citing *Fed. Deposit Ins. Corp. v. Meyerland Co.*, 960 F.2d 512 (5th Cir. 1992)).

The Mississippi Supreme Court seems to agree, having issued an order that states "this matter must be held in abeyance unless and until the underlying case is remanded by the federal district court to the [state] circuit court."  Order dated May 4, 2012, docket no. 19-1.  The Mississippi Supreme Court, in its order, indicates that the removal of this action under the federal removal statutes requires the state court to cease its proceedings until the case is remanded.

This court finds that a pending appeal by the plaintiffs to the Mississippi Supreme Court had no effect on its federal removal jurisdiction.

2.  Standing of the Mississippi Secretary of State for Removal

The Secretary of State filed a notice of removal on April 24, 2012, saying that this court has federal question jurisdiction over this matter because plaintiffs had raised claims under the federal RICO statutes.  Docket no. 1.  The MDEC joined in the notice of removal on April 25, 2012.  Docket no. 4.  Plaintiffs argue that only those defendants

17

accused of violating federal law may invoke this court's federal question jurisdiction and remove this lawsuit to federal court.

The removal statutes assert that "[a] defendant or defendants desiring to remove any civil action from a state court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal [. . .]." Title 28 U.S.C. § 1446(a) (emphasis added). The plain language of the statute does not limit removal to a particular defendant or to the defendant accused of violating federal law.[26] Further, the statute requires only served defendants to join in the removal. Title 28 U.S.C. § 1446(b)(2)(A).[27]

Although a paucity of case law exists addressing this type of challenge, other United States District Courts have held that if a case is removable, any of the defendants may file the notice of removal. *See Cartwright v. Thomas Jefferson Univ. Hosp.*, 99 F.Supp.2d 550, 553 (E.D.Pa. 2000) (stating that a plaintiff could manipulate its timing of service of process to defeat federal jurisdiction because the "first-served defendant rule" might bar a later served defendant who is charged with violating federal law from being able to remove the action if the earlier served defendant was not accused of that federal law violation);[28,29] *see also Alanis v. Wells Fargo Nat. Ass'n*,

---

[26] Title 28 U.S.C. 1441(a) is consistent with § 1446 and says "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants." (emphasis added).

[27] Title 28 U.S.C. § 1446(b)(2)(A) states:
When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

[28] Title 28 U.S.C. §1446(b) requires that "the notice of removal of a civil action or proceeding shall be filed within 30 days after [. . .] the service of summons upon the defendant."

2012 WL 113725, *1 (W.D.Tex. 2012) (stating "a defendant[] may remove the case to this Court if this Court would have had original jurisdiction over the claims.  This depends on whether Plaintiff asserts federal claims in the lawsuit, not whether [the defendant] has standing [with respect to a particular claim].").

All defendants must join in the removal in order to effectuate a procedurally proper removal from state to federal court.  Title 28 U.S.C. § 1446(b)(2)(A).[30]  MDEC, a defendant accused of violating the federal RICO statutes, has exercised its own right to remove this lawsuit from state court to federal court through its joinder in the notice of removal.  *See Getty Oil Corp. v.  Ins. Co. of North America*, 841 F.2d 1254, 1263 n.11 (5th Cir. 1988) (stating that under Title 28 U.S.C. § 1446, all that is required for proper removal is that each defendant consent to removal by timely filing some "written indication" of consent "from some person or entity purporting to formally act on its behalf" and having "the authority to do so.").  The notice of removal document and the joinder in removal document have the same legal effect.  Each demonstrates the defendant's intent to remove the lawsuit to federal court.  *Id.*  The sequence by which the defendants file their written intent to remove does not affect the propriety of removal, only the name of the document used.  Each of these defendants has provided proper written notice of its intent to invoke this federal court's jurisdiction.

---

[29] The first-served defendant rule says that "[i]n cases involving multiple defendants, the thirty-day period begins to run as soon as the first defendant is served (provided the case is then removable)."  *Getty Oil Corp. v. Ins. Co. of North America*, 841 F.2d 1254, 1262-63 (5th Cir. 1988).  Congress has altered this rule in a "clarification act" in 2011, by adding the following language, "[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal."  Federal Coruts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat.758 (2011).

[30] Title 28 U.S.C. § 1446(b)(2)(A), *supra* note 27.

This court is persuaded that both the language of the removal statutes, Title 28 U.S.C. §§ 1441 and 1446, and the reasoning from the abovementioned case law provide ample retort to Taitz's argument.  This court holds that the filing of the notice of removal here was proper.

### 3.  Whether the Federal Courts are Biased Toward Federal Officials

Plaintiff Taitz argues that because a federal executive officer, the President of the United States, has been sued as a defendant, this federal forum may be influenced or biased in favor of that defendant.  Taitz offers no legal argument or even factual evidence to support this contention.

Although not expressly written into the Constitution, the doctrine of separation of powers has been applied to ensure the impartiality and fairness of the judiciary, free from control or intrusion by the other branches of government.  *Stern v. Marshall*, 131 S.Ct. 2594, 2609, 180 L.Ed. 2d 475 (2011) *reh'g denied,* 132 S.Ct. 56, 180 L.Ed. 2d 924 (U.S. 2011) (addressing the authority of the Bankruptcy courts).  The Constitution provides specific mechanisms to maintain the neutrality and independence of the judiciary, such as a lifetime appointment and a mandate that judicial salaries may not be reduced.  U.S. Const. art. III, § 1.[31]

In addition, the United States Congress has passed on whether the federal courts should exert jurisdiction over officers of the United States in its enactment of Title

---

[31] U.S. Const. art. III, § 1 states:
> The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

28 U.S.C. § 1442.  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir.

2006) (interpreting Title 28 U.S.C. § 1442(a), and saying "[b]ecause it's so important to

the federal government to protect federal officers, removal rights under section 1442 are

much broader than those under section 1441.").  Title 28 U.S.C. § 1442(a)(1) allows

United States officials or agencies to remove a lawsuit from state court to federal court

independent of other bases of jurisdiction, and without consent from the other

defendants.  *Id.*

> This statute states:
>
> (a) A civil action or criminal prosecution that is commenced in a State
> court and that is against or directed to any of the following may be
> removed by them to the district court of the United States for the district
> and division embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer (or any
> > person acting under that officer) of the United States or of any agency
> > thereof, in an official or individual capacity, for or relating to any act
> > under color of such office or on account of any right, title or authority
> > claimed under any Act of Congress for the apprehension or
> > punishment of criminals or the collection of the revenue.

Title 28 U.S.C. § 1442(a)(1).

Courts broadly construe this statute to allow removal by federal officials and

those working for them.  *Peterson v. Blue Cross/Blue Shield of Tex.*, 508 F.2d 55, 58

(5th Cir. 1975).  The purpose of Section 1442(a)(1) "is to prevent federal officers or

persons acting under their direction from being tried in state courts for acts done within

the scope of their federal employment."  *Id.*

Congress, by enacting Title 28 U.S.C. § 1442, has demonstrated that it deems federal district courts the proper and competent forum for claims against federal officers.[32]

This court is persuaded that Taitz argument here has no support in the law, and must be rejected.

### 4.  Sanctions

Sanctions or an award of costs and expenses may be appropriate when a defendant frivolously and without support of the law removes an action to harass the plaintiff or delay the lawsuit.  In order for an award of costs to be appropriate, the court must find that the removing party lacked an objectively reasonable basis to remove the case.  *Martin v. Franklin Capitol Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005).  As discussed above, this court has federal question subject-matter jurisdiction.  Defendants MDEC and the Secretary of State of Mississippi have properly removed this lawsuit from state court to this federal court.  This court, accordingly, finds plaintiffs' demand for sanctions to be completely without merit.

## B.  Motion to Remand to State Court [docket no. 20]

Plaintiff Taitz also has challenged this court's jurisdiction because only two of eight named defendants have joined in the removal.  The removal statutes require that "all defendants who have been properly joined and served must join in or consent to the removal of the action."  Title 28 U.S.C. § 1446(b)(2)(A).  To decide if removal was

---

[32] This court is not deciding whether the defendants here may remove this lawsuit under the specific strictures of Title 28 U.S.C. § 1442.  None of the defendants has invoked this removal statute.  The court cites this statute only to demonstrate that it is competent to hear cases against federal officials.

defective, this court must determine whether Taitz properly served any defendants other than the Secretary of State and the MDEC.

After a plaintiff files her complaint, she must serve the defendants with process. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999). Where service of process is contested, the plaintiff bears the burden of showing that the defendant was properly served. *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).

In this case, the defendants challenge Taitz's claim that she served President Obama, Obama for America, Nancy Pelosi, Dr. Alvin Onaka, Loretta Fuddy, and Michael Astrue. Under the federal removal statutes, only those defendants served at the time of removal must join the notice of removal. Plaintiffs, therefore, would have had to have served these defendants while the lawsuit was pending in state court, under Mississippi procedural rules. This court, thus, will look to Mississippi law to determine whether plaintiffs properly served these defendants.

The Mississippi Rules of Civil Procedure allow for service by process server, by sheriff, by publication or, for an out of state defendant, by certified mail. Taitz has submitted certified mail receipts as evidence of service. This court, therefore, will discuss Mississippi Rule of Civil Procedure 4(c)(5) which provides for service by mail. Docket no. 20-1.

Mississippi Rule 4(c)(5) states:

*Service by Certified Mail on Person Outside State.* In addition to service by any other method provided by this rule, a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested. Where the defendant is a natural person, the envelope

23

containing the summons and complaint shall be marked "restricted delivery."  Service by this method shall be deemed complete as of the date of delivery as evidenced by the return receipt or by the returned envelope marked "Refused."

Service of process, under Mississippi law, must include both a copy of the summons and of the complaint.  *Tucker v. Williams*, 7 So.3d 961, 965 (Miss.Ct.App. 2009).  "Service of process [meaning the summons and the complaint] is simply the physical means by which personal jurisdiction is asserted."  *Id* at 964.  Without proper service of process, the court lacks personal jurisdiction over the defendant in question.  *Id.*

Taitz has submitted certified mail receipts to the court for purported mailings to Nanci Pelosi, a Jill T. Nagamirre, and Obama for America.  The docket from the state court action, however, shows that no summonses were issued for defendants Barack Hussein Obama, Obama for America, Nanci Pelosi, Dr. Alvin Onaka, Loretta Fuddy, nor Michael Astrue.  Taitz's attempted service of process on these defendants, thus, could not have included a summons, and therefore did not comply with the rules for service of process.  Only properly served defendants need join in the notice of removal.  Title 28 U.S.C. § 1446(b)(2)(A).

This court holds that the defendants properly removed this lawsuit from state court to federal court.  All defendants who were properly served at the time of removal joined in the notice of removal.  This court denies plaintiffs' motion to remand.

## IV.  Motion to Stay Case [docket no. 24]

Plaintiff Taitz moved the court to stay the requirement that she respond to defendants' motions for judgment on the pleadings until this court ruled on her motion to remand.  Discovery has been stayed since Taitz's filing of the motion to remand.

In the motion hearing held on September 24, 2012, this court denied the plaintiffs' motion to remand, finding that this court has federal question subject-matter jurisdiction.  After this court ruled on its jurisdiction, plaintiff Taitz conceded that her motion to stay was moot, asking only for the case to be delayed to allow her sufficient time to serve process on the unserved defendants, file her RICO case statement, and respond to the defendants' pending motions for judgment on the pleadings.  Sept. 24, 2012, hearing transcript at 59.  As discussed in Section I above, this court established a case management and briefing schedule with the parties at the September 24, 2012, hearing.  This court, therefore, denies this motion as moot.

## V.  Plaintiffs' Motion for Sanctions [docket no. 25], MDEC's Motion to Supplement Response [docket no. 35], and Plaintiffs' Motion Responding to MDEC's Motion to Supplement [docket no. 37]

On the same day that Taitz filed her motion to stay, she filed a motion for sanctions against the MDEC and its attorneys, Samuel Begley and Scott J. Tepper, for "uttering forged documents and attempting to incriminate this court."  Docket no. 25 at 2. In its motion for judgment on the pleadings [docket no. 15], MDEC called Taitz's claims against President Obama frivolous, and stated that, "the Court should take judicial notice of the fact that the State of Hawaii has fully verified that President Obama was born in Hawaii [. . .]."  Docket no. 15, ¶ 11.  MDEC attached press releases, copies of President Obama's short- and long-form birth certificates, and other evidence to show

25

that the Hawaiian Department of Health has independently verified that President

Obama was born in Hawaii.  MDEC, says Taitz, asked for this judicial notice, despite its

knowledge that President Obama's birth certificate is forged.  Thus, argues Taitz,

MDEC seeks to make this court complicit in the defendants' fraudulent scheme.

Taitz says that, instead of recognizing President Obama's birth certificate as

valid, this court should take judicial notice, under Federal Rule of Evidence 201, that

plaintiffs have submitted evidence that the copy of President Obama's long-form birth

certificate offered by defendants is a forgery.

MDEC has moved to supplement its response to Taitz's motion for sanctions,

saying that Hawaii state officials have not allowed Taitz or others to view the original

birth certificate because of privacy laws.  Docket no. 35.  To provide evidence of the

birth certificate's authenticity, without breaching these laws, MDEC wrote a letter to the

Director of Health for the State of Hawaii, Loretta Fuddy, and asked her to verify the

birth certificate posted on the White House website.

The MDEC attached to its motion to supplement a "Verification of Birth" [docket

no. 35-2], dated May 31, 2012, and sworn by the State Registrar of Hawaii, Alvin T.

Onaka, Ph.D., which states:

1. The original Certificate of Live Birth for Barack Hussein Obama, II, is
   on file with the State of Hawaii Department of Health.

2. The information contained in the "Certificate of Live Birth" published at
   http://www.whitehouse.gov/blog/2011/04/27/president-obamas-long-
   form-birth-certificate and reviewed by me on the date of this verification
   . . . matches the information contained in the original Certificate of Live
   Birth for Barack Hussein Obama, II, on file with the State of Hawaii
   Department of Health.

Finally, Taitz has filed a "motion for judicial notice [. . .] and for an emergency evidentiary hearing."  Docket no. 37.  Taitz asks this court take judicial notice of a sworn affidavit from Sheriff Arpaio stating that President Obama's birth certificate is a forgery. Docket no. 37-1.  Taitz also asks the court to subpoena President Obama's original birth certificate and the original microfilm which was used to reproduce the birth certificate, and to hold an emergency evidentiary hearing to allow plaintiffs to present evidence that President Obama's birth certificate is a forgery.

Judicial notice is an evidentiary doctrine, founded on Federal Rule of Evidence 201,[33] which gives judges the discretion to accept a fact as true without evidence, if that fact is "not subject to reasonable dispute."  *See Kitty Hawk Aircargo, Inc.*, 418 F.3d 453, 457 n.9 (5th Cir. 2005) (citing Federal Rule of Evidence 201(b)).  A fact is not subject to reasonable dispute if it is:  "(1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Id.*

Taitz offers the testimony and evidence attached to her complaint to show that President Obama's birth certificate is a forgery, including an affidavit from alleged

---

[33] Federal Rule of Evidence 201 states in part:
> (a) SCOPE. This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
> (b) KINDS OF FACTS THAT MAY BE JUDICIALLY NOTICED. The court may judicially notice a fact that is not subject to reasonable dispute because it:
>> (1) is generally known within the trial court's territorial jurisdiction; or
>> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
> (c) TAKING NOTICE. The court:
>> (1) may take judicial notice on its own; or
>> (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.

computer expert Felicito Papa; a transcript of a press conference held by Sheriff Arpaio; an affidavit of John Sampson, a "senior Deportation officer;" and an affidavit of alleged "scanning and copying machine expert" Douglas Vogt.  MDEC has countered her claims with its own evidence, including a copy of Obama's "short-form" birth certificate, and a copy of Obama's long-form birth certificate.[34]

Taitz says that MDEC attorneys Begley and Tepper both know that the original certified copy of President Obama's birth certificate has never been authenticated, and are aware of Taitz's extensive efforts to verify the birth certificate.  She says she has gone to great lengths to prove her accusations, including subpoenaing officers from the State of Hawaii, but the courts and the government have foiled her efforts.  Begley and Tepper, says Taitz, are attempting to use this court to "sanitize and legitimize" a "flagrant forgery."  Docket no. 25 at 4.

The defendants here have filed motions for judgment on the pleadings and to dismiss based on the statutes of limitations, failure of Taitz properly to serve process, as well as failure to state a claim upon which relief may be granted.  Defendants argue that they are not bound to take as true assertions and submissions upon which Taitz relies to support the merits of her case.

At this juncture, this court has not reached the merits of plaintiffs' claims, but merely ruled that the court has jurisdiction over this lawsuit.  Taitz, by filing this motion,

---

[34] The long-form birth certificate differs from the short-form birth certificate in that it includes more detailed information.  Both birth certificates contain vital information such as the child's name, date of birth, hour of birth, sex, city of birth, mother's maiden name, mother's race, father's name, and father's race.  The long-form birth certificate also contains the name of the hospital where the child was born, the age and birthplace of the parents, the mother's address, and signatures of one of the parents, an attendant at the birth, and the local registrar.  *See* short-form and long-form birth certificate for President Obama, docket nos. 15-1 and 15-2.

asks the court to sanction the defendants for not accepting her evidence, when the merits of her claims have not been adjudicated. The court declines to sanction defendants or their attorneys for refusing to accept the plaintiffs' claims and evidence as true. The court denies plaintiff Taitz's motion for sanctions [docket no. 25]. The court grants MDEC's motion to supplement [docket no. 35], to the extent that MDEC asks to file its evidence in the record. Further, the court declines to take judicial notice of non-adjudicated facts offered by either party [docket nos. 35, 37].

### VI. Motion to Strike Motion for Sanctions [docket no. 27]

The MDEC asks this court to strike Taitz's motion for sanctions because she has failed to redact President Obama's social security number in her pleadings. Rule 5.2 of the Federal Rules of Civil Procedure requires parties to redact personal identifying information before filing documents with the court.[35]

The MDEC also asks this court to impose sanctions on plaintiff Taitz for repeatedly filing documents without redacting personal identifying information, such as social security numbers. The MDEC says that Taitz has a long history of flouting Rule 5.2, as she has been threatened with sanctions in other courts for filing unredacted documents. As examples, defendant MDEC has attached orders sealing or striking Taitz' pleadings issued by the United States District Court for the Central District of

---

[35] Fed.R.Civ.P. 5.2(a) states:

> REDACTED FILINGS. Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:
> (1) the last four digits of the social-security number and taxpayer-identification number;
> (2) the year of the individual's birth;
> (3) the minor's initials; and
> (4) the last four digits of the financial-account number.

California in the case of *Barnett v. Obama*, Civil Action No. SACV 09-0082-DOC, and by the United States District Court for the District of Columbia in *Taitz v. Astrue*, Civil Action No. 11-CV-402-RCL.  *Barnett v. Obama*, order dated September 30, 2009, docket no. 28 (sealing Taitz' motion to dismiss and ordering her to refile in compliance with Rule 5.2); *Taitz v. Astrue*, order dated June 2, 2011, docket no. 28-1 (sealing plaintiffs complaint, first amended complaint, and attached exhibits, and directing plaintiff to refile those documents with properly redacted social security numbers);  *Taitz v. Astrue,* order dated July 21, 2011, docket no. 28-2 (striking plaintiff's opposition to defendants motion for summary judgment and attached exhibits); *Taitz v. Astrue*, 2011 WL 3039167 (D.D.C. July 25, 2011) (striking Taitz' response and reprimanding her for repeated violations of Rule 5.2), docket no. 28-4.

The court denies this motion as moot.  This court already has sealed the document in question, and admonished plaintiff Taitz against filing documents with unredacted social security numbers or other personal identifying information in the future.  Plaintiff Taitz is warned that should she ignore the requirements of Rule 5.2 in this court again, this court will impose stiff sanctions for that misconduct.

### VII.  Motion to Expedite [docket no. 40]

Taitz asks this court to expedite [docket no. 40] its review and decision of her motion to remand [docket no. 20], motion for sanctions [docket no. 25], and motion for judicial notice and for an emergency evidentiary hearing [docket no. 37].  This court heard and announced its ruling denying plaintiff Taitz's motion to remand on September 24, 2012.  The court has addressed Taitz's remaining motions in this order.  The court, therefore, denies this motion as moot.

30

## VIII.  Conclusion

For the reasons discussed above, this court denies plaintiff Taitz's motions challenging this court's jurisdiction and asking that this lawsuit be remanded to the state court where it originated [docket nos. 11 and 20].  This court finds it has federal question subject-matter jurisdiction under Title 28 U.S.C. § 1331, owing to plaintiffs' inclusion of claims based upon federal law on the face of their complaint.  This court has supplemental jurisdiction under Title 28 U.S.C. § 1367[33] to hear the claims brought by plaintiffs under Mississippi election statutes, Mississippi Code §§ 23-15-961 and 23-15-963.

The court denies as moot the plaintiffs' motion to stay case [docket no. 24].  The court denies plaintiffs' motion for sanctions [docket no. 25].  The court denies plaintiffs' motion to take judicial notice of Sheriff Arpaio's affidavit and for an emergency evidentiary hearing [docket no. 37], but allows plaintiffs to file the affidavit in the record. The court denies as moot plaintiffs' motion to expedite [docket no. 40].  The court also denies the MDEC's motion to supplement [docket no. 35] to the extent the MDEC asks the court to take judicial notice of evidence, but grants the motion to the extent that this defendant seeks to file the exhibits in the record.  The court will take this evidence up,

---

[33] Title 28 U.S.C. § 1367 states:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

as necessary, after all dispositive motions have been resolved.  The court denies as

moot the MDEC's motion to strike and for sanctions [docket no. 27].

**SO ORDERED AND ADJUDGED**, this, the 31st day of March, 2015

s/ HENRY T. WINGATE_____
**UNITED STATES DISTRICT JUDGE**

**Order Denying Remand**
**Civil Case No. 3:12-cv-280-HTW-LRA**